shall promptly provide satisfactory proof of such ownership to the Franchisor. The Franchisee represents that the Statement of Ownership, attached hereto as <u>Exhibit III</u> and by this reference incorporated herein, is true, complete, accurate and not misleading, and, in accordance with the information contained in the Statement of Ownership, the controlling ownership of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store is held by the Franchisee. The Franchisee shall promptly provide the Franchisor with a written notification if the information contained in the Statement of Ownership changes at any time during the term of this Agreement and shall comply with the applicable transfer provisions contained in <u>Article 16</u> herein. In addition, if the Franchisee is an entity, all of the owners of the Franchisee shall sign the Personal Guaranty attached hereto as <u>Exhibit II</u>.

   m. The Franchisee shall at all times during the term of this Agreement keep its ROCKY MOUNTAIN CHOCOLATE FACTORY Store open during the business hours designated by the Franchisor from time to time in the Operations Manual.

   n. Unless notified in writing otherwise by the Franchisor, all Factory Candy and related products shall be sold and shipped to the Franchisee on a net 30-day basis, or according to the then current payment terms set by the Franchisor or its designated suppliers. The Franchisor reserves the right to charge interest at the rate of 1.5% per month if the Franchisee fails to pay for its orders on time and the Franchisor reserves the right to discontinue shipment of Factory Candy and related products to the Franchisee if the Franchisee is repeatedly delinquent in paying for its Factory Candy and related products, in the Franchisor's sole discretion. The Franchisee may be required to "prepay" Factory Candy orders, notwithstanding the payment policy set forth above, in the event of poor payment performance. The Franchisor reserves the right to change payment terms and policies at any time. The Franchisor also reserves the right to change the price for Factory Candy and related products from time to time as may be set forth in the most recent price bulletin sent to all franchisees or the then current Operations Manual.

## 11. ROYALTIES

### 11.1. <u>Monthly Royalty.</u>

  The Franchisee agrees to pay to the Franchisor a monthly royalty ("**Royalty**") equal to 5% of its Gross Retail Sales generated from or through its ROCKY MOUNTAIN CHOCOLATE FACTORY Store. The Franchisee also agrees to pay a quarterly Royalty based on Adjusted Gross Retail Sales during each calendar quarter. The amount of monthly Royalty paid during each quarter shall be credited toward the amount of quarterly Royalty owed. Within 15 days following the end of each calendar quarter, the Franchisor shall calculate the amount of the Franchisee's Adjusted Gross Retail Sales during the previous quarter and the Franchisee shall owe the Franchisor a quarterly Royalty equal to 10% of its Adjusted Gross Retail Sales. "**Adjusted Gross Retail Sales**" shall be calculated as the amount of "Gross Retail Sales," defined in <u>Section 11.2</u> below, minus a fixed dollar amount for each pound of Factory Candy purchased from the Franchisor and minus a multiple of the wholesale price, as specified by the Franchisor, on certain Store Candy ingredients, packaging and other products and supplies purchased from the Franchisor during the previous calendar quarter. The Franchisee shall be notified of any credits from or amounts owing to the Franchisor for the quarterly Royalty based on Adjusted Gross Retail Sales. Any credits or amounts owed will be added to or deducted from the following month's monthly Royalty payment.

### 11.2. Gross Retail Sales.

"Gross Retail Sales" shall be defined as receipts and income of any kind from all products or services sold from or through the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, including any such sale of products or services made for cash or upon credit, or partly for cash and partly for credit, regardless of collection of charges for which credit is given, less returns for which refunds are made, provided that the refund shall not exceed the sales price and exclusive of discounts, sales taxes and other taxes, amounts received in settlement of a loss of merchandise, shipping expenses paid by the customer and discount sales to corporations or to charities for fund-raising purposes. "Gross Retail Sales" shall also include the fair market value of any services or products received by the Franchisee in barter or in exchange for its services and products.

### 11.3. Royalty Payments.

The Franchisee agrees that Royalty payments shall be paid monthly and sent to the Franchisor, post-marked no later than the 15th of each month based on Gross Retail Sales for the immediately preceding month. Royalty payments shall be accompanied by monthly reports, as more fully described in Article 15 hereof, and standard transmittal forms containing information regarding the Franchisee's Gross Retail Sales and such additional information as may be requested by the Franchisor. The Franchisor reserves the right to require Royalty payments be made on a weekly or bi-weekly basis if the Franchisee does not timely or fully submit the required payments or reports. The Franchisor also reserves the right to require that Royalty payments, late charges and payment of the Marketing and Promotion Fee and late charges (as set forth in Section 12.3 below) be made by means of electronic funds transfer and the Franchisee agrees to provide the information and sign the documents necessary to implement such transfer payments within 30 days of receiving notice that such a program is being implemented. The Franchisee must sign the Franchisor's form of Authorization Agreement for Prearranged Payments attached to this Agreement as Exhibit IV. The Franchisor shall have the right to verify such Royalty payments from time to time as it deems necessary, in any reasonable manner. In the event that the Franchisee fails to pay any Royalties within 14 days after they are due, the Franchisee shall, in addition to such Royalties, pay a late charge equivalent to 18% of the late Royalty payment; provided, however, in no event shall the Franchisee be required to pay a late payment at a rate greater than the maximum interest rate permitted by applicable law. If the Franchisee pays Royalties with a check returned for non-sufficient funds more than one time in any calendar year, in addition to all other remedies which may be available, the Franchisor shall have the right to require that Royalty payments be made by certified or cashier's checks.

