**18.5. <u>Obligations of Franchisee Upon Termination or Expiration.</u>**

The Franchisee is obligated upon termination or expiration of this Agreement to immediately:

a. Pay to the Franchisor all Royalties, other fees, and any and all amounts or accounts payable then owed the Franchisor or its affiliates pursuant to this Agreement, or pursuant to any other agreement, whether written or oral, including subleases and lease assignments, between the parties;

b. Cease to identify itself as a ROCKY MOUNTAIN CHOCOLATE FACTORY Franchisee or publicly identify itself as a former Franchisee or use any of the Franchisor's trade secrets, signs, symbols, devices, trade names, trademarks, or other materials.

c. Immediately cease to identify the Franchised Location as being, or having been, associated with the Franchisor, and immediately cease using any proprietary mark of the Franchisor or any mark in any way associated with the ROCKY MOUNTAIN CHOCOLATE FACTORY Marks and Licensed Methods;

d. Deliver to the Franchisor all Factory Candy, Store Candy and Items of inventory that bear the ROCKY MOUNTAIN CHOCOLATE FACTORY trade name or logo, signs, sign-faces, advertising materials, forms and other materials bearing any of the Marks or otherwise identified with the Franchisor and obtained by and in connection with this Agreement;

e. Immediately deliver to the Franchisor the Operations Manual and all other information, documents and copies thereof which are proprietary to the Franchisor;

f. Promptly take such action as may be required to cancel all fictitious or assumed names or equivalent registrations relating to its use of any Marks which are under the exclusive control of the Franchisor or, at the option of the Franchisor, assign the same to the Franchisor;

g. Notify the telephone company and all telephone directory publishers of the termination or expiration of the Franchisee's right to use any telephone number and any regular, classified or other telephone directory listings associated with any Mark and to authorize transfer thereof to the Franchisor or its designee. The Franchisee acknowledges that, as between the Franchisee and the Franchisor, the Franchisor has the sole rights to and interest in all telephone, telecopy or facsimile machine numbers and directory listings associated with any Mark. The Franchisee authorizes the Franchisor, and hereby appoints the Franchisor and any of its officers as the Franchisee's attorney-in-fact, to direct the telephone company and all telephone directory publishers to transfer any telephone, telecopy or facsimile machine numbers and directory listings relating to the ROCKY MOUNTAIN CHOCOLATE FACTORY Store to the Franchisor or its designee, should the Franchisee fail or refuse to do so, and the telephone company and all telephone directory publishers may accept such direction or this Agreement as conclusive of the Franchisor's exclusive rights in such telephone numbers and directory listings and the Franchisor's authority to direct their transfer;

h. Abide by all restrictive covenants set forth in <u>Article 20</u> of this Agreement;

i. Sign a general release, in a form satisfactory to the Franchisor, of any and all claims against the Franchisor, its affiliates and their respective officers, directors, employees and agents; and

27

j. If applicable, take such action as may be required to remove from the Internet all sites referring to the Franchisee's former ROCKY MOUNTAIN CHOCOLATE FACTORY Store or any of the Marks and to cancel or assign to the Franchisor, in the Franchisor's sole discretion, all rights to any domain names for any sites on the Internet that refer to the Franchisee's former ROCKY MOUNTAIN CHOCOLATE FACTORY Store or any of the Marks.

**18.6. State and Federal Law.**

THE PARTIES ACKNOWLEDGE THAT IN THE EVENT THE TERMS OF THIS AGREEMENT REGARDING TERMINATION OR EXPIRATION ARE INCONSISTENT WITH APPLICABLE STATE OR FEDERAL LAW, SUCH LAW SHALL GOVERN THE FRANCHISEE'S RIGHTS REGARDING TERMINATION OR EXPIRATION OF THIS AGREEMENT.

