# EXHIBIT "B"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 06-cv-01212-WYD-BNB

ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.,

      Plaintiff,

v.

SDMS, INC.,
THOMAS P. ANDERSON, and
KENNETH PECUS,

      Defendants.

---

**AMENDED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF**

---

Plaintiff Rocky Mountain Chocolate Factory, Inc. ("RMCF" or "Franchisor"), by and through its attorneys, Perkins Coie LLP, for their Amended Complaint against Defendants SDMS, Inc. ("SDMS") and Thomas P. Anderson ("Anderson") and Kenneth Pecus ("Pecus") (altogether "Defendants") states as follows:

**<u>NATURE OF THE ACTION</u>**

1.     This is an action under the trademark laws of the United States for infringement and unfair competition, and for breach of contract. Plaintiff seeks, among other things, a preliminary and permanent injunction (i) enjoining Defendants and those acting in concert with them from wrongful and unlawful use of RMCF's federally registered trademarks, and (ii) enforcing Defendants' post-termination obligations set forth in the Franchise Agreements entered

into by and between the respective Defendants and Plaintiff predecessor in interest.  Plaintiffs

further seek damages, including for past due and lost future royalties.

## PARTIES

2.      RMCF is a Colorado corporation, with its principal place of business in Durango,

Colorado.

3.      SDMS is a California corporation with its principal place of business in San

Diego, California.

4.      Anderson is an adult individual residing in California.  Anderson is President and

50% owner of SDMS

5.      Pecus is an adult individual who resides in California.  Pecus is 50% owner of

SDMS.

## JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction over this action under 28

U.S.C. §§ 1331 & 1338, in that this is a civil action involving claims arising under the laws of

the United States, including an Act of Congress relating to trademarks.  All other claims are so

related to claims within the Court's original jurisdiction that they form part of the same case or

controversy.  *See*  28 U.S.C. § 1367.  This Court also has original subject matter jurisdiction over

this action under 28 U.S.C. § 1332(a)(1), in that this is a civil action where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

citizens of different States.

7.      Pursuant to Section 22.1 of the Franchise Agreement between the parties in this

case, the defendants agreed that "the exclusive venue for disputes between [the parties] shall be

in the state courts in La Plata County, Colorado and the federal courts located in Colorado and

each waive any objections they may have to the personal jurisdiction of or venue in the state

courts in La Plata County and federal courts located in Colorado."

8.      Personal jurisdiction and venue are proper in this Court under 28 U.S.C. § 1391

and paragraph 22.1 of the Franchise Agreements at issue in this action.  A substantial part of the

events and omissions giving rise to the claims asserted herein occurred in this district, and

section 21.1 of the Franchise Agreements at issue specify jurisdiction and venue in the District of

Colorado.

## GENERAL ALLEGATIONS

### A.      RMCF's Business and Trade and Service Marks

9.      RMCF has developed methods for establishing, operating and promoting retail

stores selling gourmet chocolates and other premium confectionery.

10.     RMCF grants the right to others, pursuant to written franchise agreements, to

develop and operate Rocky Mountain Chocolate Factory stores ("RMCF Stores"), using its

proprietary methods of doing business, as well as certain trademarks, service marks, and other

indicia of origin.

11.     Specifically, RMCF has extensively used certain trademarks, service marks, trade

names, logos, emblems and indicia of origin, including but not limited to the names and marks

ROCKY MOUNTAIN CHOCOLATE FACTORY and RMCF (the "RMCF Marks"), for the

purpose of identifying the source, origin and sponsorship of RMCF and its products and services.

The use of the RMCF Marks also distinguishes RMCF stores, products and services from those

of others.

**72**

12. The RMCF Marks are registered on the Principal Register of the United States Patent Office. The registrations of the RMCF Marks continue in full force and effect, and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

13. RMCF has given notice to the public of the registration of the RMCF Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure RMCF remains the exclusive user and licensor of the RMCF Marks.

