# EXHIBIT "C"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  06-cv-01212-WYD-BNB

ROCKY MOUNTAIN CHOCOLATE FACTORY, INC., a Colorado Corporation,

Plaintiff,

v.

SDMS, INC., a California Corporation;
THOMAS P. ANDERSON, individually; and
KENNETH PECUS, individually,

Defendants.

---

**ORDER**

---

THIS MATTER is before the Court on Plaintiff's Motion for Preliminary Injunction

[#25] filed on October 20, 2006; Defendants' Cross-Motion for Preliminary Injunction

[#27] filed on October 24, 2006; Defendants' Objections to Evidence [#29] filed on

October 24, 2006; and Defendants' Motion to Transfer [#41] filed on November 7, 2006.

I first address Defendants' Objections to Evidence and then move on to the respective

Motions for Preliminary Injunction.  Lastly, I will address Defendants' Motion to Transfer

the Case.

**I.  Defendants' Objection to Evidence**

Defendants argue that certain evidence before this Court on Plaintiff's motion is

inadmissible pursuant to Federal Rule of Civil Procedure 408.  Fed. R. Civ. Pro. 408

states that, "evidence of conduct or statements made in compromise negotiations is...

not admissible."  Rule 408 specifically states that it only applies to "evidence of conduct

94

or statements made *in compromise negotiations*." "[T]he question under the rule is 'whether the statements or conduct were intended to be part of the negotiations toward the compromise.'" Ramada Devel. Co. v. Rauch, 644 F.2d 1097, 1107 (5th Cir. 1981)(quoting 2 J. Weinstein & M. Berger, Weinstein's Evidence P 408(03)).

Further, evidence of a settlement is admissible for any purpose other than to prove "'liability for or invalidity of the claim or its amount.'" Bradbury v. Phillips Petroleum Co., 815 F.2d 1356 (10th Cir. 1987)(citing the rule). For example, evidence of statements and conduct made in compromise negotiations can be admitted to prove the basis of a new claim. See e.g. Uforma/Shelby Business Forms LLC v. NLRB, 111 F.3d 1284 (1997)("courts have held that Rule 408 is inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions").

I find that all of the evidence objected to is admissible for the purpose of Plaintiff's Motion for a Preliminary Injunction. The evidence regarding the "standstill agreement" and alleged breach of that agreement, as well as the evidence of Plaintiff's notice of default and termination of the Franchise Agreement, is admissible for the limited purpose of proving the allegations in support of the additional claims brought by Plaintiffs pursuant to the Lanham Act. Further, evidence of Defendants' conduct that was not *made in settlement negotiations* is not governed by Rule 408. For example, Defendants' objected to Plaintiff's evidence that Defendants continued to stock their store with unauthorized candy during the same time period they were negotiating with Plaintiff. Although the conduct occurred concurrently with the settlement negotiations,

-2-

95

it was not part of these negotiations and Rule 408 does not apply.  Accordingly, I find

all of Defendant's Objection to Evidence pursuant to Rule 408 to be without merit.

## II.  Motion and Cross-Motion for Preliminary Injunction

I will next address Plaintiff's Motion for Preliminary Injunction and Defendants'

Cross-Motion for Preliminary Injunction, respectively.

"Ordinarily, a movant seeking a preliminary injunction must establish:

(1) a substantial likelihood of success on the merits;
(2) irreparable injury to the movant if the injunction is denied;
(3) the threatened injury to the movant outweighs the injury to the party opposing
the preliminary injunction; and
(4) the injunction would not be adverse to the public interest.

Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,  269 F.3d 1149, 1153 (10th

Cir. 2001); see also SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir.

1991).  "Because a preliminary injunction is an extraordinary remedy, the movant's right

to relief must be clear and unequivocal."  Dominion Video, 269 F.3d at 1154.

Whenever a party is asking the court to "affirmatively require the [opposing party] to act

in a certain way," the movant "must satisfy an even heavier burden of showing that the

four [preliminary injunction] factors... weigh heavily and compellingly in movant's favor

before such an injunction may be issued."  Schrier v. University of Colorado, 427 F.3d

1253, 1261 (10th Cir. 2005).

### A.  Plaintiff's Motion for a Preliminary Injunction

I will first analyze Plaintiff's Motion for a Preliminary Injunction.  I find that

Plaintiff meets the first requirement and has demonstrated to the Court a substantial

likelihood that Plaintiff will meet with success on the merits of its Trademark

Infringement and Breach of Contract Claims.

