**EXHIBIT "E"**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO: 06-cv-01212-WYD-BNB

ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.,
a Colorado corporation,

        Plaintiff,

    vs.

SDMS, INC., a California corporation,
THOMAS P. ANDERSON, an individual, and
KENNETH PECUS, an individual,

        Defendants.

---

SDMS, INC., a California corporation,
THOMAS P. ANDERSON, an individual, and
KENNETH PECUS, an individual,

        Counter-claimants,

    vs.

ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.,
a Colorado corporation,

        Counter-defendant.

---

## DEFENDANTS AND COUNTER-CLAIMAINTS'
## FIRST AMENDED COUNTER-CLAIMS FOR
## DAMAGES AND EQUITABLE RELIEF

---

Counter-claimants, SDMS, INC., THOMAS P. ANDERSON and KENNETH PECUS ("Defendants," or "Franchisees"), by and through their counsel, Lynn & Fortune, LLP, for their First Amended Counter-claims state as follows: **(All new and/or additional material will be listed in bold-fact type font.)**

## PARTIES

1.  Counter-claimants, THOMAS P. ANDERSON ("ANDERSON") and KENNETH PECUS ("PECUS")[1] are individuals residing in the Southern District of San Diego County, State of California.

2.  Counter-claimant, SDMS, INC. ("SDMS") is a California corporation doing business as a Rocky Mountain Chocolate Factory franchisee in the Southern District of San Diego County, State of California.

3.  Counter-defendant, ROCKY MOUNTAIN CHOCOLATE FACTORY, INC. ("RMCF") is a Colorado corporation residing in La Plata County, Colorado. RMCF conducts business in the Southern District of San Diego County, State of California.

## JURISDICTION AND VENUE

4.  This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1), in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

5.  While Counter-claimants are domiciled outside the State of Colorado and Counter-defendant resides in and/or its principal place of business is domiciled in the State of

---

[1] Together with SDMS, INC, collectively referred to as "Counter-claimants" or "Franchisees".

Colorado **VENUE IS NOT PROPER** in this Court because: all written and verbal

agreements at issue in this action were made and were to be performed in San Diego,

California AND RMCF's Offering Circular specifically states that section 20040.4 of the

California Business and Professions Code making void any requirement to litigation

outside the State of California applies to the interpretation and enforcement of the RMCF

Franchise Agreement.

### GENERAL ALLEGATIONS

6.    At all times throughout Counter-claimant, ANDERSON's life, his family has been

employed in the chocolate/candy making and retail industry. In this regard, both of

ANDERSON's paternal grandparents, his father, his mother and his aunt worked at the

Schrafft Chocolate Factory in Boston, Massachusetts. Since 1974, ANDERSON's

mother has been employed at "Russo's Fine Chocolates" located in Saugas,

Massachusetts.

7.    Throughout his life, ANDERSON would visit is mother at Russo's Fine Chocolates

where she would teach him various candy and chocolate making techniques and recipes.

8.    In or about the spring of 2003, ANDERSON decided that he would like to enter the

chocolate/candy making and retail business for himself and he began researching the

business opportunities near his home in San Diego, California.

9.    Upon information and belief and thereon alleged, in or about June 2003, ANDERSON

contacted Counter-defendant, ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.

("RMCF") with regards to becoming a licensed RMCF franchisee.

10.   Upon information and belief and thereon alleged, before RMCF could legally offer their

franchise for sale in the State of California, they had to first file an application and be

approved by the California Department of Corporations. The application, which required

RMCFbecome a registered franchisor in the State of California, is governed by the

California Franchise Investment Law (California Corporate Code sections 31000 through

31516. Further, a franchisor is required to submit to certain sections of the California

Business and Professions Code related to the interpretation and enforcement of the

franchise relationship.