### 12. ADVERTISING

### 12.1. Approval of Advertising.

The Franchisee shall obtain the Franchisor's prior written approval of all advertising or other marketing or promotional programs published by any method, including print, broadcast and electronic media, regarding the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, including, without limitation, "Yellow Pages" advertising, newspaper ads, flyers, brochures, coupons, direct mail pieces, specialty and novelty items, radio, television, Internet and World Wide Web advertising. The Franchisee acknowledges and agrees that the Franchisor may disapprove of any advertising, marketing or promotional programs submitted to the Franchisor, for any reason, in the Franchisor's sole discretion. The Franchisee shall also obtain the Franchisor's prior written approval of all promotional materials provided by vendors. The proposed written advertising or a description of the marketing or promotional program shall be submitted to the Franchisor at least 10 days prior to publication, broadcast or use. The Franchisee acknowledges that advertising and promoting the ROCKY MOUNTAIN CHOCOLATE

FACTORY Store in accordance with the Franchisor's standards and specifications is an essential aspect of the Licensed Methods, and the Franchisee agrees to comply with all advertising standards and specifications. The Franchisee shall display all required promotional materials, signs, point of purchase displays and other marketing materials in its ROCKY MOUNTAIN CHOCOLATE FACTORY Store in the manner prescribed by the Franchisor. The Franchisee shall not, under any circumstances, use handwritten signs in the operation of its Store.

### 12.2. Local Advertising.

The Franchisor reserves the right to require the Franchisee to spend up to 1% of monthly Gross Retail Sales on local advertising to create public awareness of the Franchisee's ROCKY MOUNTAIN CHOCOLATE FACTORY Store. The Franchisee will submit to the Franchisor an accounting of the amounts spent on advertising within 30 days following the end of each calendar quarter. If the Franchisor requires its franchisees to advertise locally as described above, all Franchisor-owned Stores will be required to spend money for local advertising on an equal percentage basis with all franchised Stores. If the Franchisee's lease requires it to advertise locally, the Franchisor may, in its sole discretion, count such expenditures toward the Franchisee's local advertising expenditure required by this Section 12.2. The Franchisee shall obtain the Franchisor's prior written approval of all written advertising and promotional materials before publication, in accordance with Section 12.1 above.

### 12.3. Marketing and Promotion Fee.

The Franchisee shall pay to the Franchisor, in addition to Royalties, a fee of 1% of the total amount of the Franchisee's Gross Retail Sales ("**Marketing and Promotion Fee**"). The Marketing and Promotion Fee shall be in addition to and not in lieu of the Franchisee's expenditures for local advertising, as described in Section 12.2 above. The following terms and conditions will apply:

   a.  The Marketing and Promotion Fee shall be payable concurrently with the payment of the Royalties, and transmitted to the Franchisor in accordance with Section 11.3 above, for all Marketing and Promotion Fees for the immediately preceding month.

   b.  The Marketing and Promotion Fees will be subject to the same late charges as the Royalties, in an amount and manner set forth in Section 11.3 above.

   c.  Upon written request by the Franchisee, the Franchisor will make available to the Franchisee, no later than 120 days after the end of each fiscal year, an annual financial statement which indicates how the Marketing and Promotion Fees have been spent.

   d.  The Marketing and Promotion Fees will be administered by the Franchisor, in its sole discretion, and may be used for production and placement of point of purchase advertising, in-store signage, in-store promotions, media advertising, direct mailings, brochures, collateral material advertising, surveys of advertising effectiveness, packaging development, logo, design or other advertising or public relations expenditures relating to advertising the Franchisee's products and services.

   e.  The Franchisor may reimburse itself for independent audits, reasonable accounting, bookkeeping, reporting and legal expenses, taxes and other reasonable direct and indirect expenses as may be incurred by the Franchisor or its authorized representatives in connection with the programs funded by the Marketing and Promotion Fees. The Franchisor will

13

not be liable for any act or omission with respect to such Marketing and Promotion Fees that is consistent with this Agreement and is done in good faith.

**12.4. Regional Advertising Programs.**

Although not obligated to do so, the Franchisor reserves the right to allocate up to 50% of the Marketing and Promotion Fees as may be collected in accordance with Section 12.3 above toward a regional advertising program for the benefit of ROCKY MOUNTAIN CHOCOLATE FACTORY franchisees located within a particular region. The Franchisor has the right, in its sole discretion, to determine the composition of all geographic territories and market areas for the implementation of such regional advertising and promotion campaigns and to require that the Franchisee participate in such regional advertising programs as and when they may be established by the Franchisor. If a regional advertising program is implemented on behalf of a particular region by the Franchisor, the Franchisor, to the extent reasonably calculable, will only use contributions from ROCKY MOUNTAIN CHOCOLATE FACTORY franchisees within such region for the particular regional advertising program. The Franchisor also reserves the right to establish a co-operative for a particular region to enable the co-operative to self-administer the regional advertising program. If a regional advertising co-operative is established by the Franchisor, the Franchisee agrees that it will participate in it. If the Franchisor creates a regional advertising program, either as a co-operative or otherwise, the Franchisor has the right to charge the program for the actual costs of forming and administering the program.

**12.5. Marketing Services.**

The Franchisor may, in its sole discretion, offer marketing and merchandising services to the Franchisee at rates that are competitive with those charged by third parties offering similar services. The Franchisee may utilize such services, if they are offered, at the Franchisee's option. Services offered by the Franchisor may include marketing consulting, graphic design, copywriting, advertising, public relations and merchandising consultations.

### 13.   QUALITY CONTROL

**13.1. Compliance with Operations Manual.**

The Franchisee agrees to maintain and operate the ROCKY MOUNTAIN CHOCOLATE FACTORY Store in compliance with this Agreement and the standards and specifications contained in the Operations Manual, as the same may be modified from time to time by the Franchisor.