## 19. BUSINESS RELATIONSHIP

**19.1. Independent Businesspersons.**

The parties agree that each of them are independent businesspersons, that their only relationship is by virtue of this Agreement and that no fiduciary relationship is created hereunder. Neither party is liable or responsible for the other's debts or obligations, nor shall either party be obligated for any damages to any person or property directly or indirectly arising out of the operation of the other party's business authorized by or conducted pursuant to this Agreement. The Franchisor and the Franchisee agree that neither of them will hold themselves out to be the agent, employer or partner of the other and that neither of them has the authority to bind or incur liability on behalf of the other.

**19.2. Payment of Third Party Obligations.**

The Franchisor shall have no liability for the Franchisee's obligations to pay any third parties, including without limitation, any product vendors, or any sales, use, service, occupation, excise, gross receipts, income, property or other tax levied upon the Franchisee, the Franchisee's property, the ROCKY MOUNTAIN CHOCOLATE FACTORY Store or upon the Franchisor in connection with the sales made or business conducted by the Franchisee (except any taxes the Franchisor is required by law to collect from the Franchisee with respect to purchases from the Franchisor).

**19.3. Indemnification.**

The Franchisee agrees to indemnify, defend and hold harmless the Franchisor, its subsidiaries and affiliates, and their respective shareholders, directors, officers, employees, agents, successors and assignees, (the "**Indemnified Parties**") against, and to reimburse them for all claims, obligations and damages described in this Section 19.3, any and all third party obligations described in Section 19.2 and any and all claims and liabilities directly or indirectly arising out of the operation of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store or arising out of the use of the Marks and Licensed Methods in any manner not in accordance with this Agreement. For purposes of this indemnification, claims shall mean and include all obligations, actual and consequential damages and costs reasonably incurred in the defense of any claim against the Indemnified Parties, including, without limitation, reasonable accountants', attorneys' and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel and living expenses. The Franchisor shall have the right to defend any such claim against it. This indemnity shall continue in full force and effect subsequent to and notwithstanding the expiration or termination of this Agreement.

28

## 20. RESTRICTIVE COVENANTS

### 20.1. Non-Competition During Term.

The Franchisee acknowledges that, in addition to the license of the Marks hereunder, the Franchisor has also licensed commercially valuable information which comprises and is a part of the Licensed Methods, including without limitation, recipes, operations, marketing, advertising and related information and materials and that the value of this information derives not only from the time, effort and money which went into its compilation, but from the usage of the same by all the franchisees of the Franchisor using the Marks and Licensed Methods. The Franchisee therefore agrees that other than the ROCKY MOUNTAIN CHOCOLATE FACTORY Store licensed herein, neither the Franchisee nor any of the Franchisee's officers, directors, shareholders or partners, nor any member of his or their immediate families, shall during the term of this Agreement:

    a.    have any direct or indirect controlling interest as a disclosed or beneficial owner in a "Competitive Business" as defined below;

    b.    perform services as a director, officer, manager, employee, consultant, representative, agent or otherwise for a Competitive Business; or

    c.    divert or attempt to divert any business related to, or any customer or account of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, the Franchisor's business or any other ROCKY MOUNTAIN CHOCOLATE FACTORY franchisee's business, by direct inducement or otherwise, or divert or attempt to divert the employment of any employee of the Franchisor or another franchisee licensed by the Franchisor to use the Marks and Licensed Methods, to any Competitive Business by any direct inducement or otherwise.

The term "**Competitive Business**" as used in this Agreement shall mean any business operating, or granting franchises or licenses to others to operate, a retail, wholesale, distribution or manufacturing business deriving more than 10% of its gross receipts from the sale, processing or manufacturing of chocolate candies and other non-chocolate confectionery items, Items or other products which are offered in ROCKY MOUNTAIN CHOCOLATE FACTORY Stores and which constitute 10% or more of the Gross Retail Sales of any ROCKY MOUNTAIN CHOCOLATE FACTORY Store; provided, however, the Franchisee shall not be prohibited from owning securities in a Competitive Business if such securities are listed on a stock exchange or traded on the over-the-counter market and represent 5% or less of that class of securities issued and outstanding.