14. RMCF has continuously used the RMCF Marks in interstate commerce in connection with (i) the promotion, sale and franchising of RMCF stores and (ii) the promotion and sale of the products and services they offer throughout the United States, including the State of California, since the date of their registration.

15. RMCF has the exclusive right to use and license the RMCF Marks and derivations thereof, as well as the distinctive RMCF System with which franchisees offer RMCF's products to the public under the RMCF Marks.

16. RMCF and its authorized franchisees use the RMCF Marks as the marks and trade identity by which the products and services offered by RMCF and their franchisees are distinguished from those of other quick service restaurants.

17. RMCF has extensively advertised and promoted RMCF Stores and the products and services it offers under the RMCF Marks throughout the United States. As a result of such efforts and the considerable money spent in connection therewith, the products offered by RMCF and its franchisees under the RMCF Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States, including the State of California.

18.     In addition to receiving license to use the RMCF Marks, RMCF franchisees are provided, through a required training program and receipt of materials including the RMCF Operation Manual, a variety of confidential information proprietary to RMCF, including methods, strategies and techniques developed by RMCF such as gourmet chocolate specialty recipes and cooking methods, confectionery manufacturing, processing, ordering, stocking and inventory control, technical equipment standards, order fulfillment methods and customer relations, marketing techniques, written promotional materials, advertising, and accounting systems (the "Licensed Methods.")

19.     As an example, RMCF franchisees sell candies they make onsite at their respective stores ("Store Candy"), prepared in accordance with RMCF's proprietary and secret recipes and techniques set forth in the confidential RMCF Operations Manual and Rocky Mountain Chocolate Factory Cookbook (the "Cookbook").  Such recipes and techniques are highly confidential and of considerable value to RMCF.

20.     RMCF undertakes significant efforts to maintain the confidentiality of its proprietary information and trade secrets, including by incorporating numerous provisions in its franchise agreements for the protection of such information, and requiring franchisees and their agents and associates to execute confidentiality and noncompetition agreements, as described with respect to Defendants be infra.

21.     RMCF has expended considerable effort and spent substantial sums in obtaining and developing the Licensed Methods. The Licensed Methods generally comprise information not known outside of RMCF's business, and which would be expensive and difficult for its competitors to acquire and duplicate, and constitute trade secrets.

**B.     The Parties' Franchise Agreement**

22.     On August 25, 2003, defendants SDMS, Anderson and Pecus ("Defendants" or "Franchisee") entered into a franchise agreement (the "Franchise Agreement") with RMCF, a true and correct copy of which is attached hereto as Exhibit A.

23.     Pursuant to the Franchise Agreement, Defendants became an RMCF franchisee and were granted the right to operate a Rocky Mountain Chocolate Factory store ("RMCF store") in San Diego, California.

24.     The term of the Franchise Agreement was to be ten years.  (Ex. A, § 17.1.) Further, the parties agreed that the "Franchise Agreement shall be interpreted under the laws of the State of Colorado and any disputes between the parties shall be governed by and determined in accordance with the substantive laws of the State of Colorado, which laws shall prevail in the event of any conflict of law."  (Ex. A, § 22.1.)

25.     Defendants agreed to pay RMCF a monthly royalty equal to 5% of their gross retail sales, plus a quarterly royalty (to which the monthly royalty payment would be credited) equal to 10% of their "adjusted gross retail sales."  (Ex. A, § 11.1.)

26.     Defendants also agreed to pay RMCF, in addition to royalties, a monthly Marketing and Promotion Fee in the amount of 1% of their gross retail sales.  (Ex. A, § 12.3.)

27.     Defendants were obligated to offer for sale Rocky Mountain Chocolate Factory brand candy manufactured by RMCF or its designees ("Factory Candy"), which they were to purchase from RMCF or its designees for resale at their stores.  A significant portion of RMCF's revenues result from its sale of Factory Candy to its franchisees such as Defendants.