In order to prove trademark infringement, Plaintiff must show that (1) that the trademark is valid and (2) has been infringed. Drexel Enterprises, Inc. v. Richardson, 312 F.2d 525 (10th Cir. 1962); USA Network v. Gannett Co., 584 F. Supp. 195 (D. Colo. 1984). Infringement of a trademark occurs when the infringer's use of a trademark "is likely to cause confusion in the marketplace concerning the source of the different products." Coherent, Inc. v. Coherent Technologies, Inc., 736 F. Supp. 1055, 1063 (D. Colo. 1990) (citing Beer Nuts, Inc. v. Clover Clubs Food Co., 805 F.2d 920, 924 (10th Cir. 1986), aff'd, 935 F.2d 1122 (10th Cir. 1991). "The unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement." Burger King v. Mason, 710 F.2d 1480, 1492 (11Cir. 1983)(quoting Professional Golfer's Ass'n of Amer. v. Bankers Life & Casualty Co., 514 F.2d 665, 670 (5th Cir. 1975). Plaintiff must demonstrate that "*unauthorized* trademark use occurred to prevail on the merits of a trademark infringement claim against a franchisee." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1308 (11th Cir. 1998). This burden "necessitates some type of showing that the franchisor [Plaintiff] properly terminated the contract purporting to authorize the trademarks' use, thus resulting in the *unauthorized* use of trademarks by the former franchisee." Id.

In the case at hand, it is undisputed that Plaintiff's Rocky Mountain Chocolate Factory trademark is valid and that Defendants continue to use these marks in their San Diego store. Accordingly, the only issue remaining before the Court is whether or

-4-

not this use is authorized.  Plaintiff argues that upon the lawful termination of the

Franchise Agreement, Defendants use of Plaintiff's marks became *unauthorized*.

The Franchise Agreement contemplates the need for termination of the

Franchise and sets out a procedure for this occurrence.  Pursuant to the Franchise

Agreement, termination can occur when a franchisee fails to meet its financial

obligations:

> [T]he Franchisor shall have the right, at its option, to terminate this Agreement...
> If the Franchisee fails to pay any amounts due the Franchisor or affiliates...
> within 10 days after receiving notice that such fees or amounts are overdue.
> (Franchise Agreement 18.1);

Additionally, termination can occur if a franchisee does not meet the operational

requirements of the Franchise Agreement:

> [T]he Franchisor shall have the right to terminate this Agreement... effective
> upon 30 days written notice to the Franchisee, if the Franchisee breaches any
> other provision of this Agreement and fails to cure the default during such 30-
> day period.  In that event, this Agreement will terminate without further notice to
> the Franchisee, effective upon expiration of the 30-day period.
> (Franchise Agreement, 18.2).

It is undisputed that on September 6, 2006, Defendants were in violation of both the

financial and operational obligations of the Franchise Agreement.  First, there was

undisputed evidence at the hearing that Defendants had ceased paying their royalty

and marketing fees.  Additionally, Defendants had ceased to order RMCF brand

products and began stocking their San Diego store with unauthorized brand

chocolates, which was a violation of Defendants' operational obligations under the

Franchise Agreement sections 10.1(a) and 10.1(e).

Plaintiff sent Defendants the requisite Notice of Default on September 6, 2006.

-5-

98

Thirty days later, Defendants still had not complied with either the operational or financial obligations of the Franchise Agreement.  Accordingly, on October 11, 2006, Plaintiff sent to Defendants a Notice of Termination, advising Defendants that Plaintiff was exercising its right to terminate the Franchise Agreement.  While Defendants provided testimony at the hearing that they had removed the unauthorized products from their San Diego store and were currently in compliance with the operational obligations of the Franchise Agreement, Defendants admitted that they had not yet paid the past due royalty or marketing fees.

Defendants do not dispute the above cited facts but, instead, point out that they have filed counterclaims in this matter.  However, Defendants did not provide any testimony or evidence supporting these counterclaims at either the hearing or in their Response to Plaintiff's Motion (or in their own Cross-Motion).  As a result, I am currently unable to make a determination as to the likelihood of success on the merits of these counterclaims.

I also find that Defendants have not complied with their post-termination obligations.  Defendants' post-termination obligations are outlined in section 18.5 of the Franchise Agreement: upon termination, Defendants must dissociate themselves from the Rocky Mountain Chocolate Factory, redeliver all property of Plaintiff (including trade manuals, etc.), and pay all fees due and owing to Plaintiff.  It is undisputed that, as of the date of the hearing, Defendants had not returned said property and had not paid all fees due and owing to Plaintiff.