11.  Upon information and belief and thereon alleged, in or about June 2003, Counter-

claimants were provided with a copy of the RMCF Offering Circular. The RMCF

Offering Circular included an Addendum which states, in pertinent part, "THE

CALIFORNIA FRANCHISE INVESTMENT LAW REQUIRES THAT A COPY OF

ALL PROPOSED AGREEMENT RELATING TO THE SALE OF THE FRANCHISE

BE DELIVERED TOGETHER WITH THE OFFERING CIRCULAR. ... The

California Business and Professions Code sections 20000 through 20043 provide rights to

the franchisee concerning termination or non-renewal of the franchise. If the Franchise

Agreement contains provisions inconsistent with the law, the law will control. ... The

Franchise Agreement contains a covenant not to compete that extends beyond the

termination of the Franchise. This provision may not be enforceable under California

law. ... The Franchise Agreement requires application of the laws of the State of

Colorado. This provision may not be enforceable under California law." A true and

correct copy of the RMCF Offering Circular is attached as Exhibit "1" hereto and is

incorporated by reference herein. **(Because there has been no change to  Exhibit "1"**

> **by this First Amended Counter-claims, it has not been attached to this pleading. Please refer to the Counter-claims filed by SDMS, ANDERSON and PECUS on November 7, 2006, Doc. No. 40-2).**

12. Upon information and belief and thereon alleged, the language cited to in paragraph 10 above was a requirement of RMCF's registration to sell its franchises in the State of California.

13. Upon information and belief and thereon alleged, RMCF was also required to include financial statements and information regarding the number of transferred franchises and terminated franchises within three years of the date of the Offering Circular.

14. **Upon information and belief and thereon alleged, RMCF was required to include a statement of market competition listing all potential competitors to the franchisee, known to RMCF.**

15. Upon information and belief and thereon alleged, on August 23, 2003, Counter-claimants executed the RMCF Franchise Agreement which contains the following provisions, in pertinent part:

    a.    Paragraph 2.2 – " … The Franchisee is required to devote a minimum of fifty percent (50%) of all retail display space to ROCKY MOUNTAIN CHOCOLATE FACTORY brand assorted bulk chocolates and boxed and packaged candies. The franchisee's [RMCF] Store must feature [RMCF] brand candy manufactured by the Franchisor …"

b.     Paragraph 5.1 – "The Franchisee shall obtain the Franchisor's prior written approval before executing any lease or purchase agreement for the Franchise Location.

c.     Paragraph 10.1(e) – "The Franchisee shall offer only authorized products and services ..."

d.     Paragraph 11.1 – "The Franchisee agrees to pay to the Franchisor a monthly royalty ("Royalty") equal to 5% of its Gross Retail Sales generated from or through its [RMCF] Store ..."

e.     Paragraph 12.3 – "The Franchisee shall pay to the Franchisor, in addition to Royalties, a fee of 1% of the total amount of the Franchisee's Gross Retail Sales ("Marketing and Promotion Fee") ..."

f.     Paragraph 13.4 – "The Franchises shall be required to purchase all of its Factory Candy for its RMCF Store from the Franchisor or its designee."

g.     Paragraph 18.1(a) – "Termination by Franchisor – Ten Days Notice. <u>Abandonment</u>. If the Franchisee ceases to operate the [RMCF] Store or otherwise abandons the [RMCF] Store for a period of five consecutive days ..."

h.     Paragraph 18.2(e) – "Termination by Franchisor – Thirty Days Notice.  <u>Breach of Related Agreement</u>.  The Franchisee defaults under any term of the lease ..."

i.     Paragraph 18.4 – "Right to Purchase.  Upon termination, the Franchisor shall have the option to purchase .... at fair market value ..."

j.     Paragraph 20.2 – Post-Termination Covenant Not to Compete.  Upon termination of Franchise Agreement for any reason, Franchisee agrees not to compete within

a ten-mile radius of their existing Franchise Location or within a ten-mile radius of any other RMCF franchise location.