**13.2. Standards and Specifications.**

The Franchisor will make available to the Franchisee standards and specifications for products and services offered at or through the ROCKY MOUNTAIN CHOCOLATE FACTORY Store and specifically, for the recipes for Store Candy, display cases, uniforms, materials, forms, menu boards, items and supplies used in connection with the Store. The Franchisor reserves the right to change standards and specifications for services and products offered at or through the ROCKY MOUNTAIN CHOCOLATE FACTORY Store and for the recipes for Store Candy, display cases, uniforms, materials, forms, items and supplies used in connection with the Store upon 30 days prior written notice to the Franchisee. The Franchisee shall strictly adhere to all of the Franchisor's current standards and specifications for the ROCKY MOUNTAIN CHOCOLATE FACTORY Store as prescribed from time to time.

**13.3. Inspections.**

The Franchisor shall have the right to examine the Franchised Location, including the inventory, products, equipment, materials and supplies, to ensure compliance with all standards and specifications set by the Franchisor. The Franchisor shall conduct such inspections during regular business hours and the Franchisee may be present at such inspections. The Franchisor, however, reserves the right to conduct the inspections without prior notice to the Franchisee.

**13.4. Restrictions on Services and Products.**

The Franchisee will be required to purchase all of its Factory Candy for its ROCKY MOUNTAIN CHOCOLATE FACTORY Store from the Franchisor or its designee. Factory Candy shall consist of any and all varieties from time to time made available to the Franchisor's franchisees by the Franchisor and its designated suppliers. The parties hereby acknowledge the uniqueness and importance of Factory Candy being prepared by the Franchisor or its designee in order to maintain the uniformity, quality and uniqueness of Factory Candy, and therefore the Franchisor and its designees are hereby appointed the Franchisee's exclusive source of Factory Candy. The Franchisee is prohibited from offering or selling any products or services not authorized by Franchisor, including, without limitation, operating a catering or wholesale business or offering Factory Candy, Items, Store Candy or other authorized products for sale on the Internet, as part of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store. However, if the Franchisee proposes to offer, conduct or utilize any products, services, materials, forms, items or supplies for use in connection with or sale through the ROCKY MOUNTAIN CHOCOLATE FACTORY Store which are not previously approved by the Franchisor as meeting its specifications, the Franchisee shall first notify the Franchisor in writing requesting approval. The Franchisor may, in its sole discretion, for any reason whatsoever, elect to withhold such approval. In order to make such determination, the Franchisor may require submission of specifications, information, or samples of such products, services, materials, forms, items or supplies. The Franchisor will advise the Franchisee within a reasonable time whether such products, services, materials, forms, items or supplies meet its specifications.

**13.5. Approved Suppliers.**

The Franchisee shall purchase all products, services, supplies and materials required for the operation of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store licensed herein, from manufacturers, suppliers or distributors designated by the Franchisor or, if there is no designated supplier for a particular product, service, supply or material, from such other suppliers who meet all of the Franchisor's specifications and standards as to quality, composition, finish, appearance and service, and who shall adequately demonstrate their capacity and facilities to supply the Franchisee's needs in the quantities, at the times, and with the reliability requisite to an efficient operation.

**13.6. Request to Change Supplier.**

In the event the Franchisee desires to purchase products, services, supplies or materials from manufacturers, suppliers or distributors other than those previously approved by the Franchisor, the Franchisee shall, prior to purchasing any such products, services, supplies or materials, give the Franchisor a written request by certified mail, return receipt requested, to change supplier. In the event the Franchisor rejects the Franchisee's requested new manufacturer, supplier or distributor, the Franchisor must, within 60 days of the receipt of the Franchisee's request to change supplier, notify the Franchisee of its rejection. Failure to notify the Franchisee within such time period shall not constitute approval or a waiver of objections. The Franchisor may continue from time to time to inspect any manufacturer's, supplier's, or distributor's facilities and products to assure proper production, processing, storing and

transportation of products, services, supplies or materials to be purchased from the manufacturer, supplier or distributor by the Franchisee. Permission for such inspection shall be a condition of the continued approval of such manufacturer, supplier or distributor.

**13.7. Approval of Intended Supplier.**

The Franchisor may at its sole discretion, for any reason whatsoever, elect to withhold approval of the manufacturer, supplier or distributor; however, in order to make such determination, the Franchisor may require that samples from a proposed new supplier be delivered to the Franchisor for testing prior to approval and use. A charge not to exceed the actual cost of the test may be made by the Franchisor and shall be paid by the Franchisee.

**14. TRADEMARKS, TRADE NAMES AND PROPRIETARY INTERESTS**

**14.1. Marks.**

The Franchisee hereby acknowledges that the Franchisor has the sole right to license and control the Franchisee's use of the ROCKY MOUNTAIN CHOCOLATE FACTORY service mark and other of the Marks, and that such Marks shall remain under the sole and exclusive ownership and control of the Franchisor. The Franchisee acknowledges that it has not acquired any right, title or interest in such Marks except for the right to use such Marks in the operation of its ROCKY MOUNTAIN CHOCOLATE FACTORY Store as it is governed by this Agreement. Except as permitted in the Operations Manual, the Franchisee agrees not to use any of the Marks as part of an electronic mail address, or on any sites on the Internet or World Wide Web and the Franchisee agrees not to use or register any of the Marks as a domain name on the Internet.

**14.2. No Use of Other Marks.**

The Franchisee further agrees that no service mark other than "ROCKY MOUNTAIN CHOCOLATE FACTORY" or such other Marks as may be specified by the Franchisor shall be used in the marketing, promotion or operation of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store.