### 20.2. Post-Termination Covenant Not to Compete.

Upon termination or expiration of this Agreement for any reason, the Franchisee and its officers, directors, shareholders, and/or partners agree that, for a period of two years commencing on the effective date of termination or expiration, or the date on which the Franchisee ceases to conduct business, whichever is later, neither Franchisee nor its officers, directors, shareholders, and/or partners shall have any direct or indirect interest (through a member of any immediate family of the Franchisee or its Owners or otherwise) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent or in any other capacity in any Competitive Business, defined in Section 20.1 above, located or operating within a 10-mile radius of the Franchised Location or within a 10-mile radius of any other franchised or company-owned ROCKY MOUNTAIN CHOCOLATE FACTORY Store. The restrictions of this Section shall not be applicable to the ownership of shares of a class of securities listed on a stock exchange or traded on the over-the-counter market that represent 5% or less of the number of

29

shares of that class of securities issued and outstanding. The Franchisee and its officers, directors, shareholders, and/or partners expressly acknowledge that they possess skills and abilities of a general nature and have other opportunities for exploiting such skills. Consequently, enforcement of the covenants made in this Section will not deprive them of their personal goodwill or ability to earn a living.

### 20.3. Confidentiality of Proprietary Information.

The Franchisee shall treat all information it receives which comprises or is a part of the Licensed Methods licensed hereunder as proprietary and confidential and will not use such information in an unauthorized manner or disclose the same to any unauthorized person without first obtaining the Franchisor's written consent. The Franchisee acknowledges that the Marks and the Licensed Methods have valuable goodwill attached to them, that the protection and maintenance thereof is essential to the Franchisor and that any unauthorized use or disclosure of the Marks and Licensed Methods will result in irreparable harm to the Franchisor.

### 20.4. Confidentiality Agreement.

The Franchisor requires that the Franchisee cause each of its officers, directors, partners, shareholders, and General Manager, and, if the Franchisee is an individual, immediate family members, to execute a confidentiality and noncompetition agreement containing the above restrictions, in the form attached hereto as Exhibit VI and incorporated herein by reference.

## 21.   INSURANCE

### 21.1.   Insurance Coverage.

The Franchisee shall procure, maintain and provide evidence of (i) comprehensive general liability insurance for the Franchised Location and its operations with a limit of not less than $1,000,000 combined single limit, or such greater limit as may be required as part of any lease agreement for the Franchised Location; (ii) automobile liability insurance covering all employees of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store with authority to operate a motor vehicle in an amount not less than $1,000,000 or, with the prior written consent of the Franchisor, such lesser amount as may be available at a commercially reasonable rate, but in no event less than any statutorily imposed minimum coverage; (iii) unemployment and worker's compensation insurance with a broad form all-states endorsement coverage sufficient to meet the requirements of the law; and (iv) all-risk personal property insurance in an amount equal to at least 100% of the replacement costs of the contents and tenant improvements located at the ROCKY MOUNTAIN CHOCOLATE FACTORY Store. All of the required policies of insurance shall name the Franchisor as an additional named insured and shall provide for a 30-day advance written notice to the Franchisor of cancellation.

### 21.2.   Proof of Insurance Coverage.

The Franchisee will provide proof of insurance to the Franchisor prior to commencement of operations at its ROCKY MOUNTAIN CHOCOLATE FACTORY Store. This proof will show that the insurer has been authorized to inform the Franchisor in the event any policies lapse or are cancelled. The Franchisor has the right to change the minimum amount of insurance the Franchisee is required to maintain by giving the Franchisee prior reasonable notice, giving due consideration to what is reasonable and customary in the similar business. The Franchisee's failure to comply with the insurance provisions set forth herein shall be deemed a material breach of this Agreement. In the event of any lapse in insurance coverage, in addition to all other remedies, the Franchisor shall have the right to demand that the Franchisee cease operations of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store until

30

coverage is reinstated, or, in the alternative, pay any delinquencies in premium payments and charge the same back to the Franchisee.