28.    Under the Franchise Agreement, Defendants were permitted to seek permission

from RMCF to offer for sale products other than Factory Candy and Sale Candy, including

products developed by them. (Ex. A, § 13.4.)  In this regard, Defendants also agreed:

> All copyrightable works created by the Franchisee or any of its owners, officers or
> employees in connection with the Store shall be the sole property of the
> Franchisor.  The Franchisee assigns all proprietary rights, including copyrights, in
> these works to the Franchisor without additional consideration.  The Franchisee
> hereby assigns and will execute such additional assignments or documentation to
> effectuate the assignment of all intellectual property, inventions, copyrights, and
> trade secrets developed in part or in whole in relation to the Store, during the term
> of this Agreement. . . .  In addition to the foregoing, the Franchisee acknowledges
> and agrees that any improvements or modifications, whether or not copyrightable,
> directly or indirectly related to the Store, shall be deemed to be a part of the
> Licensed Methods and shall inure to the benefit of the Franchisor.

(Ex. A, § 14.8.).

29.    Defendants were further prohibited from offering for sale at their RMCF store

non-approved product.  Ex. A, § 18.2(b).

30.    As with all of RMCF's franchise agreements, a major focus of the Defendants'

Franchise Agreement was to protect RMCF's trade secrets and confidential and proprietary

information.  Under its terms, Defendants agreed to undertake a variety of obligations to protect

the confidentiality of such information, including the Licensed Methods, and agreed and

acknowledge that their right to use RMCF's Licensed Methods, trade secrets and confidential

and proprietary information was limited to use in connection with their RMCF store and that

they could not use or disclose those things in any other context.

31.    Under several terms of the Franchise Agreement, Defendants agreed to protect the

Licensed Methods as proprietary and confidential information, and in fact expressly agreed that

**76**

the Licensed Methods constituted trade secrets of RMCF, which they were licensed to use only in the operation of their authorized RMCF Store.  (Ex. A, §§ 14.3, 20.3.)

32.	Similarly, under Section 8.2, Defendants agreed that they would not "duplicate the Operations Manual nor disclose its contents to persons other than [their] employees or officers who have signed the form of Confidentiality and Noncompetition Agreement attached [to the Franchise Agreement] as Exhibit VI."   Defendants also agreed to sign, and have each of their officers, directors, partners, shareholders, General Manager, and even family members, execute a confidentiality agreement.  (Ex. A, § 20.4.)

33.	Indeed, the Franchise Agreement provided that unauthorized disclosure of the contents or any part of the RMCF Operations Manual or any of RMCF's other trade secrets constituted grounds for immediate termination of the Franchise Agreement.  (Ex. A, § 18.1(g)).

34.	Defendants also agreed not to compete with RMCF during the term of the Franchise Agreement, and that, upon termination of the Franchise Agreement for any reason:

> for a period of two years commencing on the effective date of termination or expiration, or the date on which the Franchisee ceases to conduct business, whichever is later, neither Franchisee nor its officers, directors, shareholders, and/or partners shall have any direct or indirect interest (through a member of any immediate family of the Franchisee or its Owners or otherwise) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent or in any other capacity in any Competitive Business, defined in Section 20.1 above, located or operating within a 10-mile radius of the Franchised Location or within a 10-mile radius of any other franchised or company-owned ROCKY MOUNTAIN CHOCOLATE FACTORY Store.

(Ex. A, § 20.2.  *See also* § 18.5(h).)

35.	Section 20.1 defined a "Competitive Business" as "any business operating . . . a retail, wholesale, distribution or manufacturing business deriving more than 10% of its gross receipts from the sale, processing or manufacturing of chocolate candies and other non-chocolate

confectionery items, Items, or other products which are offered in ROCKY MOUNTAIN

CHOCOLATE FACTORY Stores and which constitute 10% or more of the Gross Retail Sales of

any ROCKY MOUNTAIN CHOCOLATE FACTORY Store."