Further, Plaintiff asserts that it is likely to succeed on the merits of its claim for

Breach of the non-compete clause. The success of this claim is dependent on a finding

that the non-compete clause is valid pursuant to Colorado law. The pertinent Colorado

statute is C.R.S. § 8-2-113, which reads in relevant part:

> "[a]ny covenant not to compete which restricts the right of any person to receive
> compensation for performance of skilled or unskilled labor for any employer shall
> be void, but this subsection does not apply to: (b) any contract for the protection
> of trade secrets." Colo. Rev. Stat. § 8-2-113(2).

"For a covenant not to compete to fit within the trade secret exception to §8-2-

113(2)(b), the purpose of the covenant must be the protection of trade secrets, and the

covenant must be reasonably limited in scope to the protection of those trade secrets."

Gold Messenger, Inc. v. McGuay, 937 P.2d 907, 910 (Colo. App. 1997). I find that the

purpose of the covenant not to compete in this case is to protect Plaintiff's trade

secrets. Accordingly, I find that this covenant falls within Colo. Rev. Stat. § 8-2-

113(2)(b) and is valid under Colorado law.

Additionally, however, there is a rule of reasonableness as to both duration and

geographic scope of a covenant not to compete. See Nat'l Graphics Co. v. Dilley, 681

P.2d 546 (Colo. App. 1984); Boulder Med. Center v. Moore, 651 P.2d 464 (Colo. App.

1984). "Whether a particular duration or geographic scope is 'reasonable' in non-

competition agreement depends on the facts of each case." Energex Enterprises, Inc.

v. Anthony Doors, Inc., 250 F.Supp.2d 1278, 1283 (D.Colo. 2003). In determining

reasonableness, "the central concern... is whether the provision is necessary to

safeguard the plaintiff's business." Id. "If the trial court finds a particular non-

competition agreement unreasonable in either duration or scope, it also has discretion

to modify the terms of the agreement to render it reasonable and enforceable." Id.

-7-

In the case at hand, the covenant not to compete provides that Defendants will

not compete for a period of two years within a 10-mile radius of the current location or

any other franchised or company-owned Rocky Mountain Chocolate Factory.

(Franchise Agreement 20.2).  I find the duration of two years to be reasonable and

enforceable.  However, for the purpose of this preliminary injunction, I find the scope of

the non-compete clause to be unreasonable.  There are numerous Rocky Mountain

Chocolate franchise stores in Southern California.  Defendants provided a map

demonstrating that if the full scope of the non-compete clause were enforced,

Defendants would not be able to operate a similar type business from at least

Oceanside, California, to Tijuana, Mexico, a large geographical area.  I find that to

allow the covenant not to compete to extend over such a sizable area is unreasonable

and unnecessary to safeguard Plaintiff's business.  I do find, however, that the

language prohibiting competition within a ten-mile radius of the current San Diego

location is reasonable.  Accordingly, I am modifying the noncompete clause (for

purposes of the preliminary injunction) to restrict Defendants from competing within a

10-mile radius of the current San Diego location only.

I further find that Plaintiff has met its burden of showing that the balancing of the

harms weighs in favor of my granting its request for a preliminary injunction.  Once a

party makes out a *prima facie* case of trademark infringement, courts typically presume

that irreparable injury will occur.  See County Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d

1280, 1288-89 (10th Cir. 1996) (Tenth Circuit joined "the overwhelming majority of our

sister circuits [in] recogniz[ing] a presumption of injury at the preliminary injunction

stage once a copyright infringement plaintiff has demonstrated a likelihood of success

on the merits); Hartford House, Ltd. v. Hallmark Cards, Inc., 647 F. Supp. 1533, 1545

(D. Colo. 1986), "likelihood of consumer confusion establishes both the requisite

probability of prevailing on the merits and the risk of irreparable harm," (citing, *inter alia*,

Amoco Oil Co. v. Rainbow Snow, 748 F.2d 556, 558 (10th Cir. 1984), aff'd, 846 F.2d

1268 (10th Cir. 1988); see also Opticians Ass'n of America v. Indep. Opticians of

America, 920 F.2d 187, 195-97 (3rd Cir. 1990) (once a likelihood of confusion is

shown, the "inescapable conclusion is that there was also irreparable injury").

Similarly, "where there is a non-competition agreement, breach is the controlling factor

and injunctive relief follows almost as a matter of course."  I Can't Believe It's Yogurt v.