A true and correct copy of the RMCF Franchise Agreement is attached as Exhibit "2" hereto and is incorporated by reference herein. **(Because there has been no change to Exhibit "2" by this First Amended Counter-claims, it has not been attached to this pleading. Please refer to the Counter-claims filed by SDMS, ANDERSON and PECUS on November 7, 2006, Doc. No. 40-2).**

16.   Upon information and belief and thereon alleged, in or about September 2003, a representative of RMCF personally visited 234 5th Avenue, Space B, San Diego, California 92101 ("the Gaslamp Franchise"), the location proposed by Counter-claimants' for their RMCF Store. The RMCF Store included a total lease space of 1,983 square feet. RMCF not only physically inspected the Gaslamp Franchise, it also reviewed the proposed lease agreement. Upon RMCF's approval of both the location and lease agreement, Counter-claimants executed a lease agreement ("Lease Agreement") with S.D. Bridgeworks, LLC on October 9, 2003. A true and correct copy of the Lease Agreement is attached as Exhibit "3" hereto and is incorporated by reference herein. Under terms of the Lease Agreement, Counter-claimants' monthly lease payment was $4,957.50 for the months 1 through 12; $6,444.75 for months 13 through 24; $7,932.00 for months 25 through 36 and; $8,427.75 for months 37 through 40. The lease agreement also included a requirement for Counter-claimants to pay to the landlord: (a) a sum equal to six percent (6%) of their monthly Gross Retail Sales and, (b) 8.55% of monthly operating expenses.

17.    Upon information and belief and thereon alleged, Counter-claimants spent in excess of $300,000.00 for costs and expenses required to open the Gaslamp Franchise.

18.    Upon information and belief and thereon alleged, Counter-claimants opened the Gaslamp Franchise for business in February 2004.

19.    Upon information and belief and thereon alleged, at all times from the date of opening through and until approximately June 2006, the Gaslamp Franchise was operated in strict compliance with the RMCF Franchise and Operations Manual.

20.    Upon information and belief and thereon alleged, despite Counter-claimants' best efforts and absolute compliance with the RMCF business model, the Gaslamp Franchise has not produced sufficient income to meet Counter-claimants' operating expenses.

21.    Upon information and belief and thereon alleged, since first opening the Gaslamp Franchise in February 2004, Counter-claimants' have contributed approximately $100,000.00 of their own money to meet the store's financial obligations.

22.    In or about May 2006, due the Gaslamp Franchise's poor performance, Counter-claimants began looking for ways to increase their revenue.  In this regard, Counter-claimants requested RMCF's approval to sell additional items in their store to help generate enough revenue to meet their financial obligations.  RMCF refused to give their approval and insisted that Counter-claimants' maintain strict compliance with the RMCF Franchise Agreement and RMCF Operations Manual, requiring the sales of only specific RMCF approved candies.

23.     Upon RMCF's refusal to allow any deviation from the RMCF documents, Counter-
claimants wrote RMCF a letter expressing their desire to disassociate themselves from
RMCF and continue operating a business in their current location under a different name.

24.     Without further communication with Counter-claimants, RMCF filed an action against
SDMS, INC., THOMAS P. ANDERSON and KENNETH PECUS in the state court of
Colorado seeking only injunctive and declaratory relief. The action was later removed to
this Court based upon diversity of citizenship. However, the case was held in abeyance
while the parties attempted to resolve their dispute without the need for litigation. During
the course of litigation, Counter-claimants were led to believe there would be an
opportunity for settlement that would allow them continued possession and control of
their current location if certain adjustments were made with regards to the type of items
offered for sale. From Counter-claimants' prospective, at no time did these adjustments
involve exclusion of chocolates or other confectionary items from the products to be sold.
After a substantial amount of settlement discussions, it became clear that RMCF would
not agree to any settlement that allowed Counter-claimants' continued possession and
control in addition to a continued ability to sell chocolates and other confectionary items.
For these reasons, settlement discussions were terminated and RMCF filed an Amended
Complaint adding additional causes of action under the Lanham Act and for breach of
contract.