**14.3. Licensed Methods.**

The Franchisee hereby acknowledges that the Franchisor owns and controls the distinctive plan for the establishment, operation and promotion of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store and all related licensed methods of doing business, previously defined as the "**Licensed Methods**", which include, but are not limited to, gourmet chocolate specialty recipes and cooking methods, confectionery ordering, processing, manufacturing, stocking and inventory control, technical equipment standards, order fulfillment methods and customer relations, marketing techniques, written promotional materials, advertising, and accounting systems, all of which constitute trade secrets of the Franchisor, and the Franchisee acknowledges that the Franchisor has valuable rights in and to such trade secrets. The Franchisee further acknowledges that it has not acquired any right, title or interest in the Licensed Methods except for the right to use the Licensed Methods in the operation of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store as it is governed by this Agreement.

**14.4. Effect of Termination.**

In the event this Agreement is terminated for any reason, the Franchisee shall immediately cease using any of the Licensed Methods and Marks, trade names, trade dress, trade secrets, copyrights or any other symbols used to identify the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, and all rights

the Franchisee had to the same shall automatically terminate. The Franchisee agrees to execute any documents of assignment as may be necessary to transfer any rights the Franchisee may possess in and to the Marks.

### 14.5. Mark Infringement.

The Franchisee agrees to notify the Franchisor in writing of any possible infringement or illegal use by others of a trademark the same as or confusingly similar to the Marks which may come to its attention. The Franchisee acknowledges that the Franchisor shall have the right, in its sole discretion, to determine whether any action will be taken on account of any possible infringement or illegal use. The Franchisor may commence or prosecute such action in the Franchisor's own name and may join the Franchisee as a party thereto if the Franchisor determines it to be reasonably necessary for the continued protection and quality control of the Marks and Licensed Methods. The Franchisor shall bear the reasonable cost of any such action, including attorneys' fees. The Franchisee agrees to fully cooperate with the Franchisor in any such litigation.

### 14.6. Franchisee's Business Name.

The Franchisee acknowledges that the Franchisor has a prior and superior claim to the ROCKY MOUNTAIN CHOCOLATE FACTORY trade name. The Franchisee shall not use the phrase or two or more of the words "ROCKY MOUNTAIN CHOCOLATE FACTORY" or abbreviations thereof in the legal name of its corporation, partnership or any other business entity used in conducting the business provided for in this Agreement. The Franchisee also agrees not to register or attempt to register a trade name using the phrase or two or more of the words "ROCKY MOUNTAIN CHOCOLATE FACTORY" or abbreviations thereof in the Franchisee's name or that of any other person or business entity, without the prior written consent of the Franchisor. When this Agreement is terminated, the Franchisee shall execute any assignment or other document the Franchisor requires to transfer to itself any rights the Franchisee may possess in a trade name utilizing any or all of the words "ROCKY MOUNTAIN CHOCOLATE FACTORY," any abbreviations thereof or any other Mark owned by the Franchisor. The Franchisee further agrees that it will not identify itself as being "Rocky Mountain Chocolate Factory, Inc." or as being associated with the Franchisor in any manner other than as a franchisee or licensee. The Franchisee further agrees that in all advertising and promotion and promotional materials it will display its business name only in obvious conjunction with the phrase "ROCKY MOUNTAIN CHOCOLATE FACTORY Licensee" or "ROCKY MOUNTAIN CHOCOLATE FACTORY Franchisee" or with such other words and in such other phrases as may from time to time be prescribed in the Operations Manual, in the Franchisor's sole discretion.

### 14.7. Change of Marks.

In the event that the Franchisor, in its sole discretion, shall determine it necessary to modify or discontinue use of any proprietary Marks, or to develop additional or substitute marks, the Franchisee shall, within a reasonable time after receipt of written notice of such a modification or discontinuation from the Franchisor, take such action, at the Franchisee's sole expense, as may be necessary to comply with such modification, discontinuation, addition or substitution.

### 14.8. Creative Ownership.

All copyrightable works created by the Franchisee or any of its owners, officers or employees in connection with the Store shall be the sole property of the Franchisor. The Franchisee assigns all proprietary rights, including copyrights, in these works to the Franchisor without additional consideration. The Franchisee hereby assigns and will execute such additional assignments or documentation to

17

effectuate the assignment of all intellectual property, inventions, copyrights and trade secrets developed in part or in whole in relation to the Store, during the term of this Agreement, as the Franchisor may deem necessary in order to enable it, at its expense, to apply for, prosecute and obtain copyrights, patents or other proprietary rights in the United States and in foreign countries or in order to transfer to the Franchisor all right, title, and interest in said property. The Franchisee shall promptly disclose to the Franchisor all inventions, discoveries, improvements, recipes, creations, patents, copyrights, trademarks and confidential information relating to the Store which it or any of its owners, officers or employees has made or may make solely, jointly or commonly with others and shall promptly create a written record of the same. In addition to the foregoing, the Franchisee acknowledges and agrees that any improvements or modifications, whether or not copyrightable, directly or indirectly related to the Store, shall be deemed to be a part of the Licensed Methods and shall inure to the benefit of the Franchisor.

### 15. REPORTS, RECORDS AND FINANCIAL STATEMENTS

#### 15.1. Franchisee Reports.

The Franchisee shall establish and maintain at its own expense a bookkeeping and accounting system which conforms to the specifications which the Franchisor may prescribe from time to time, including the Franchisor's current "Standard Code of Accounts" as described in the Operations Manual. The Franchisee shall supply to the Franchisor such reports in a manner and form as the Franchisor may from time to time reasonably require, including:

    a. Monthly summary reports, in a form as may be prescribed by the Franchisor, mailed to the Franchisor postmarked no later than the 15th day of the month and containing information relative to the previous month's operations; and

    b. Quarterly financial statements, prepared in accordance with generally accepted accounting principles ("**GAAP**"), and consisting of a profit and loss statement and balance sheet for the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, mailed to the Franchisor postmarked no later than the 15th day following the end of the calendar quarter, based on operating results of the prior quarter, which shall be submitted in a form approved by the Franchisor and shall be certified by the Franchisee to be correct.