## 22. MISCELLANEOUS PROVISIONS

### 22.1. Governing Law/Consent to Venue and Jurisdiction.

Except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. §§1051 et seq.) or other federal law, this Agreement shall be interpreted under the laws of the state of Colorado and any disputes between the parties shall be governed by and determined in accordance with the substantive laws of the state of Colorado, which laws shall prevail in the event of any conflict of law. The Franchisee and the Franchisor have negotiated regarding a forum in which to resolve any disputes that may arise between them and have agreed to select a forum in order to promote stability in their relationship. Therefore, if a claim is asserted in a legal proceeding involving the Franchisee, its officers, directors, partners or managers (collectively, "**Franchisee Affiliates**") and the Franchisor, its officers, directors or sales employees (collectively, "**Franchisor Affiliates**"), all parties agree that the exclusive venue for disputes between them shall be in the state courts in La Plata County, Colorado and federal courts located in Colorado and each waive any objections they may have to the personal jurisdiction of or venue in the state courts in La Plata County and federal courts located in Colorado. The Franchisor, the Franchisor Affiliates, the Franchisee and the Franchisee Affiliates each waive their rights to a trial by jury.

### 22.2. Cumulative Rights.

The rights and remedies of the Franchisor and the Franchisee hereunder are cumulative and no exercise or enforcement by either of them of any right or remedy hereunder shall preclude the exercise or enforcement by either of them of any other right or remedy hereunder which they are entitled by law to enforce.

### 22.3. Modification.

The Franchisor and/or the Franchisee may modify this Agreement only upon execution of a written agreement between the two parties. The Franchisee acknowledges that the Franchisor may modify its standards and specifications and operating and marketing techniques set forth in the Operations Manual unilaterally under any conditions and to the extent in which the Franchisor, in its sole discretion, deems necessary to protect, promote, or improve the Marks and the quality of the Licensed Methods, but under no circumstances will such modifications be made arbitrarily without such determination.

### 22.4. Entire Agreement.

This Agreement, including all exhibits and addenda hereto, contains the entire agreement between the parties and supersedes any and all prior agreements concerning the subject matter hereof. The Franchisee agrees and understands that the Franchisor shall not be liable or obligated for any oral representations or commitments made prior to the execution hereof or for claims of negligent or fraudulent misrepresentation based on any such oral representations or commitments and that no modifications of this Agreement shall be effective except those in writing and signed by both parties. The Franchisor does not authorize and will not be bound by any representation of any nature other than those expressed in this Agreement. The Franchisee further acknowledges and agrees that no representations have been made to it by the Franchisor regarding projected sales volumes, market potential, revenues, profits of the Franchisee's ROCKY MOUNTAIN CHOCOLATE FACTORY Store, or operational

31

assistance other than as stated in this Agreement or in any disclosure document provided by the Franchisor or its representatives.

### 22.5. Delegation by the Franchisor.

From time to time, the Franchisor shall have the right to delegate the performance of any portion or all of its obligations and duties hereunder to third parties, whether the same are agents of the Franchisor or independent contractors which the Franchisor has contracted with to provide such services. The Franchisee agrees in advance to any such delegation by the Franchisor of any portion or all of its obligations and duties hereunder.

### 22.6. Effective Date.

This Agreement shall not be effective until accepted by the Franchisor as evidenced by dating and signing by an officer of the Franchisor.

### 22.7. Review of Agreement.

The Franchisee acknowledges that it had a copy of this Agreement in its possession for a period of time not fewer than 10 full business days, during which time the Franchisee has had the opportunity to submit same for professional review and advice of the Franchisee's choosing prior to freely executing this Agreement.

### 22.8. Attorneys' Fees.

In the event of any dispute between the parties to this Agreement, including any dispute involving an officer, director, employee or managing agent of a party to this Agreement, in addition to all other remedies, the non-prevailing party will pay the prevailing party all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party in any legal action, arbitration or other proceeding as a result of such dispute.