36.    Defendants acknowledged and agreed that, because they possessed skills and

abilities of a general nature, enforcement of the noncompetition covenant would "not deprive

them of their personal goodwill or ability to earn a living."  (Ex. A, § 20.2.)

37.    As they had promised in the Franchise Agreement, Defendants each executed a

Confidentiality and Noncompetition Agreement ("CNA"), reiterating and augmenting their

obligations and covenants with regards to protecting RMCF's proprietary information and

noncompetition.  (*See* Ex 1, Ex. VI thereto.)

38.    RMCF was entitled to terminate the Agreement, if, among other reasons,

Defendants (1) failed to make payments when due, and failed to cure such failure within 10 days

after receiving notice or (2) failed to maintain RMCF's operating procedures, failed to comply

with requirements of the Operations Manual, or engaged in any unauthorized business or practice

or sold any unauthorized product or service under the RMCF marks, and failed to cure such

defaults within 30 days of receiving notice.  (Ex. A, §§ 18.1 & 18.2.)

39.    The Franchise Agreement provided that, upon termination of the Agreement for

any reason, RMCF would have the option to purchase some or all of the assets of Defendants'

store, including all of Defendants' interest in the real estate upon which their store was located.

(Ex. A, § 18.4)  RMCF was entitled to exercise the option by providing written notice.

40.    Defendants expressly agreed, consistent with common law, that should the

Franchise Agreement prematurely terminate, RMCF would have the right in addition to all other

57023-0418/LEGAL11789922_2.DOC

available remedies, to "recover lost future Royalties during any period in which the Franchisee fails to pay such Royalties through and including the remainder of the then current term of this Agreement." (Ex. A, § 18.3(a).) Additionally, failure to make such payments, as well as other violations of Sections 18.1 and 18.2 of the Franchise Agreement, entitled RMCF to liquidated damages.

41. The Franchise Agreement also provided that, in the event of a dispute between the parties, the prevailing party would be entitled costs and expenses, including reasonable attorney fees. (Ex. A, § 22.8.)

## **DEFENDANTS BREACH THE FRANCHISE AGREEMENT**

42. Defendants operated their RMCF Store for approximately two years, during which time RMCF complied with all of its obligations owed to Defendants under the Franchise Agreement.

43. Defendant Anderson was the manager of Defendants' RMCF Store, and was responsible for its business and supervised its operations.

44. During this time, Defendants received extensive training and operational manuals and recipe books, all of which contained and revealed RMCF Licensed Methods and trade secrets. Further, Defendants developed recipes, products, methods, and techniques which became the proprietary property of RMCF pursuant to Section 14.8 of the Franchise Agreement.

45. On May 11, 2006 and May 21, 2005, Defendants unequivocally informed RMCF that they intended to abandon the Franchise Agreement, de-identify their Store as a RMCF Store, and continue operating their store as "the Gaslamp Chocolatier," commencing June 1, 2006. Defendants also repeated this intention to third parties.

46.     Defendants intended for the Gaslamp Chocolatier to derive more than 10% of its gross receipts from the sale, processing or manufacturing of chocolate candies and other non-chocolate confectionery items.

47.     Defendants intended to continue to use in operating the Gaslight Chocolatier methods, strategies and techniques that they used and developed in operating their RMCF Store, as well as other components of the Licensed Methods and RMCF's trade secrets.

48.     Based upon this immediate threat to RMCF's interests and proprietary information, RMCF filed suit in state court, asserting claims of declaratory relief and anticipatory breach of contract, and seeking a temporary restraining order ("TRO").

49.     In response, Defendants then agreed that they would not close the store and open and competing store on June 1 as they had previously stated, but rather, would engage in settlement discussions with RMCF regarding a way to resolve the dispute between the parties.