Gunn, 1997 WL 599391, at 20 (quoting Miller v. Kendall, 541 P.2d 126, 127 (Colo.

App. 1975).

Plaintiff has made out a *prima facie* case for trademark infringement.  Plaintiff

also provided testimony at the hearing that Defendants' continued unauthorized use of

Plaintiff's trades and marks will harm Plaintiff's reputation.  I find the harm Plaintiff

would sustain without an injunction outweighs the potential harm of an injunction to

Defendant.  See Autoskill, Inc. v. Nat'l Educational Support Systems, Inc., 994 F.2d

1476 (10th Cir. 1993).

Finally, I find that granting Plaintiff's request for a preliminary injunction is in the

public interest.  Courts often find in trademark infringement cases that the public

interest would be favored by the entry of an injunction.  See Hartford House, 647 F.

Supp. at 1545 ("it is in the public interest to enforce the policies of the Lanham Act and

to prevent the likelihood of public confusion from becoming an actuality"). Trademarks desirably promote competition and the maintenance of product quality. As a result, Congress determined that "a sound public policy requires that trademarks should receive nationally the greatest protection that can be given them." Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 193 (1985). National protection of trademarks is necessary in order to secure to the owner the goodwill of his business and to protect the ability of consumers to distinguish among competing producers. Id. at 198. Accordingly, because Plaintiff has demonstrated they have a valid mark and it is likely being infringed, the public interest is best served by prohibiting the further infringement of these marks.

I find Plaintiff's Motion for Preliminary Injunction to have merit. In their Motion for Preliminary Injunction, Plaintiff requests that this court order that Defendants be enjoined from infringing on Plaintiff's marks and competing in violation of the Franchise Agreement. I find that Plaintiff has demonstrated this relief (with a modification of the non-competition clause) to be warranted. Additionally, however, Plaintiff requests that this court order Defendants to sell the assets of their Store to Plaintiff, pursuant to the Franchise Agreement. This second request is for a mandatory injunction, which is disfavored. At this time, I do not find that Plaintiff has made the requisite showing in order for me to force Defendants to sell their assets (including their leasehold) to Plaintiff. Granting this extraordinary relief would go beyond what is necessary to protect Plaintiff from irreparable injury. Accordingly, I deny Plaintiff's request for injunctive relief requiring Defendants to sell the store's assets to Plaintiff.

-10-

**103**

## B.  Defendants' Cross-Motion for a Preliminary Injunction

I now turn to Defendants' Cross-Motion for a Preliminary Injunction.  Defendants ask this court to enter a preliminary injunction that would allow Defendants to continue operating the location in question as an RMCF franchise and force Plaintiff RMCF to sell Defendants RMCF product.  I find that Defendants have not demonstrated their right to relief in the following particulars: first, Defendants have not shown that they are likely to succeed on the merits; second, Defendants have failed to show that they are entitled to relief pursuant to the equitable or "harm" factors; and, third, Defendants have not met their financial obligations under the Franchise Agreement.  Consequently, Defendants have not demonstrated that they are entitled to equitable relief.

As explained in detail above, Plaintiff made out a *prima facie* case for trademark infringement.  While Defendants have filed counterclaims in this action, the merits of these counterclaims were not argued by Defendants in either their pleadings or during the hearing.  Accordingly, I find that Defendants have failed to show that they have a substantial likelihood of success in the present action.

Further, I find the balance of harms weighs in favor of Plaintiffs.  Similar to the case of Burger King Corp. v. Majeed, "any harm suffered by Defendants was brought about by their own actions in refusing to pay their contractual obligations to [the plaintiff]."  805 F.Supp. 994 (S.D.Fla. 1992).  From the testimony at the hearing, it became clear that Defendants had not paid Plaintiff the royalty and marketing fees required by the Franchise Agreement.  I am disinclined to enter an injunction requiring RMCF to conduct business with Defendants when Defendants remain in non-

-11-

**104**

compliance with the Franchise Agreement.

### C. Security Requirement

Rule 65(c) provides in part that no preliminary injunction shall issue "except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." FED. R. CIV. P. 65. "[T]he trial court has 'wide discretion' in setting the amount of the preliminary injunction bond." Dominion Video Satellite, 269 F.3d at 1158. In the present case, I find that more than a mere nominal bond is necessary. Defendants have filed counterclaims in the present action. The merit of these claims was not argued by either party during the Preliminary Injunction proceedings. On the record before me, I conclude that a substantial bond is necessary in case it is later determined that Defendants' were wrongfully enjoined. Consequently, I order that a security of $150,000.00 be deposited with the Clerk of the Court before this preliminary injunction becomes effective.