\\\

\\\

\\\

# FIRST COUNTER-CLAIM

(Rescission – Material Misrepresentation in Registration Application)
[California Corporate Code §§ 31300 and 31200]

25.     Counter-claimants incorporate herein by reference the allegations of paragraphs 1
through **24** as though fully set forth herein.

26.     Counter-defendant sold the RMCF franchise to Counter-claimants by registering the
franchise offer with the California Commissioner of Corporations. In so doing, Counter-
defendant provided Counter-claimants with a written disclosure in the form of an offering
circular, in which defendant willfully made untrue statements of a material fact and, also,
omitted to state material facts required to be stated therein.  In this regard, the "claimed
earnings" of other RMCF franchises included within RMCF's Offering Circular did not
represent RMCF's knowledge with regards to the *actual* financial performance of such
franchises.  **Additionally**, where RMCF was required to disclose the number of all
franchises terminated by RMCF within a specified time frame, by their willful practice
and procedure, RMCF, instead, disguised terminations as "transfers".  **Further, where
RMCF was required to disclose all known market competition, RMCF failed to
disclose itself as a significant competitor to the RMCF franchisee through its
substantial sales to many third-party retailers.**

27.     Counter-claimants read the RMCF Offering Circular prior to sale of the franchise and
purchased such franchise in direct reliance on the statements therein. Counter-claimants,
at the time of purchase, did not know and had no cause to believe that the statements in
question were false or misleading.

\\\

28. Had it not been for the material misstatements of RMCF in their Offering Circular **and, those verbal representations made by RMCF representatives consistent with statements contained within the Offering Circular,** Counter-claimants would not have executed the RMCF Franchise Agreement.

29. Counter-claimants seek a judgment from this Court that the RMCF Franchise Agreement and all related documents are rescinded by reason of RMCF's violation section 31202 of the California Franchise Investment Law.

### SECOND COUNTER-CLAIM

(Damages – Material Misrepresentation in Registration Application)
[California Corporate Code §§ 31301 and 31201]

30. Counter-claimants incorporate herein by reference the allegations of paragraphs 1 through **29** as though fully set forth herein.

31. Counter-defendant sold the RMCF franchise to Counter-claimants by registering the franchise offer with the California Commissioner of Corporations. In so doing, Counter-defendant provided Counter-claimants with a written disclosure in the form of an offering circular, in which defendant willfully made untrue statements of a material fact and, also, omitted to state material facts required to be stated therein. In this regard, the "claimed earnings" of other RMCF franchises included within RMCF's Offering Circular did not represent RMCF's knowledge with regards to the *actual* financial performance of such franchises. **Additionally**, where RMCF was required to disclose the number of all franchises terminated by RMCF within a specified time frame, by their willful practice and procedure, RMCF, instead, disguised terminations as "transfers". **Further, where RMCF was required to disclose all known market competition, RMCF failed to**

disclose itself as a significant competitor to the RMCF franchisee through its substantial sales to many third-party retailers.

32. Counter-claimants read the RMCF Offering Circular prior to sale of the franchise and purchased such franchise in direct reliance on the statements therein. Counter-claimants, at the time of purchase, did not know and had no cause to believe that the statements in question were false or misleading.

33. As a result of RMCF's material misrepresentation described above, Counter-claimants have sustained damages in the amount of approximately $400,000.00.

### THIRD COUNTER-CLAIM

(Damages – Improper Termination of Franchise)
[California Business and Professions Code §20035]

34. Counter-claimants incorporate herein by reference the allegations of paragraphs 1 through 33 as though fully set forth herein.

35. On or about August 23, 2003, Counter-defendant granted to Counter-claimants a franchise to conduct business as an RMCF franchisee at 234 5th Avenue, Space B, San Diego, California 92101. Counter-claimants continuously conducted the business of the franchise from that time until the time of the event described herein.

36. On or about September 28, 2006, Counter-defendant terminated the franchise and thereafter refused to supply and service Counter-claimants' business as called for under the Franchise Agreement and ordered that Counter-claimants cease business operations and sell all assets related to the Gaslamp Franchise to RMCF. That termination was improper under the California Business and Professions Code in that good cause did not exist for the termination.

37.     Counter-claimants have suffered damages resulting from Counter-defendant's improper termination of the franchise in that, because of RMCF's refusal to sell their brand candy to SDMS, they did not have adequate inventory to maintain a sales volume sufficient to meet their on-going financial obligations AND having to unnecessarily defend themselves in the current action for preliminary injunction. Counter-claimants have been damaged in the approximate amount of $30,000 as a result of RMCF's wrongful termination.

### FOURTH COUNTER-CLAIM

(Rescission – Fraud in the Inducement)

38.     Counter-claimants incorporate herein by reference the allegations of paragraphs 1 through 37 as though fully set forth herein.

39.     In connection with the sale of the RMCF franchise to Counter-claimants, Counter-defendant provided a written disclosure in the form of an offering circular, in which defendant willfully made untrue statements of a material fact and, also, omitted to state material facts required to be stated therein. In this regard, the "claimed earnings" of other RMCF franchises included within RMCF's Offering Circular did not represent RMCF's knowledge with regards to the *actual* financial performance of such franchises. **Additionally,** where RMCF was required to disclose the number of all franchises terminated by RMCF within a specified time frame, by their willful practice and procedure, RMCF, instead, disguised terminations as "transfers". **Further, where RMCF was required to disclose all known market competition, RMCF failed to disclose itself as a significant competitor to the RMCF franchisee through its**

142

**substantial sales to many third-party retailers.**

**40.** Also disclosed to Counter-claimants prior to execution of the RMCF Franchise Agreement were financial records purporting to reflect the cash flow and financial make-up of RMCF. Upon information and belief and thereon alleged, RMCF failed to disclose the fact that their business model and financial statements were intentionally designed to show cash flow to RMCF, inflating their stock value, without providing any protections to the franchisee.

**41.** Counter-claimants read the RMCF Offering Circular prior to sale of the franchise and purchased such franchise in direct reliance on the statements therein. Counter-claimants, at the time of purchase, did not know and had no cause to believe that the statements in question were false or misleading.

**42.** Had it not been for the material misstatements of RMCF in their Offering Circular **and, those verbal representations made by RMCF representatives consistent with statements contained within the Offering Circular,** Counter-claimants would not have executed the RMCF Franchise Agreement.

**43.** Counter-claimants seek a judgment from this Court that the RMCF Franchise Agreement and all related documents are rescinded by reason of RMCF's fraud in the inducement.

### FIFTH COUNTER-CLAIM

(Rescission – Unconscionable Contract)
[Colorado Revised Statutes § 4-2-302]

**44.** Counter-claimants incorporate herein by reference the allegations of paragraphs 1 through **43** as though fully set forth herein.

**45.** Strict application of the RMCF Franchise Agreement and Operations Manual results in

the following:

a.     As stated in their Offering Circular, the costs associated with establishing a new RMCF franchise average between $150,000 and $430,000. Yet, under the terms of the franchise agreement, in the event of a franchisee's default or termination, regardless of the time in business, RMCF may exercise its option to repurchase the franchise at "fair market value". Upon information and belief and thereon alleged, a significant number of RMCF franchisees have defaulted and/or been terminated as a result of poor business performance. Because "fair market value" takes into consideration business performance, the associated value at the forced sale to RMCF is often much less than is the costs for a new franchise. As a result, RMCF is able to purchase for themselves or, offer for sale to a third party, an existing franchise location at a much discounted rate.

b.     Under paragraphs 2.2 and 10.1(e) of the RMCF Franchise Agreement and certain other provisions of the RMCF Operations Manual, Counter-claimants are required to devote a minimum of 50% of all display space to the sale of RMCF "Factory Candy". All other space must offer for sale only those other items specifically approved of by RMCF, yet RMCF maintains absolute authority to withhold approval. In the event that the sale of the aforementioned items do not produce an adequate income stream to meet the franchisee's financial obligations, there is no remedy available to the franchisee and RMCF may force a sale of the franchise.

c.     Paragraph 12.3 of the RMCF Franchise Agreement requires the franchisee to contribute 1% of its monthly gross sales for the purposes of marketing and

promotion.  However, there is no requirement under paragraph 12.3 that such funds, or any portion thereof, are devoted to marketing and promotion within the franchisee's region or business area.  Upon information and belief and thereon alleged, RMCF collects this fee for its own personal gain without any intent to benefit the franchisee.

d.  Paragraphs 18.2(e), 18.3, 18.4 and 18.5 permit RMCF to terminate the franchise agreement and enforce its rights of re-purchase in the event that the franchisee breaches a "related agreement" including the lease agreement.  This right is true regardless of the reason for the franchisee's breach, including but not limited to, the franchisee's inability to pay rent as result of events described in paragraph (b.) above.

e.  Paragraphs 20.1 and 20.2 prohibit any franchise from owning or operating any business where more than 10% of the gross retail sales are generated from the manufacture or sale of chocolate or "other non-chocolate confectionary items" for two years within a ten-mile radius of their existing franchise location or within ten miles of any other RMCF franchise.  These provisions apply regardless of the franchisee's prior work history, experience or education within the chocolate or candy making profession.

46.  Counter-claimants seek a judgment from this Court that the RMCF Franchise Agreement and all related documents are rescinded by reason of be unconscionable under Colorado Revised Statutes section 4-2-302. In the alternative, Counter-claimants seek a judgment from this court invalidating the certain provisions as outlined above and permitting the

enforcement of all other contract provisions.

## SIXTH COUNTER-CLAIM

(Damages – Fraud)

**47.**   Counter-claimants incorporate herein by reference the allegations of paragraphs 1
through 45 as though fully set forth herein.

**48.**   In connection with the sale of the RMCF franchise to Counter-claimants, Counter-
defendant provided a written disclosure in the form of an offering circular, in which
defendant willfully made untrue statements of a material fact and, also, omitted to state
material facts required to be stated therein.  In this regard, the "claimed earnings" of other
RMCF franchises included within RMCF's Offering Circular did not represent RMCF's
knowledge with regards to the *actual* financial performance of such franchises.
**Additionally**, where RMCF was required to disclose the number of all franchises
terminated by RMCF within a specified time frame, by their willful practice and
procedure, RMCF, instead, disguised terminations as "transfers".  **Further, where
RMCF was required to disclose all known market competition, RMCF failed to
disclose itself as a significant competitor to the RMCF franchisee through its
substantial sales to many third-party retailers.**

**49.**   Also disclosed to Counter-claimants prior to execution of the RMCF Franchise
Agreement were financial records purporting to reflect the cash flow and financial make-
up of RMCF.  Upon information and belief and thereon alleged, RMCF failed to disclose
the fact that their business model and financial statements were intentionally designed to
show cash flow to RMCF, inflating their stock value, without providing any protections

to the franchisee.

50.    Counter-claimants read the RMCF Offering Circular prior to sale of the franchise and purchased such franchise in direct reliance on the statements therein. Counter-claimants, at the time of purchase, did not know and had no cause to believe that the statements in question were false or misleading.

51.    Had it not been for the material misstatements of RMCF in their Offering Circular **and, those verbal representations made by RMCF representatives consistent with statements contained within the Offering Circular,** Counter-claimants would not have executed the RMCF Franchise Agreement.

52.    As a result of RMCF's fraud, Counter-claimants have been damaged in the approximate amount of $400,000.00.

53.    RMCF's actions were committed with the intention of depriving the Counter-claimants of property or legal rights or otherwise causing injury to the Counter-claimants and such conduct was so despicable that it subjected the Counter-claimants to a cruel and unjust hardship in conscious disregard of the Counter-claimants' rights, so as to justify an award of exemplary and punitive damages.

**SEVENTH COUNTER-CLAIM**

(Damages – Breach of Contract)

54.    Counter-claimants incorporate herein by reference the allegations of paragraphs 1 through **53** as though fully set forth herein.

55.    Under terms of the RMCF Franchise Agreement and Operations Manual, RMCF was to provide Counter-claimants with operational assistance throughout the term of their

franchise relationship. Such assistance included, but was not limited to, maintaining contact with all new franchisees by way of "support calls" and providing access to RMCF personnel for inquiries on product preparation, sales performance, marketing efforts, etc.

56. At no time throughout the course of Counter-claimants' time as a franchisee did RMCF perform as it was obligated under the RMCF Franchise Agreement and Operations Manual.

57. As a direct result of RMCF's failure to perform, Counter-claimants have been damaged in the approximate amount of $400,000.00.

## EIGHTH COUNTER-CLAIM
(Damages – Breach of Duty of Good Faith and Fair Dealing)

58. Counter-claimants incorporate herein by reference the allegations of paragraphs 1 through 57 as though fully set forth herein.

59. Implied in every contractual agreement is a covenant of good faith and fair dealing. As a result of the facts and circumstances outline in this pleading and, in all other papers filed on Counter-claimants' behalf, RMCF has breached this covenant in that it acted in bad faith to frustrate the benefits Counter-claimants were to receive under the RMCF Franchise Agreement.

60. As a result of Counter-defendants' actions in bad faith, Counter-claimants have been damaged in the approximate amount of $400,000.00.

WHEREFORE, Plaintiffs pray for relief as follows:

On the First Cause of Action for Rescission – Material Misrepresentation in Registration Application:

06cv01212

1.      Counter-claimants seek a judgment from this Court that the RMCF Franchise Agreement and all related documents are rescinded by reason of RMCF's violation section 31202 of the California Franchise Investment Law.

On the Second Cause of Action for Damages – Material Misrepresentation in Registration Application:

1.      For money damages in an amount to be proven at trial.

On the Third Cause of Action for Damages – Improper Termination of Franchise:

1.      For money damages in an amount to be proven at trial.

On the Fourth Cause of Action for Rescission – Fraud in the Inducement:

1.      Counter-claimants seek a judgment from this Court that the RMCF Franchise Agreement and all related documents are rescinded by reason of RMCF's actions of fraud in the inducement.

On the Fifth Cause of Action for Rescission – Unconscionable Contract:

1.      Counter-claimants seek a judgment from this Court that the RMCF Franchise Agreement and all related documents are rescinded by reason of being unconscionable contracts of adhesion.

On the Sixth Cause of Action for Damages for Fraud:

1.      For money damages in an amount to be proven at trial; and

2.      For exemplary damages in an amount to be determined at trial.

On the Seventh Cause of Action for Damages – Breach of Contract:

1.      For money damages in an amount to be proven at trial.

On the Eigth Cause of Action for Damages – Breach of Duty of Good Faith and Fair Dealing:

1.      For money damages in an amount to be proven at trial.

On All Causes of Action:

1.      For costs of suit;

2.      For reasonable attorneys' fees and costs in accordance with the terms of the Contract; and

3.      For such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated this 17th day of April 2007.

> ___s\ *Rebecca J. Fortune*_____
> Rebecca J. Fortune
> LYNN & FORTUNE, LLP
> 2368 Second Avenue
> San Diego, California 92101
> Telephone: (619) 233-9464
> e-mail: rfortune@lynnfortunelaw.com