The Franchisor reserves the right to disclose data derived from such reports, without identifying the Franchisee, except to the extent identification of the Franchisee is required by law.

#### 15.2. Annual Financial Statements.

The Franchisee shall, within 90 days after the end of its fiscal year, provide to the Franchisor annual unaudited financial statements, compiled or reviewed by an independent certified public accountant acceptable to and approved by the Franchisor and prepared in accordance with GAAP, and state and federal income tax returns prepared by a certified public accountant. If these financial statements or tax returns show an underpayment of any amounts owed to the Franchisor, these amounts shall be paid to the Franchisor concurrently with the submission of the statements or returns.

#### 15.3. Verification.

Each report and financial statement to be submitted to the Franchisor hereunder shall be signed and verified by the Franchisee.

### 15.4. Books and Records.

The Franchisee shall maintain all books and records for its ROCKY MOUNTAIN CHOCOLATE FACTORY Store in accordance with GAAP, consistently applied, and preserve these records for at least five years after the fiscal year to which they relate.

### 15.5. Audit of Books and Records.

The Franchisee shall permit the Franchisor to inspect and audit the books and records of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store at any reasonable time, at the Franchisor's expense. If any audit discloses a deficiency in amounts for payments owed to the Franchisor pursuant to this Agreement, then such amounts shall become immediately payable to the Franchisor by the Franchisee, with interest from the date such payments were due at the lesser of 1½% per month or the maximum rate allowed by law. In addition, if it is found by such audit that the Gross Retail Sales of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store have been understated by five percent (5%) or more during the period audited, the Franchisee shall pay all reasonable costs and expenses the Franchisor incurred in connection with such audit.

### 15.6. Failure to Comply with Reporting Requirements.

If the Franchisee fails to prepare and submit any statement or report as required under this Article 15, then the Franchisor shall have the right to treat the Franchisee's failure as good cause for termination of this Agreement. In addition to all other remedies available to the Franchisor, in the event that the Franchisee fails to prepare and submit any statement or report required under this Article 15 for two consecutive reporting periods, the Franchisor shall be entitled to make an audit, at the expense of the Franchisee, of the Franchisee's books, records and accounts, including the Franchisee's bank accounts, which in any way pertain to the Gross Retail Sales or the Adjusted Gross Retail Sales of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store. The statements or reports not previously submitted shall be prepared by or under the direction and supervision of an independent certified public accountant selected by the Franchisor.

### 15.7. Shopping Service.

The Franchisor reserves the right to use third party shopping services from time to time to evaluate the conduct of the Franchisee's ROCKY MOUNTAIN CHOCOLATE FACTORY Store, including such things as customer service, cleanliness, merchandising and proper use of registers. The Franchisor may use such shopping services to inspect the Franchisee's ROCKY MOUNTAIN CHOCOLATE FACTORY Store at any time at the Franchisor's expense, without prior notification to the Franchisee. The Franchisor may make the results of any such service evaluation available to the Franchisee, in the Franchisor's sole discretion.

### 16. TRANSFER

### 16.1. Transfer by Franchisee.

The franchise granted herein is personal to the Franchisee and, except as stated below, the Franchisor shall not allow or permit any transfer, assignment, subfranchise or conveyance of this Agreement or any interest hereunder. As used in this Agreement, the term "**transfer**" includes the Franchisee's voluntary, involuntary, direct or indirect assignment, sale, gift or other disposition of any interest in: (1) this Agreement; (2) the Franchisee entity; (3) the Store governed by this Agreement; or (4) all or a substantial portion of the assets of the Store.

**16.2. Pre-Conditions to Franchisee's Transfer.**

The Franchisee shall not engage in a transfer unless the Franchisee obtains the Franchisor's written consent and the Franchisee and the proposed transferee comply with the following requirements:

a. All amounts due and owing pursuant to this Agreement by the Franchisee to the Franchisor or its affiliates or to third parties whose debts or obligations the Franchisor has guaranteed on behalf of the Franchisee, if any, are paid in full;

b. The proposed transferee agrees to operate the Store as a ROCKY MOUNTAIN CHOCOLATE FACTORY Store and agrees to satisfactorily complete the initial training program described in this Agreement, which training must be completed to the Franchisor's satisfaction prior to the effectiveness of the transfer;

c. The proposed transferee agrees to execute the then current form of Franchise Agreement which shall supersede this Agreement in all respects. If a new Franchise Agreement is signed, the terms thereof may differ from the terms of this Agreement; provided, however, the transferee will not be required to pay any initial franchise fee;

d. The Franchisee provides written notice to the Franchisor 30 days' prior to the proposed effective date of the transfer, and includes information reasonably detailed to enable the Franchisor to evaluate the terms and conditions of the proposed transfer and which at a minimum includes a written offer from the proposed transferee;

e. The proposed transferee provides information to the Franchisor sufficient for the Franchisor to assess the proposed transferee's business experience, aptitude and financial qualification, and the Franchisor approves the proposed transferee as a franchisee;

f. The Franchisee executes a general release, in a form satisfactory to the Franchisor, of any and all claims against the Franchisor, its affiliates and their respective officers, directors, employees and agents;

g. The Franchisee or the proposed transferee pay a nonrefundable transfer fee of $2,500 before the proposed transferee attends the initial training program; provided, however, that no transfer fee will be charged for a transfer by the Franchisee to a corporation wholly-owned by the Franchisee, between partners of a partnership Franchisee or to a spouse of a Franchisee upon the death or disability of the Franchisee;

h. The Franchisee remodels the Store and upgrades equipment, including installing the Franchisor's then current System, fixtures, furnishings and signage, if the Franchisor so requires; and

i. The Franchisee agrees to abide by all post-termination covenants set forth herein, including, without limitation, the covenant not to compete in Section 20.2 below.

**16.3. Franchisor's Approval of Transfer.**

The Franchisor has 30 days from the date of the written notice to approve or disapprove in writing, of the Franchisee's proposed transfer, which approval shall not be unreasonably withheld. The Franchisee acknowledges that the proposed transferee shall be evaluated for approval by the Franchisor

20

based on the same criteria as is currently being used to assess new franchisees of the Franchisor and that the Franchisor shall provide such proposed transferee, if appropriate, with such disclosures as may be required by state or federal law. If the Franchisee and its proposed transferee comply with all conditions for transfer set forth herein and the Franchisor has not given the Franchisee notice of its approval or disapproval within such period, approval is deemed granted.

**16.4. <u>Right of First Refusal.</u>**

In the event the Franchisee wishes to engage in a transfer, the Franchisee agrees to grant to the Franchisor a 30 day right of first refusal to purchase such rights, interest or assets on the same terms and conditions as are contained in the written notice set forth in <u>Section 16.2.d</u>; provided, however, the following additional terms and conditions shall apply:

    a.    The 30 day right of first refusal period will run concurrently with the period in which the Franchisor has to approve or disapprove the proposed transferee;

    b.    The right of first refusal will be effective for each proposed transfer and any material change in the terms or conditions of the proposed transfer shall be deemed a separate offer on which the Franchisor shall have a new 30 day right of first refusal;

    c.    If the consideration or manner of payment offered by a proposed transferee is such that the Franchisor may not reasonably be required to furnish the same, then the Franchisor may purchase the interest which is proposed to be sold for the reasonable cash equivalent. If the parties cannot agree within a reasonable time on the cash consideration, each of the Franchisor and the Franchisee shall designate an independent appraiser who, in turn, shall designate a third independent appraiser. The third appraiser's determination will be binding upon the parties. All expenses of the appraiser shall be paid for equally between the Franchisor and the Franchisee; and

    d.    If the Franchisor chooses not to exercise its right of first refusal, the Franchisee shall be free to complete the transfer subject to compliance with <u>Sections 16.2</u> and <u>16.3</u> above. Absence of a reply to the Franchisee's notice of a proposed transfer within the 30-day period may be deemed a waiver of such right of first refusal.

**16.5. <u>Types of Transfers.</u>**

The Franchisee acknowledges that the Franchisor's right to approve or disapprove of a proposed transfer as provided for above, shall apply (1) if the Franchisee is a partnership, corporation or other business association, (i) to the addition or deletion of a partner, shareholder or members of the association or the transfer of any ownership interest among existing partners, shareholders or members; (ii) to any proposed transfer of 25% or more of the interest (whether stock, partnership interest or membership interest) to a third party, whether such transfer occurs in a single transaction or several transactions; and (2) if the Franchisee is an individual, to the transfer from such individual or individuals to a corporation or other entity controlled by them, in which case the Franchisor's approval will be conditioned upon: (i) the continuing personal guarantee of the individual (or individuals) for the performance of obligations under this Agreement; and (ii) a limitation on the corporation's or other entity's business activity to that of operating the ROCKY MOUNTAIN CHOCOLATE FACTORY Store and related activities provided that with respect to such transfer, the Franchisor's right of first refusal to purchase shall not apply and the Franchisor will not charge any transfer fee.

21

### 16.6. Transfer by the Franchisor.

This Agreement is fully assignable by the Franchisor and shall inure to the benefit of any assignee or other legal successor in interest, and the Franchisor shall in such event be fully released from the same.

### 16.7. Franchisee's Death or Disability.

Upon the death or permanent disability of the Franchisee (or individual owning 25% or more of, or controlling the Franchisee entity), the personal representative of such person shall transfer the Franchisee's interest in this Agreement or such interest in the Franchisee entity to an approved third party. Such disposition of this Agreement or such interest (including, without limitation, transfer by bequest or inheritance) shall be completed within a reasonable time, not to exceed 120 days from the date of death or permanent disability (unless extended by probate proceedings), and shall be subject to all terms and conditions applicable to transfers contained in this Article 16. Provided, however, that for purposes of this Section 16.7, there shall be no transfer fee charged by the Franchisor. Failure to transfer the interest within said period of time shall constitute a breach of this Agreement. For the purposes hereof, the term **"permanent disability"** shall mean a mental or physical disability, impairment or condition that is reasonably expected to prevent or actually does prevent the Franchisee (or the owner of 25% or more of, or controlling, the Franchisee entity) from supervising the management and operation of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store for a period of 120 days from the onset of such disability, impairment or condition.

## 17. TERM AND EXPIRATION

### 17.1. Term.

The term of this Agreement begins on the date this Agreement is fully executed and ends ten years later, unless sooner terminated as provided herein.

### 17.2. Continuation.

If, for any reason, the Franchisee continues to operate the Store beyond the term of this Agreement or any subsequent renewal period, it shall be deemed to be on a month-to-month basis under the terms of this Agreement and subject to termination upon 30 days notice or as required by law. If said holdover period exceeds 90 days, this Agreement is subject to immediate termination unless applicable law requires a longer period. Upon termination after any holdover period, the Franchisee and those in active concert with the Franchisee, including family members, officers, directors, partners and managing agents, are subject to the terms of Articles 20 and 22 and Section 18.5 of this Agreement and all other applicable post-termination obligations contained in this Agreement.

### 17.3. Rights Upon Expiration.

At the end of the initial term hereof the Franchisee shall have the option to renew its franchise rights for one additional ten year term, by acquiring successor franchise rights, if the Franchisor does not exercise its right not to offer a successor franchise in accordance with Section 17.5 below and if the Franchisee:

    a.    At least 30 days prior to expiration of the term, executes the form of Franchise Agreement then in use by the Franchisor;

22

b. Has complied with all provisions of this Agreement during the current term, including the payment on a timely basis of all Royalties and other fees due hereunder. "**Compliance**" shall mean, at a minimum, that the Franchisee has not received any written notification from the Franchisor of breach hereunder more than four times during the term hereof;

c. Upgrades and/or remodels the ROCKY MOUNTAIN CHOCOLATE FACTORY Store and its operations at the Franchisee's sole expense (the necessity of which shall be in the sole discretion of the Franchisor) to conform with the then current Operations Manual;

d. Executes a general release, in a form satisfactory to the Franchisor, of any and all claims against the Franchisor and its affiliates, and their respective officers, directors, employees and agents arising out of or relating to this Agreement; and

e. Pays a successor franchise fee of $100.

### 17.4. Exercise of Option for Successor Franchise.

The Franchisee may exercise its option for a successor franchise by giving written notice of such exercise to the Franchisor not less than 90 days prior to the scheduled expiration of this Agreement. If the Franchisee fails to provide such notice to the Franchisor within the time frame set forth in the preceding sentence, but notifies the Franchisor of its desire to obtain a successor franchise prior to the expiration of the then-current term of this Agreement, the Franchisee shall pay the Franchisor a penalty of $1,000 for every 30-day period that the Franchisee was late, plus attorneys' and administrative fees and expenses attributable to such late renewal. The Franchisee's successor franchise rights shall become effective by signing the Franchise Agreement then currently being offered to new franchisees of the Franchisor.

### 17.5. Conditions of Refusal.

The Franchisor shall not be obligated to offer the Franchisee a successor franchise upon the expiration of this Agreement if the Franchisee fails to comply with any of the above conditions of renewal. In such event, except for failure to execute the then current Franchise Agreement or pay the successor franchise fee, the Franchisor shall give notice of expiration at least 180 days prior to the expiration of the term, and such notice shall set forth the reasons for such refusal to offer successor franchise rights. Upon the expiration of this Agreement, the Franchisee shall comply with the provisions of Section 18.5 below.

## 18.   DEFAULT AND TERMINATION

### 18.1. Termination by Franchisor - Effective Upon Notice.

The Franchisor shall have the right, at its option, to terminate this Agreement and all rights granted the Franchisee hereunder, without affording the Franchisee any opportunity to cure any default (subject to any state laws to the contrary, where state law shall prevail), effective upon receipt of notice by the Franchisee, addressed as provided in Section 22.12, upon the occurrence of any of the following events:

a. **Abandonment**. If the Franchisee ceases to operate the ROCKY MOUNTAIN CHOCOLATE FACTORY Store or otherwise abandons the ROCKY MOUNTAIN CHOCOLATE FACTORY Store for a period of five consecutive days, or any shorter period that indicates an intent by the Franchisee to discontinue operation of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, unless and only to the extent that full operation of the ROCKY

23

MOUNTAIN CHOCOLATE FACTORY Store is suspended or terminated due to fire, flood, earthquake or other similar causes beyond the Franchisee's control and not related to the availability of funds to the Franchisee;

    b. **Insolvency; Assignments**. If the Franchisee becomes insolvent or is adjudicated a bankrupt; or any action is taken by the Franchisee, or by others against the Franchisee under any insolvency, bankruptcy or reorganization act, (this provision may not be enforceable under federal bankruptcy law, 11 U.S.C. §§ 101 et seq.), or if the Franchisee makes an assignment for the benefit of creditors, or a receiver is appointed by the Franchisee;

    c. **Unsatisfied Judgments; Levy; Foreclosure**. If any material judgment (or several judgments which in the aggregate are material) is obtained against the Franchisee and remains unsatisfied or of record for 30 days or longer (unless a supersedeas or other appeal bond has been filed); or if execution is levied against the Franchisee's business or any of the property used in the operation of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store and is not discharged within five days; or if the real or personal property of the Franchisee's business shall be sold after levy thereupon by any sheriff, marshal or constable;

    d. **Criminal Conviction**. If the Franchisee is convicted of a felony, a crime involving moral turpitude, or any crime or offense that is reasonably likely, in the sole opinion of the Franchisor, to materially and unfavorably affect the Licensed Methods, Marks, goodwill or reputation thereof;

    e. **Failure to Make Payments**. If the Franchisee fails to pay any amounts due the Franchisor or affiliates, including any amounts which may be due as a result of any subleases or lease assignments between the Franchisee and the Franchisor, within 10 days after receiving notice that such fees or amounts are overdue;

    f. **Misuse of Marks**. If the Franchisee misuses or fails to follow the Franchisor's directions and guidelines concerning use of the Franchisor's Marks and fails to correct the misuse or failure within ten days after notification from the Franchisor;

    g. **Unauthorized Disclosure**. If the Franchisee intentionally or negligently discloses to any unauthorized person the contents of or any part of the Franchisor's Operations Manual or any other trade secrets or confidential information of the Franchisor;

    h. **Repeated Noncompliance**. If the Franchisee has received two previous notices of default from the Franchisor and is again in default of this Agreement at any time during the term of this Agreement, regardless of whether the previous defaults were cured by the Franchisee; or

    i. **Unauthorized Transfer**. If the Franchisee sells, transfers or otherwise assigns the Franchise, an interest in the Franchise or the Franchisee entity, this Agreement, the ROCKY MOUNTAIN CHOCOLATE FACTORY Store or a substantial portion of the assets of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store owned by the Franchisee without complying with the provisions of Article 16 above.

**18.2.**  **Termination by Franchisor - Thirty Days Notice.**

  The Franchisor shall have the right to terminate this Agreement (subject to any state laws to the contrary, where state law shall prevail), effective upon 30 days written notice to the Franchisee, if the

Franchisee breaches any other provision of this Agreement and fails to cure the default during such 30-day period. In that event, this Agreement will terminate without further notice to the Franchisee, effective upon expiration of the 30-day period. Defaults shall include, but not be limited to, the following:

    a.    **Failure to Maintain Standards**. The Franchisee fails to maintain the then-current operating procedures and adhere to the specifications and standards established by the Franchisor as set forth herein or in the Operations Manual or otherwise communicated to the Franchisee;

    b.    **Deceptive Practices**. The Franchisee engages in any unauthorized business or practice or sells any unauthorized product or service under the Franchisor's Marks or under a name or mark which is confusingly similar to the Franchisor's Marks;

    c.    **Failure to Obtain Consent**. The Franchisee fails, refuses or neglects to obtain the Franchisor's prior written approval or consent as required by this Agreement;

    d.    **Failure to Comply with Manual**. The Franchisee fails or refuses to comply with the then-current requirements of the Operations Manual; or

    e.    **Breach of Related Agreement**. The Franchisee defaults under any term of the lease, sublease or lease assignment for the Franchised Location, any equipment lease or any other agreement material to the ROCKY MOUNTAIN CHOCOLATE FACTORY Store or any other Franchise Agreement between the Franchisor and the Franchisee and such default is not cured within the time specified in such lease, sublease, other agreement or other Franchise Agreement. Provided, however, so long as financing from the United States Small Business Administration remains outstanding, the Franchisee will be given the same opportunity to cure defaults under any agreement between the Franchisor or its affiliates and the Franchisee, as the Franchisee is given under this Agreement

Notwithstanding the foregoing, if the breach is curable, but is of a nature which cannot be reasonably cured within such 30-day period and the Franchisee has commenced and is continuing to make good faith efforts to cure the breach during such 30-day period, the Franchisee shall be given an additional reasonable period of time to cure the same, and this Agreement shall not automatically terminate without written notice from the Franchisor.

**18.3. Franchisor's Remedies.**

    a.    **Failure to Pay**. In addition to all other remedies that may be exercised by the Franchisor upon a default by the Franchisee under the terms of this Agreement, the Franchisor reserves the right to collect amounts due from the Franchisee to any third party and to pay the third party directly. If the Franchisor collects any such amounts, the Franchisor may, in its sole discretion, charge the Franchisee an administrative fee to reimburse the Franchisor for its costs of collecting and paying such amounts. Any administrative fee charged would not exceed 15% of the total amount of money collected. Additionally, in the event this Agreement is terminated by the Franchisor prior to its expiration as set forth in Sections 18.1 or 18.2 above, the Franchisee acknowledges and agrees that in addition to all other available remedies, the Franchisor shall have the right to recover lost future Royalties during any period in which the Franchisee fails to pay such Royalties through and including the remainder of the then current term of this Agreement.

b. **Liquidated Damages**. Franchisee acknowledges that, if there is any act in violation of Sections 18.1 or 18.2 of this Agreement, it will be impossible to determine with specificity the damage to Franchisor. Therefore, for purposes of this Agreement, as liquidated damages and not as a penalty, for each day that Franchisee is in violation of Sections 18.1 or 18.2 of this Agreement, Franchisee shall pay to Franchisor the sum of $500.

**18.4. Right to Purchase.**

Upon termination or expiration of this Agreement for any reason, the Franchisor shall have the option to purchase some or all of the assets of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, which may include, at the Franchisor's option, all of the Franchisee's interest, if any, in and to the real estate upon which the ROCKY MOUNTAIN CHOCOLATE FACTORY Store is located, and all buildings and other improvements thereon, including leasehold interests, at fair market value, less any amount apportioned to the goodwill of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store which is attributable to the Franchisor's Marks and Licensed Methods, and less any amounts owed to the Franchisor by the Franchisee. The following additional terms shall apply to the Franchisor's exercise of this option:

a. The Franchisor's option hereunder shall be exercisable by providing the Franchisee with written notice of its intention to exercise the option given to the Franchisee no later than the effective date of termination, in the case of termination, or at least 90 days prior to the expiration of the term of the franchise, in the case of non-renewal. Such notice shall include a description of the assets the Franchisor will purchase.

b. In the event that the Franchisor and the Franchisee cannot agree to a fair market value for the assets of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, then the fair market value shall be determined by an independent third party appraisal. The Franchisor and the Franchisee shall each select one independent, qualified appraiser, and the two so selected shall select a third appraiser, all three to determine the fair market value of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store. The purchase price shall be the median of the fair market values as determined by the three appraisers.

c. The Franchisor and the Franchisee agree that the terms and conditions of this right and option to purchase may be recorded, if deemed appropriate by the Franchisor, in the real property records and the Franchisor and the Franchisee further agree to execute such additional documentation as may be necessary and appropriate to effectuate such recording.

The closing for the purchase of the assets of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store will take place no later than 60 days after the termination or nonrenewal date. The Franchisor will pay the purchase price in full at the closing, or, at its option, in five equal consecutive monthly installments with interest at a rate of 10% per annum. The Franchisee must sign all documents of assignment and transfer as are reasonably necessary for purchase of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store by the Franchisor.

In the event that the Franchisor does not exercise the Franchisor's right to purchase the assets of the Franchisee's ROCKY MOUNTAIN CHOCOLATE FACTORY Store as set forth above, the Franchisee will be free to keep or to sell, after such termination or expiration, to any third party, all of the assets of its ROCKY MOUNTAIN CHOCOLATE FACTORY Store; provided, however, that all appearances of the Marks are first removed in a manner approved in writing by the Franchisor. The Franchisor will only be obligated to purchase any assets of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store in the event and to the extent it is required by applicable state or federal law.

26