### 22.9. Injunctive Relief.

Nothing herein shall prevent the Franchisor or the Franchisee from seeking injunctive relief to prevent irreparable harm, in addition to all other remedies. If the Franchisor seeks an injunction, the Franchisor will not be required to post a bond in excess of $500.

### 22.10. No Waiver.

No waiver of any condition or covenant contained in this Agreement or failure to exercise a right or remedy by the Franchisor or the Franchisee shall be considered to imply or constitute a further waiver by the Franchisor or the Franchisee of the same or any other condition, covenant, right, or remedy.

### 22.11. No Right to Set Off.

The Franchisee shall not be allowed to set off amounts owed to the Franchisor for Royalties, fees or other amounts due hereunder, against any monies owed to Franchisee, nor shall the Franchisee in any event withhold such amounts due to any alleged nonperformance by the Franchisor hereunder, which right of set off is hereby expressly waived by the Franchisee.

**22.12. Invalidity.**

If any provision of this Agreement is held invalid by any tribunal in a final decision from which no appeal is or can be taken, such provision shall be deemed modified to eliminate the invalid element and, as so modified, such provision shall be deemed a part of this Agreement as though originally included. The remaining provisions of this Agreement shall not be affected by such modification.

**22.13. Notices.**

All notices required to be given under this Agreement shall be given in writing, by certified mail, return receipt requested, or by an overnight delivery service providing documentation of receipt, at the address set forth in the first paragraph of this Agreement or at such other addresses as the Franchisor or the Franchisee may designate from time to time, and shall be effectively given when deposited in the United States mail, postage prepaid, or when received via overnight delivery, as may be applicable.

**22.14. Payment of Taxes.**

The Franchisee shall reimburse the Franchisor, or its affiliates and designees, promptly and when due, the amount of all sales taxes, use taxes, personal property taxes and similar taxes imposed upon, required to be collected or paid by the Franchisor, or its affiliates or designees, on account of services or goods furnished by the Franchisor, its affiliates or designees, to the Franchisee through sale, lease or otherwise, or on account of collection by the Franchisor, its affiliates or designees, of the initial franchise fee, Royalties, Marketing and Promotion Fees or any other payments made by the Franchisee to the Franchisor required under the terms of this Agreement.

**22.15. Acknowledgement.**

BEFORE SIGNING THIS AGREEMENT, THE FRANCHISEE SHOULD READ IT CAREFULLY WITH THE ASSISTANCE OF LEGAL COUNSEL. THE FRANCHISEE ACKNOWLEDGES THAT:

(A) THE SUCCESS OF THE BUSINESS VENTURE CONTEMPLATED HEREIN INVOLVES SUBSTANTIAL RISKS AND DEPENDS UPON THE FRANCHISEE'S ABILITY AS AN INDEPENDENT BUSINESS PERSON AND ITS ACTIVE PARTICIPATION IN THE DAILY AFFAIRS OF THE BUSINESS, AND

(B) NO ASSURANCE OR WARRANTY, EXPRESS OR IMPLIED, HAS BEEN GIVEN AS TO THE POTENTIAL SUCCESS OF SUCH BUSINESS VENTURE OR THE EARNINGS LIKELY TO BE ACHIEVED, AND

(C) NO STATEMENT, REPRESENTATION OR OTHER ACT, EVENT OR COMMUNICATION, EXCEPT AS SET FORTH IN THIS DOCUMENT, AND IN ANY OFFERING CIRCULAR SUPPLIED TO THE FRANCHISEE, IS BINDING ON THE FRANCHISOR IN CONNECTION WITH THE SUBJECT MATTER OF THIS AGREEMENT.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above set forth.

**ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.**

Date: 8/25/03

_____
Bryan J. Merryman, Chief Operating Officer

**FRANCHISEE:**

Date: Aug 20, 2003

_____
Thomas P. Anderson, Individually

Date: AUG 20, 2003

_____
Kenneth Pecus, Individually

**AND:**

**SDMS Inc.**

Date:_____

_____
Thomas P. Anderson, President

(6/1/03)

34

EXHIBIT I
TO FRANCHISE AGREEMENT

## ADDENDUM TO ROCKY MOUNTAIN CHOCOLATE FACTORY, INC. FRANCHISE AGREEMENT

1. <u>Franchised Location</u>. The Franchised Location, set forth in <u>Section 3.1</u> of the Agreement shall be: Bridgeworks, 234 5th Avenue, Space B, San Diego, CA 92101 and the Store configuration shall be: Street Front.

2. <u>Initial Franchise Fee</u>. The amount of the initial franchise fee, set forth in <u>Section 4.1</u> of the Agreement, shall be: $19,500

Fully executed this 25 day of August, 2003.

ROCKY MOUNTAIN CHOCOLATE
FACTORY, INC.

_____
Bryan J. Merryman, Chief Operating Officer


FRANCHISEE:

_____
Thomas, P. Anderson, Individually

_____
Kenneth Pecus, Individually


AND:

SDMS, Inc.

_____
Thomas P. Anderson, President

**EXHIBIT II**
**TO FRANCHISE AGREEMENT**

## GUARANTY AND ASSUMPTION OF FRANCHISEE'S OBLIGATIONS

In consideration of, and as an inducement to, the execution of the above Franchise Agreement (the "**Agreement**") by Rocky Mountain Chocolate Factory, Inc. ("**the Franchisor**"), each of the undersigned hereby personally and unconditionally:

Guarantees to the Franchisor and its successors and assigns, for the term of this Agreement, including renewals thereof, that the franchisee, as that term is defined in the Agreement ("**Franchisee**"), shall punctually pay and perform each and every undertaking, agreement and covenant set forth in the Agreement; and

Agrees to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement.

Each of the undersigned waives the following:

1. Acceptance and notice of acceptance by the Franchisor of the foregoing undertaking;

2. Notice of demand for payment of any indebtedness or nonperformance of any obligations hereby guaranteed;

3. Protest and notice of default to any party with respect to the indebtedness or nonperformance of any obligations hereby guaranteed;

4. Any right he or she may have to require that any action be brought against Franchisee or any other person as a condition of liability; and

5. Any and all other notices and legal or equitable defenses to which he or she may be entitled.

Each of the undersigned consents and agrees that:

1. His or her direct and immediate liability under this guaranty shall be joint and several;

2. He or she shall render any payment or performance required under the Agreement upon demand if Franchisee fails or refuses punctually to do so;

3. Such liability shall not be contingent or conditioned upon pursuit by the Franchisor of any remedies against Franchisee or any other person; and

4. Such liability shall not be diminished, relieved or otherwise affected by any extension of time, credit or other indulgence which the Franchisor may from time to time grant to Franchisee or to any other person, including without limitation the acceptance of any partial payment or performance, or the compromise or release of any claims, none of which shall in any way modify or amend this guaranty, which shall be continuing and irrevocable during the term of the Agreement, including renewals thereof.

36

**IN WITNESS WHEREOF**, each of the undersigned has affixed his or her signature effective on the same day and year as the Agreement was executed.

| WITNESS | GUARANTOR(S) |
|---|---|
| *Carl F. Mortensen* | *Thomas P. Anderson* |
|  | Thomas P. Anderson, Individually |
| *Erw. Green* | *Pecus* |
|  | Kenneth Pecus, Individually |

37

EXHIBIT III
TO FRANCHISE AGREEMENT

## STATEMENT OF OWNERSHIP

Franchisee: **Thomas P. Anderson, Kenneth Pecus and SDMS, Inc.**

Trade Name (if different from above):_____

Form of Ownership
(Check One)

__X__ Individual      ____ Partnership      __X__ Corporation      ____ Limited Liability Company

If a Partnership, provide name and address of each partner showing percentage owned, whether active in management, and indicate the state in which the partnership was formed.

If a Limited Liability Company, provide name and address of each member and each manager showing percentage owned and indicate the state in which the Limited Liability Company was formed.

If a Corporation, give the state and date of incorporation, the names and addresses of each officer and director, and list the names and addresses of every shareholder showing what percentage of stock is owned by each.

SDMS, Inc., A California corporation formed August 13, 2003

Thomas P. Anderson, 2051 California Street West, San Diego, CA 92110, President, 50% Ownership

Kenneth Pecus, 2051 California Street West, San Diego, CA 92110, 50% Ownership

Franchisee acknowledges that this Statement of Ownership applies to the ROCKY MOUNTAIN CHOCOLATE FACTORY Store authorized under the Franchise Agreement.

Use additional sheets if necessary. Any and all changes to the above information must be reported to the Franchisor in writing.

_August 20, 2003_      _/s/ Thomas P. Anderson_
Date                        Thomas P. Anderson, Individually

_AUGUST 20, 2003_      _/s/ Kenneth Pecus_
Date                        Kenneth Pecus, Individually

AND;

SDMS, Inc.

_____      _/s/ Thomas P. Anderson_
Date                        Thomas P. Anderson, President

38

EXHIBIT IV
TO FRANCHISE AGREEMENT

## AUTHORIZATION AGREEMENT FOR PREARRANGED PAYMENTS
### (DIRECT DEBITS)

The undersigned depositor ("**Depositor**") hereby (1) authorizes Rocky Mountain Chocolate Factory, Inc. ("**Company**") to initiate debit entries and/or credit correction entries to the undersigned's checking and/or savings account indicated below and (2) authorizes the depository designated below ("**Depository**") to debit such account pursuant to Company's instructions.

_____          _____
Depository                                                                      Branch

_____          _____
City                                                                                 State                            Zip Code

_____          _____
Bank Transit/ABA Number                                                                   Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Company and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Company and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if (a) within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or (b) 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

_Thomas P. Anderson_____          _____
DEPOSITOR (Print Name)                                               DEPOSITORY (Print Name)


By: _Thomas P. Anderson_____          By:_____
Its:_____          Its:_____
Date:_____          Date:_____

39

EXHIBIT V
TO THE FRANCHISE AGREEMENT

## PERMIT, LICENSE AND CONSTRUCTION CERTIFICATE

Franchisor and Franchisee are parties to a Franchise Agreement dated *Aug. 25*, 2003 for the development and operation of ROCKY MOUNTAIN CHOCOLATE FACTORY Store located at Bridgeworks, 234 5th Avenue, Space B, San Diego, CA 92101 (collectively the "**Franchised Location**"). In accordance with Section 5.5 of the Franchise Agreement, Franchisee certifies to Franchisor that the Franchised Location complies with all applicable federal, state and local laws, statutes, codes, rules, regulations and standards including, but not limited to, the federal Americans with Disabilities Act and any similar state or local laws. The Franchisee has obtained all such permits and certifications as may be required for the lawful construction and operation of the ROCKY MOUNTAIN CHOCOLATE FACTORY Store, together with all certifications from government authorities having jurisdiction over the site that all requirements for construction and operation have been met, including without limitation, zoning, access, sign, health, safety requirements, building and other required construction permits, licenses to do business, sales tax permits, health and sanitation permits and ratings and fire clearances. The Franchisee has obtained all customary contractors' sworn statements and partial and final lien waivers for construction, remodeling, decorating and installation of equipment at the Franchised Location. The Franchisee acknowledges that it is an independent contractor and that the requirement of this certification does not constitute ownership, control, leasing or operation of the Store or the Franchised Location by the Franchisor, but rather provides notice to Franchisor that the Franchisee has complied with all applicable laws. The Franchisee asserts that Franchisor may justifiably rely on the information contained in this certificate.

FRANCHISEE:

_/s/ Thomas P. Anderson_
Thomas P. Anderson, Individually

_/s/ Kenneth Pecus_
Kenneth Pecus, Individually

AND:

SDMS, Inc.

_/s/ Thomas P. Anderson_
Thomas P. Anderson, President

EXHIBIT VI
TO FRANCHISE AGREEMENT

## CONFIDENTIALITY AND NONCOMPETITION AGREEMENT

AGREEMENT, dated August 25, 2003, by and between Rocky Mountain Chocolate Factory, Inc. ("**Franchisor**") and **Thomas P. Anderson and Kenneth Pecus, individually, and SDMS, Inc.**, a California corporation, (collectively the **Franchisee**"). All capitalized terms not otherwise defined herein shall have the meanings set forth in the Franchise Agreement, defined below.

The Franchisor has granted to the Franchisee, pursuant to that certain Franchise Agreement dated Aug. 25, 2003, (the "**Franchise Agreement**"), the right to operate a ROCKY MOUNTAIN CHOCOLATE FACTORY Store. The undersigned, in consideration of the receipt and/or use of the Operations Manual and other information proprietary to the Franchisor, including but not limited to methods, strategies and techniques developed by the Franchisor relating to operations, marketing, training, advertising, trade secrets, recipes and other confidential data (collectively referred to as "**Proprietary Information**"), agrees with the Franchisor as follows:

(1) The undersigned acknowledges that the Operations Manual and other Proprietary Information now or hereafter provided to Franchisee by the Franchisor is proprietary to the Franchisor and must be held in the utmost and strictest confidence.

(2) The undersigned represents and agrees that the undersigned will not, without the prior written consent of the Franchisor, either:

(i) Duplicate or otherwise reproduce the Operations Manual or other Proprietary Information;

(ii) Deliver or make available the Operations Manual or other Proprietary Information to any person other than an authorized representative of the Franchisor;

(iii) Discuss or otherwise disclose the contents of the Operations Manual or other Proprietary Information to any person other than an authorized representative of the Franchisor; or

(iv) Use the Operations Manual or other Proprietary Information to his, her or its commercial advantage other than in connection with the operation of the franchise created and granted by the Franchise Agreement.

(3) While the Franchise Agreement is in effect, neither the undersigned, nor any member of his or her immediate family, shall engage in, or participate as an owner, officer, partner, director, agent, employee, shareholder or otherwise in any other Competitive Business without having first obtained the Franchisor's written consent. For the purposes of this Agreement, "**Competitive Business**" shall mean any business deriving more than 10% of its gross sales receipts from the sale, processing or manufacturing of chocolate candies and other non-chocolate confectionery items, Items or other products offered in ROCKY MOUNTAIN CHOCOLATE FACTORY Stores and which constitute 10% or more of the Gross Retail Sales of any ROCKY MOUNTAIN CHOCOLATE FACTORY Store.

(4)     The undersigned has acquired from the Franchisor confidential information regarding Franchisor's trade secrets and franchised methods which, in the event of a termination of the Franchise Agreement, could be used to injure the Franchisor. As a result, neither the undersigned, nor any member of his or her immediate family, shall, for a period of 2 years from the date of termination, transfer or expiration of the Franchise Agreement, without having first obtained the Franchisor's written consent, engage in or participate as an owner, officer, partner, director, agent, employee, shareholder or otherwise in any Competitive Business which is located or operating, as of the date of such termination, transfer or expiration, within a 10-mile radius of the Franchisee's former Franchised Location as defined in the Franchise Agreement, or within a 10-mile radius of any other franchised or company-owned ROCKY MOUNTAIN CHOCOLATE FACTORY Store, unless such right is granted pursuant to a separate agreement with the Franchisor.

(5)     The undersigned agrees that during the term of the Franchise Agreement, and for a period of 2 years thereafter, it shall in no way divert or attempt to divert the business of customers, or interfere with the business relationship established with customers of the Franchisee's ROCKY MOUNTAIN CHOCOLATE FACTORY Store or of any Competitive Business.

**IN WITNESS WHEREOF,** this Agreement has been executed by the undersigned as of the date set forth above.

AGREED TO BY:

_____
Thomas P. Anderson, Individually

_____
Kenneth Pecus, Individually

AND:

**SDMS, Inc.**

_____
Thomas P. Anderson, President

**ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.**

_____
Bryan J. Merryman, Chief Operating Officer

2