50.     The parties reduced their agreement (the "standstill agreement") to writing. In that agreement, Defendants agreed that they would continue to operate as RMCF Franchisees and comply with all obligations under the Franchise Agreement while the parties attempted to resolve the dispute.  The parties also agreed that should Defendants decide they wanted to press forward with their plan to terminate the Franchise Agreement and cease being RMCF franchisees, parties would reschedule a hearing on RMCF's motion for TRO, and Defendants would continue operating in full compliance with all obligations under the Franchise Agreement until after the Court heard and ruled on the motion.

51.     In breach of the standstill agreement, Defendants blatantly violated their obligations under the Franchise Agreement.  Specifically, Defendants removed all Factory

Candy from their store and began offering a variety of nonauthorized products for sale—including products from RMCF's competitors.

52.     In addition, Defendants failed to pay RMCF Royalty, Marketing and Promotion Fees due for the months of May 2006 through the present.

53.     As a result, on September 6, 2006, RMCF sent to Defendants, via certified mail—return receipt requested and Federal Express, a Notice of Default, demanding that Defendants cure their defaults within the timeframe set forth in the Franchise Agreement.  A true and correct copy of this Notice of Default is attached hereto as Exhibit B.

54.     Defendants failed to cure their defaults.  Instead, they informed RMCF that they intended to abandon the Franchise Agreement and re-open their location as a café.

55.     By letter dated September 28, 2006, RMCF notified Defendants that it was exercising its right to purchase the assets, including the leasehold interests, of Defendants' store. The letter also instructed Defendants not to de-identify the store.  A true and correct copy of this letter is attached hereto as Exhibit C.

56.     On October 11, 2006, RMCF sent to Defendants, via certified mail—return receipt requested and Federal Express, a Notice of Termination terminating the Franchise Agreement for Defendants' failures to cure their defaults.  The Notice of Termination also instructed Defendants to immediately comply with their post-termination covenants (including by ceasing use of RMCF's Marks and not operating a competing business), and again invoked RMCF's right to purchase the assets of Defendants' Store.  A true and correct copy of this Notice of Termination is attached hereto as Exhibit D.

57.     Defendants have since indicated that they will not comply with their post-termination obligations, including by shutting down the Store and ceasing use of RMCF's Marks.

58.     Defendants have also indicated that they are unwilling to allow RMCF to purchase all of the assets of their store, as provided under the Franchise Agreement.

## FIRST CLAIM FOR RELIEF

## LANHAM ACT - TRADEMARK INFRINGEMENT

59.     Plaintiff repeats and realleges ¶¶ 1 through 58 of its Amended Complaint as if fully set forth herein.

60.     Plaintiff's Marks have been and are registered on the principal register of the United States Patent and Trademark Office.

61.     Plaintiff is the owner, assignee and licensee of the registrant of the Marks.

62.     Defendants have used and are continuing to use the Marks without the consent of Plaintiff, and this use constitutes an infringing use which is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(l).

63.     As a direct and proximate result of the Defendants' infringement, Plaintiff has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

64.     Plaintiff has no adequate remedy at law because the RMCF Marks are unique and represent to the public the identity, reputation, and goodwill of RMCF such that damages alone cannot fully compensate Plaintiff for the Defendants' misconduct.

65.     Unless enjoined by the Court, the Defendants and those acting in concert with them will continue to use and infringe the RMCF Marks, to the irreparable injury of Plaintiff.

This threat of future injury to the business identity, goodwill, and reputation of Plaintiff requires injunctive relief to prevent the Defendants' continued use of the RMCF Marks, and to ameliorate and mitigate injuries of Plaintiff.

**SECOND CLAIM FOR RELIEF**

**LANHAM ACT - UNFAIR COMPETITION**

66.     Plaintiff repeats and realleges ¶¶ 1 through 65 of its Amended Complaint as if fully set forth herein.

67.     The Defendants' acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that Defendants' commercial use of RMCF's Marks, and their sale of unauthorized product in their RMCF Store, is likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C § 1125(a).

68.     As a direct and proximate result of the Defendants' unfair competition, Plaintiff has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

69.     Plaintiff has no adequate remedy at law because the RMCF Marks are unique and represent to the public Plaintiff's identity, reputation, and goodwill, such that damages alone cannot fully compensate Plaintiff for the Defendants' misconduct.

70.     Unless enjoined by the Court, the Defendants and those acting in concert with them will continue to compete unfairly with Plaintiff, to the irreparable injury of Plaintiff.  This

57023-0418/LEGAL11789922_2.DOC

threat of future injury to the business identity, goodwill, and reputation of Plaintiff requires injunctive relief to prevent the Defendants' continued unfair competition, and to ameliorate and mitigate the injuries of Plaintiff.

## THIRD CLAIM FOR RELIEF

## BREACH OF CONTRACTS

71.     Plaintiff repeats and realleges ¶¶ 1 through 70 of its Amended Complaint as if fully set forth herein.

72.     Defendants entered into a legally-binding Franchise Agreement and Noncompetition Agreements with Plaintiff, under which Defendants agreed to undertake certain obligations, including various post-termination obligations.

73.     Plaintiff performed all of its obligations under these Agreements.

74.     The Defendants have failed and refused to perform their post-termination obligations under the Franchise Agreement, including their obligations, among others, (i) to pay all royalties and other amounts owed Plaintiff, (ii) to cease identifying themselves as a RMCF franchisee or use any of Plaintiff's trade secrets, sign, symbols, devices, trade names, trade marks or other materials, (iii) to deliver to Plaintiff all materials bearing any of the RMCF's Marks or other indicia of origin, and (iv) abide by all restrictive covenants under the Franchise Agreement.

75.     Defendants' failure to perform their post-termination obligations under the Franchise Agreement and Noncompetition Agreements, including post-termination covenants not to compete, has injured and will continue to injure Plaintiff in its business, including its goodwill and reputation, resulting in lost revenues and profits, for which Plaintiff has no adequate remedy at law.

76.     Defendants continued operation of their Store further has and will continue to result in Defendants' breach of the various covenants in the Franchise Agreement and their Non-Competition Agreements regarding use and disclosure of RMCF's trade secrets and confidential and proprietary Licensed Methods (including those recipes developed by Defendants while they were still RMCF franchisees).  The Defendants' violations are inevitable.

77.     This threat of future injury to the business identity, goodwill, and reputation of Plaintiff requires that Defendants be ordered to perform their contractual post-termination obligations under the Franchise Agreement and Non-Competition Agreements to prevent any continued breach and to ameliorate and mitigate the injuries of Plaintiff.

78.     In addition to the injuries inflicted to Plaintiff's business identity, goodwill, reputation, and loss of control of its trade secrets and proprietary information, Plaintiff continues to be damaged under the terms of the Franchise Agreement by Defendants' refusal to pay all amounts due Plaintiff.

79.     Further, Defendants' refusal to comply with their obligations to sell to Plaintiff the assets related to their Store, under Section 18.4 of the Franchise Agreement, has and is causing RMCF irreparable and immeasurable harm, for which a damages award would be inadequate. Plaintiff is therefore entitled to an order requiring Defendants to specific perform their obligations under Section 18.4.

80.     Plaintiff is also entitled to its damages caused by Defendants' breaches of the Franchise Agreement.  These damages include, but are not limited to, the present value of its lost future profits and royalties and fees under the contract, liquidated damages and attorneys' fees and costs.

**85**

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF COLORADO TRADE SECRETS ACT

81.     Plaintiff repeats and realleges ¶¶ 1 through 80 of its Amended Complaint as if fully set forth herein.

82.     As set forth above, Defendants have and will inevitably violate the Colorado Trade Secrets Act in operating a chocolate retail store using Plaintiff's trade secrets and proprietary information.

83.     Defendants' conduct is unlawful and constitutes misappropriation of Plaintiff's trade secrets.

84.     Defendants' intended conduct threatens Plaintiff with substantial, immediate and irreparable harm.

85.     Plaintiff has no adequate remedy at law.

86.     Plaintiff is entitled to injunctive relief against Defendants, enjoining them from misappropriating Plaintiff's trade secrets.

87.     Further, because Defendants' conduct intending to violate Plaintiff's trade secrets right is willful, Plaintiff is entitled to statutory and/or treble damages.

## FIFTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT

88.     Plaintiff repeats and realleges ¶¶ 1 through 87 of its Amended Complaint as if fully set forth herein.

89.     The Franchise Agreement between the parties provides, among other things, that any copyrightable works created by the Defendants or their owners, officers, or employees in

connection with their Store shall be the sole property of Plaintiff, and that Defendants assigns all proprietary rights, including copyrights, in these works to Plaintiff without additional consideration.

90.     The Franchise Agreement also provided that upon termination of the Agreement for any reason, Plaintiff would have the option to purchase some or all of the assets of Defendants' store, including all of Defendants' interest in the real estate upon which their store was located.

91.     Defendants have created copyrightable works in their store, and have not assigned the proprietary rights to such works to Plaintiff.

92.     Defendants have indicated that they are unwilling to allow RMCF to purchase all of the assets of their store.

93.     An actual and justiciable controversy exists between Plaintiff and Defendants concerning the parties' respective rights and obligations under the Franchise Agreement as to the parties' respective rights and obligations, and other legal relations.

94.     Pursuant to 28 U.S.C. § 2201, this Court may declare the respective rights and obligations, and other legal relations of Plaintiff and the Defendants.

95.     Plaintiff is entitled to a declaration from the Court that it is entitled to the proprietary rights of copyrightable works created by Defendants in relation to their store and that it may purchase all the assets of Defendants' store, including Defendants' interest in the real estate upon which their store was located.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff demands judgment against Defendants and in favor of Plaintiff as follows:

1.      A preliminary and permanent injunction enjoining the Defendants, their agents, servants and employees, and those people in active concert or participation with them from:

        a.      Using the RMCF Marks or any trademark, service mark, logo or trade name that is confusingly similar to the RMCF Marks;

        b.      Otherwise infringing RMCF Marks or using any similar designation, alone or in combination with any other components;

        c.      Passing off any of their products or services as those of RMCF or its authorized franchisees;

        d.      Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their businesses, products or services;

        e.      Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with RMCF and its franchisees or any of RMCF's products or services;

        f.      Unfairly competing with RMCF or its franchisees in any manner;

        g.      Competing with RMCF pursuant to the terms of the Franchise Agreement and the Non-Competition Agreement for a period of two years commencing on the date Defendants cease conducting business;

**88**

h.      Using or misappropriating trade secrets and other confidential or proprietary information belonging to Plaintiff and using such information to their advantage and to the detriment of Plaintiff;

2.      A preliminary and permanent injunction ordering the Defendants, their agents, servants and employees, and those people in active concert or participation with them to perform their post-termination obligations under the Franchise Agreement, including:

a.      Requiring Defendants to assign and execute such additional assignments or documentation to effectuate the assignment of all intellectual property, inventions, copyrights, and trade secrets developed in part or in whole in relation to the Defendants' RMCF Store during the term of the Franchise Agreement, and prohibiting Defendants from using such property, inventions, copyrights, and trade secrets without the permission of RMCF; and

b.      Requiring Defendants to sell the assets of their Store to Plaintiff, and to not de-identify the Store pending closing of the transfer to Plaintiff, and to execute any necessary documents to effectuate assignment of lease for the store;

3.      An order pursuant to 15 U.S.C. § 1118 and the Franchise Agreement that all labels, signs, prints, packages, wrappers, receptacles, uniforms, logo items, and advertisements in the possession of the Defendants, their affiliates, subsidiaries, officers, agents, servants and employees, and those people in active concert or participation with them bearing RMCF's Marks be delivered to Plaintiff at the Defendants' cost, with the exception of the signs and trade dress fixtures, which are to be sold to RMCF and remain in place;

4.      An order that the Defendants be required to promptly eliminate their advertising under RMCF's Marks or any other confusingly similar designations from all media including, but

**89**

not limited to, newspapers, flyers, coupons, promotions, signs, menus, telephone books, telephone directory assistance listings and mass mailings, all at the Defendants' cost;

5.      An order that the Defendants be required to file with the Court and to serve upon Plaintiff's counsel within ten (10) days after entry of any injunction order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

6.      An order that the Defendants account and pay over to Plaintiff all gains, profits and advantages derived by them as a result of their infringement of RMCF's Marks, breach of contract, misappropriation of trade secrets and unfair competition to the full extent provided for by federal and state law;

7.      An order that the Defendants pay to RMCF such damages as RMCF has sustained by reason of said trademark infringement, breach of contract, misappropriation of trade secrets, and unfair competition; and that, because of the willful nature of said infringement, the Court enter judgment for RMCF for three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117 and/or statutory treble damages per the Colorado Trade Secrets Act.

8.      An order requiring the Defendants to immediately perform their contractual post-termination obligations under the Franchise Agreement, including, without limitation, their obligations:

a.      To pay all royalties and other amounts owed Plaintiff pursuant to the Franchise Agreements or otherwise;

**90**

b.       To take any and all necessary steps to cancel and/or transfer to Plaintiff any telephone numbers associated with RMCF's Marks used in connection with the operation of the Defendants' former RMCF Store; and

c.       To return to Plaintiff all operating manuals and other materials provided to the Defendants in connection with the operation of their former RMCF Store and all materials bearing any of RMCF's Marks;

9.       An order requiring Defendants to specifically perform their obligations under the Franchise Agreement to allow RMCF to purchase the assets of its Restaurant;

10.       An award of damages equal to the past-due amounts owed, the net present value of the Royalties and Marketing and Promotion Fees that would have become due had the Defendants not defaulted under the Franchise Agreement and such other damages proven at trial of this matter;

11.       A judicial declaration that it is entitled to the proprietary rights of copyrightable works created by Defendants in relation to their store and that it may purchase all the assets of Defendants' store, including Defendants' interest in the real estate upon which their store was located;

12.       An award of the costs and expenses, including reasonable attorney's fees, incurred by Plaintiff in connection with this action as provided for by statute and the parties' Franchise Agreements and the Promissory Notes;

13.       An award of prejudgment interest; and

14.       Such other and further relief as the Court deems just and proper.

Dated this 20th day of October, 2006.

Respectfully submitted,

s/ Romney S. Philpott
Romney S Philpott
Attorneys for Plaintiff
Perkins Coie, LLP
1899 Wynkoop Street, Suite 700
Denver, CO 80202
(303) 291-2300
rphilpott@perkinscoie.com

**92**

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2006, I electronically filed the foregoing **Amended Complaint for Preliminary and Permanent Injunctive Relief, Damages, and other Relief** with the Clerk of Court using the **CM/ECF system** which will send notification of such filing to the following email addresses:

- **Adam Joseph Goldstein**
  agoldstein@wsteele.com
  phebert@wsteele.com

 

 

 

s/ *Romney S. Philpott*
Romney S. Philpott
Attorney for Plaintiff
Perkins Coie LLP
1899 Wynkoop Street, Suite 700
Denver, CO 80202
Telephone:  (303) 291-2300
Facsimile:  (303) 291-2400
Email:  rphilpott@perkinscoie.com

57023-0418/LEGAL11789922_2.DOC