### III. Defendants' Motion to Transfer Case

I will now briefly address Defendants' Motion to Transfer the Case [#41] to the United States District Court for the Southern District of California.

Defendants first argue that this case should be removed pursuant to 28 U.S.C. 1406(a). This argument is without merit as Defendants removed this case to federal court. "Venue in removal actions is governed by [28 U.S.C.] § 1441." Poliaai v. Cowles Magazines, Inc., 345 U.S. 663, 665 (1953). Section 1441 reads, "[A]ny civil action brought in a State court of which the district courts of the United States have original

jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." This case was originally filed in the District Court for La Plata County, Colorado. Therefore, venue is proper in the United States District Court for the District of Colorado.

Defendants also argue that venue should be transferred pursuant to 1404(a). 28 U.S.C. § 1404(a) provides as follows: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of showing the existing forum is inconvenient. Chrysler Credit Corp. v. County Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991). "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." William A. Smith Contracting Co. v. Travelers Indem. Co., 467 F.2d 662, 664 (10th Cir.1972). Defendants did not meet this burden, either in their Motion or at the hearing.

The decision of whether to transfer an action lies within the sound discretion of the trial judge. See Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox Corp., 579 F.2d 561, 567 (10th Cir.1978). Under standards articulated by the United States Supreme Court, I must "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quotation omitted). Among the factors a district court should consider are:

[1] the plaintiff's choice of forum; [2] the accessibility of witnesses and

-13-

other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and [9] all other considerations of a practical nature that make a trial easy, expeditious and economical. See Chrysler, 928 F.2d at 1516 (quotation omitted).

While the Rocky Mountain Chocolate Franchise store at issue is located in San Diego, California; Rocky Mountain Chocolate Factory corporate headquarters are in Colorado. Defendants do not identify for the court any specific witnesses, other than the parties, who are located in California. While Defendants argue that litigating this case in Colorado would be a burden on them, this burden would merely shift to Plaintiff if this case were transferred to California. Plaintiff chose to bring this action in Colorado, Colorado is the proper venue for this action, and Defendants have not shown that Plaintiff's choice of forum should be disturbed. Accordingly, I find that this case should not be transferred to the District Court for the Southern District of California.

In conclusion, it is

ORDERED that Defendants' Objection to Evidence is **DENIED**. It is

FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction is **GRANTED** in part, and **DENIED** in part. Specifically, the Preliminary Injunction is entered as follows:

1.    Defendants, their agents, servants and employees, and those people in

-14-

**107**

active concert or participation with them are preliminarily enjoined from:

    a.    Using the RMCF Marks or any trademark, service mark, logo or trade name that is confusingly similar to the RMCF Marks;

    b.    Otherwise infringing RMCF Marks or using any similar designation, alone or in combination with any other components;

    c.    Passing off any of their products or services as those of RMCF or its authorized franchisees;

    d.    Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their businesses, products or services;

    e.    Causing a likelihood of confusion or misunderstanding as to their affiliation, connection or association with RMCF and its franchisee or any of RMCF's products or services;

    f.    Unfairly competing with RMCF or its franchisees in any manner;

    g.    Competing with RMCF within 10 miles of the current location for a period of two years commencing on the date Defendants cease conducting business;

    h.    Using or misappropriating trade secrets and other confidential or proprietary information belonging to Plaintiff and using such information to their advantage and to the detriment of Plaintiff;

2.    Defendants are ordered to promptly eliminate their advertising under RMCF's Marks or any other confusingly similar designations from all media including, but not limited to, newspapers, flyers, coupons, promotions, signs, menus, telephone books, telephone directory assistance listings and mass mailings, all at the Defendants' cost;

3.    Defendants are ordered to file with the Court and to serve upon Plaintiff's

counsel within ten (10) days after the required security is posted, a written report, under oath, setting forth in detail the manner in which they have complied with this order;

4.      This preliminary injunction will be effective upon the posting of a bond in the amount of $150,000.00 payable in cash or corporate surety.  It is

FURTHER ORDERED that Defendants' Cross-Motion for Preliminary Injunction is **DENIED**.  It is

FURTHER ORDERED that Defendants' Motion to Transfer Case is **DENIED**.

Dated:  December 8, 2006

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge