|  | No. Of Stores | Combined Annual Gross Retail Sales | Average Annual Gross Retail Sales |
|---|---|---|---|
| Top 25% | 42 | $22,753,183 | $541,742 |
| Middle 50% | 85 | $26,607,139 | $313,025 |
| Lower 25% | 42 | $7,259,643 | $172,849 |
| All Stores | 169 | $56,619,964 | $335,029 |

## EXPLANATORY NOTES

1. The information provided above is based on reports of Gross Retail Sales (as defined in the Franchise Agreement) provided by all 169 franchised ROCKY MOUNTAIN CHOCOLATE FACTORY Stores that had been open for at least 12 months as of the end of our most recent fiscal year, February 28, 2003. This information is for the 12 months prior to that date. We have listed the individual Gross Retail Sales for only the top 127 or 75% of the 169 Stores. We included actual gross sales for only the top 75% of franchised Stores because we believe that these results, considered together with the overall average and the average of the lower 25% of franchised Stores, are representative of the results of the franchised Stores overall. The Gross Retail Sales for Stores that we own are not included in this information, but we have included information on any satellite or temporary Stores operated by Franchisees.

2. Of the 42 Stores included in the top 25%, 16 met or exceeded the average Gross Retail Sales of $541,742. Of the 85 Stores in the middle 50%, 36 met or exceeded the average Gross Retail Sales of $313,025. Of the 42 Stores in the lower 25%, 25 met or exceeded the average Gross Retail Sales of $172,849. Of the 169 Stores, 76 met or exceeded the average Gross Retail Sales of $335,029.

3. Differences in Gross Retail Sales may be attributable to differences in the mix of Factory Candy, Items and Store Candy offered for sale at each Store, which is subject, in part, to the Franchisee's discretion. Other factors that may affect the results among Stores include geographic and demographic characteristics, the type of mall or other location, length of time the Store has been open and the managerial or entrepreneurial abilities of the franchisee and its managers.

4. The above information was prepared from royalty reports provided by each individual franchisee. A franchisee pays us a royalty based on sales. We know of no instance, and have no reason to believe, that any franchisee would overstate its level of sales receipts in its royalty report, however, these results have not been audited and we have not independently verified these results.

5. We do not have access to nor knowledge of the expenses or costs incurred by each of the 169 franchised Stores. The above Gross Retail Sales figures may not necessarily be predictive of any given Store's profitability.

6. This information represents aggregate results of sales reported to us and should not be considered the actual or probable sales, which will be achieved by any individual franchisee. We do not represent that any prospective franchisee can expect to attain these results. A franchisee's results are likely to be lower in its first year of business. We recommend that the prospective franchisee make his or her own independent investigation to determine whether or not a franchise may be profitable. We further recommend that prospective franchisees consult with professional advisors before executing any agreement.

(CA 6/1/03)       27

7.  Actual results may vary from franchise to franchise and depend on a variety of internal and external factors, many of which neither we nor any prospective franchisee can estimate, such as competition, economic climate, demographics, changing consumer demands and tastes, etc. A franchisee's ability to achieve any level of gross sales or net income will depend on these factors and others, including the franchisee's level of expertise, none of which are within our control. Accordingly, we cannot, and do not, estimate the results of any particular franchise.

Substantiation for this data is available for inspection at our corporate headquarters and will be provided upon the reasonable request of a prospective franchisee.

EXCEPT FOR THE INFORMATION IN THIS ITEM, NO REPRESENTATIONS OR STATEMENTS OF ACTUAL, AVERAGE, PROJECTED, FORECASTED OR POTENTIAL SALES, COSTS, INCOME OR PROFITS ARE MADE TO FRANCHISEES BY US. WE DO NOT FURNISH OR MAKE, OR AUTHORIZE OUR SALES PERSONNEL TO FURNISH OR MAKE, ANY ORAL OR WRITTEN INFORMATION CONCERNING THE ACTUAL, AVERAGE, PROJECTED, FORECASTED OR POTENTIAL SALES, COSTS, INCOME OR PROFITS OF A FRANCHISE OR PROSPECTS OR CHANCES OF SUCCESS THAT ANY FRANCHISEE CAN EXPECT OR THAT PRESENT OR PAST FRANCHISEES HAVE HAD, OTHER THAN AS SET FORTH IN THIS ITEM. WE DISCLAIM AND WILL NOT BE BOUND BY ANY UNAUTHORIZED REPRESENTATIONS.

## ITEM 20

## LIST OF OUTLETS

### FRANCHISED
### BUSINESS STATUS SUMMARY
### FOR FISCAL YEARS 2003/2002/2001[1]

| State[3] | Transfers | Cancelled or Terminated by RMCF | Not Renewed by RMCF | Reacquired by RMCF | Left the System/ Other | Total from left Columns | Franchisees Operating at Year End |
|---|---|---|---|---|---|---|---|
| Alabama | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 | 1/0/0 | 0/1/1 |
| Arizona | 1/0/3 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 | 2/0/3 | 7/6/6 |
| Arkansas | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/2 | 0/0/2 | 1/1/1 |
| California | 1/1/3 | 0/0/0 | 0/0/0 | 0/0/0 | 2/0/1 | 3/1/4 | 43/45/39 |
| Colorado | 4/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 | 5/0/0 | 30/22/21 |
| Connecticut | 0/2/0 | 0/0/0 | 0/0/0 | 2/0/0 | 0/0/0 | 2/2/0 | 2/2/0 |
| Delaware | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 2/2/1 |
| Florida | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/2/1 | 0/2/1 | 10/8/9 |
| Georgia | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 3/0/0 | 3/0/0 | 3/6/5 |
| Hawaii | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 3/3/4 |
| Idaho | 1/0/1 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 | 2/0/1 | 3/4/4 |
| Illinois | 1/1/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/1/0 | 2/2/0 | 10/7/5 |

(CA 6/1/03)          28

| State[3] | Transfers | Cancelled or Terminated by RMCF | Not Renewed by RMCF | Reacquired by RMCF | Left the System/ Other | Total from left Columns | Franchisees Operating at Year End |
|---|---|---|---|---|---|---|---|
| Indiana | 0/1/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 | 1/1/0 | 2/3/3 |
| Iowa | 0/1/0 | 0/0/0 | 0/0/0 | 1/0/0 | 0/0/0 | 1/1/0 | 1/1/0 |
| Kansas | 0/0/1 | 0/0/0 | 0/0/0 | 0/0/0 | 1/1/0 | 1/1/1 | 3/3/4 |
| Kentucky | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/2 | 0/0/2 | 1/1/0 |
| Louisiana | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 |
| Maryland | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 | 1/0/0 | 3/2/2 |
| Massachusetts | 0/1/0 | 0/0/0 | 0/0/0 | 1/0/0 | 1/0/0 | 2/1/0 | 1/1/0 |
| Michigan | 1/1/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 | 2/1/0 | 6/5/3 |
| Minnesota | 0/1/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/1/0 | 4/4/1 |
| Mississippi | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/2/2 |
| Missouri | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/1/0 | 1/1/0 | 3/5/6 |
| Montana | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/1/1 | 0/1/1 | 0/0/2 |
| Nebraska | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 2/1/1 |
| Nevada | 0/0/1 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/1 | 2/2/2 |
| New Hampshire | 0/1/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/1/0 | 2/2/1 |
| New Jersey | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 2/2/2 |
| New Mexico | 0/2/1 | 0/0/0 | 0/0/0 | 0/0/0 | 1/2/0 | 1/4/1 | 5/6/6 |
| New York | 0/1/1 | 0/0/0 | 0/0/0 | 0/0/0 | 2/0/0 | 2/1/1 | 3/5/4 |
| North Carolina | 0/1/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/1/0 | 0/2/0 | 2/1/1 |
| Ohio | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 4/3/2 |
| Oregon | 0/1/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/1/0 | 1/2/0 | 7/8/7 |
| Pennsylvania | 1/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/1 | 2/0/1 | 2/3/5 |
| South Carolina | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 | 1/0/0 | 2/3/3 |
| Tennessee | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/1 | 0/0/1 | 4/4/3 |
| Texas | 1/1/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/2/1 | 1/3/1 | 10/10/9 |
| Utah | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/0 | 1/0/0 | 5/5/5 |
| Virginia | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 2/2/2 |
| Washington | 0/0/1 | 0/0/0 | 0/0/0 | 0/0/0 | 1/1/0 | 1/1/1 | 7/5/6 |
| West Virginia | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/1/1 |
| Wisconsin | 0/1/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/1 | 1/1/1 | 0/1/0 |
| Wyoming | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/1 | 0/0/1 | 0/0/0 |
| Canada | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/0/2 | 1/0/2 | 25/23/27 |
| Guam | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 1/1/1 |

(CA 6/1/03)      29

| State[3] | Transfers | Cancelled or Terminated by RMCF | Not Renewed by RMCF | Reacquired by RMCF | Left the System/Other | Total from left Columns | Franchisees Operating at Year End |
|---|---|---|---|---|---|---|---|
| Abu Dhabi, UAE | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 0/0/0 | 2/2/1 |
|  |  |  |  |  |  |  |  |
| TOTALS | 11/17/12 | 0/0/0 | 0/0/0 | 4/0/0 | 26/13/14 | 41/30/26 | 230/224/208 |

(1) All numbers are as of February 28 or 29 for each year.

(2) The numbers in the "Total" column may exceed the number of Stores affected because several events may have affected the same Store. For example, the same Store may have had multiple owners.

(3) In April, 1998, we signed a Master Franchise Agreement for the country of Taiwan, but as of our most recent fiscal year end, no Stores were open there. In November 1999, we signed a Master Franchise Agreement for the Gulf Cooperation Council States and Stores opened in the United Arab Emirates in May 2000 and October 2001.

## STATUS OF COMPANY OWNED STORES
## FOR FISCAL YEARS 2003/2002/2001

| STATE | STORES CLOSED DURING YEAR | STORES OPENED DURING YEAR | TOTAL STORES OPERATING AT YEAR END |
|---|---|---|---|
| Alabama | 0/0/*1 | 0/0/0 | 0/0/0 |
| California | 0/0/0 | 0/0/0 | 0/0/0 |
| Colorado | 0/0/*1 | 0/0/0 | 4/4/4 |
| Connecticut | 0/*2/0 | **2/0/0 | 2/0/2 |
| Florida | 0/0/*3 | 0/0/0 | 0/0/0 |
| Georgia | 0/0/*2 | 0/0/0 | 0/0/0 |
| Illinois | 0/0/*1 | 0/0/0 | 0/0/0 |
| Indiana | 0/*1/1 | 0/0/0 | 0/0/1 |
| Iowa | 0/*1/0 | **1/0/0 | 1/0/1 |
| Kentucky | 0/0/0 | 0/0/0 | 0/0/0 |
| Maryland | 0/0/*2 | 0/0/0 | 0/0/0 |
| Massachusetts | 0/*1/0 | **1/0/0 | 1/0/1 |
| Michigan | 0/*1/0 | 0/0/0 | 0/0/1 |
| Minnesota | 0/*1/0 | 0/0/0 | 0/0/1 |
| Missouri | 0/0/0 | 0/0/0 | 0/0/0 |
| Nevada | 0/0/*1 | 0/0/0 | 0/0/0 |

(CA 6/1/03)     30

| STATE | STORES CLOSED DURING YEAR | STORES OPENED DURING YEAR | TOTAL STORES OPERATING AT YEAR END |
|---|---|---|---|
| New Hampshire | 0/*1/0 | 0/0/0 | 0/0/1 |
| New York | 0/*2/1 | 0/**1/0 | 0/0/1 |
| Ohio | 0/0/*2 | 0/0/0 | 0/0/0 |
| Oklahoma | 0/0/0 | 0/0/0 | 0/0/0 |
| Pennsylvania | 0/0/*4 | 0/0/0 | 0/0/0 |
| South Carolina | 0/0/*1 | 0/0/0 | 0/0/0 |
| Virginia | 0/0/0 | 0/0/0 | 0/0/0 |
| Washington | 0/0/0 | 0/0/0 | 0/0/0 |
| Wisconsin | 0/*1/0 | 0/0/0 | 0/0/1 |
| TOTALS | 0/11/20 | 4/1/0 | 8/4/14 |

\*   Sold to a franchisee
\*\*  Purchased from a franchisee

**PROJECTED OPENINGS
FOR FISCAL YEAR 2004**

| STATE | FRANCHISE AGREEMENTS SIGNED BUT STORE NOT OPENED | PROJECTED FRANCHISED NEW STORES IN FISCAL YEAR 2004 | PROJECTED COMPANY OWNED STORE OPENINGS IN FISCAL YEAR 2004 |
|---|---|---|---|
| Arizona | 1 | 1 | 0 |
| California | 3 | 8 | 0 |
| Colorado | 1 | 2 | 0 |
| Florida | 2 | 2 | 0 |
| Hawaii | 1 | 1 | 0 |
| Iowa | 1 | 1 | 0 |
| Minnesota | 1 | 1 | 0 |
| Missouri | 1 | 2 | 0 |
| New Jersey | 1 | 2 | 0 |
| Nebraska | 1 | 1 | 0 |
| Nevada | 1 | 2 | 0 |
| Pennsylvania | 0 | 2 | 0 |
| Tennessee | 0 | 1 | 0 |
| Texas | 3 | 3 | 0 |
| Washington | 1 | 1 | 0 |
| TOTALS | 18 | 30 | 0 |

(CA 6/1/03)                                          31

A list of names of all Franchisees and the addresses and telephone numbers of their Stores are listed as <u>Exhibit C</u> to this Offering Circular. A list of the name and last known home address and telephone number of every Franchisee who has had a franchise terminated, cancelled, not renewed, or otherwise voluntarily or involuntarily ceased to do business under the Franchise Agreement during fiscal year 2003 and through the date of this Offering Circular or who has not communicated with us within 10 weeks of the date of this Offering Circular is listed on <u>Exhibit D</u> to this Offering Circular.

## ITEM 21

### FINANCIAL STATEMENTS

Attached to this Offering Circular as <u>Exhibit E</u> are our balance sheets as of February 28, 2003 and February 29, 2002 and the related statements of operations, stockholders' equity and cash flows for each of the years in the three year period ended February 28, 2003.

## ITEM 22

### CONTRACTS

Attached to this Offering Circular are the following franchise-related contracts:

| | |
|---|---|
| Exhibit B | Franchise Agreement |
| Exhibit G | Sublease and Assignment Agreements |
| Exhibit H | Addendum to Franchise Agreement – Satellite Stores |
| Exhibit I | Addendum to Franchise Agreement – Temporary Stores |
| Exhibit J | Addenda to Franchise Agreement – Renewal and Transfer |

## ITEM 23

### RECEIPT

**THE LAST PAGE OF THE OFFERING CIRCULAR (FOLLOWING THE EXHIBITS AND ATTACHMENTS) IS A DOCUMENT ACKNOWLEDGING RECEIPT OF THE OFFERING CIRCULAR BY YOU (ONE COPY FOR YOU AND ONE TO BE SIGNED FOR US).**

ADDENDUM TO THE
ROCKY MOUNTAIN CHOCOLATE FACTORY
OFFERING CIRCULAR FOR THE STATE OF CALIFORNIA

THE CALIFORNIA FRANCHISE INVESTMENT LAW REQUIRES THAT A COPY OF ALL PROPOSED AGREEMENTS RELATING TO THE SALE OF THE FRANCHISE BE DELIVERED TOGETHER WITH THE OFFERING CIRCULAR.

1. The following paragraphs are added to the end of Item 17:

The California Business and Professions Code Sections 20000 through 20043 provide rights to the franchisee concerning termination or nonrenewal of a franchise. If the Franchise Agreement contains a provision that is inconsistent with the law, the law will control.

Neither the Franchisor, any person or franchise broker in Item 2 of the Offering Circular is subject to any currently effective order of any national securities association or national securities exchange, as defined in the Securities Exchange Act of 1934, 15 U.S.C.A. 78a *et seq.*, suspending or expelling such persons from membership in such association or exchange.

The Franchise Agreement contains a liquidated damages clause. Under California Civil Code Section 1671, certain liquidated damages clauses are unenforceable.

The Franchise Agreement contains a covenant not to compete which extends beyond the termination of the Franchise. This provision may not be enforceable under California law.

You must sign a general release if you renew or transfer your franchise. California Corporations Code §31512 voids a waiver of your rights under the Franchise Investment Law (California Corporations Code §§31000 through 31516). Business and Professions Code §20010 voids a waiver of your rights under the Franchise Relations Act (Business and Professions Code §§20000 through 20043).

Section 31125 of the Franchise Investment Law requires us to give to you a disclosure document approved by the Commissioner of Corporations before we ask you to consider a material modification of your Franchise Agreement.

The Franchise Agreement requires application of the laws of the State of Colorado. This provision may not be enforceable under California law.

(CA 6/1/03)

ITEM 23

### RECEIPT

(Keep this copy for your records)

THIS OFFERING CIRCULAR SUMMARIZES CERTAIN PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF ROCKY MOUNTAIN CHOCOLATE FACTORY, INC. OFFERS YOU A FRANCHISE, ROCKY MOUNTAIN CHOCOLATE FACTORY, INC. MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

A.   THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR

B.   TEN BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR

C.   TEN BUSINESS DAYS BEFORE ANY PAYMENT TO ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE BUSINESS DAYS BEFORE YOU SIGN A FRANCHISE AGREEMENT.

IF ROCKY MOUNTAIN CHOCOLATE FACTORY, INC. DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON D.C. 20580 AND THE APPROPRIATE STATE AGENCY IDENTIFIED ON EXHIBIT A.

Rocky Mountain Chocolate Factory, Inc. authorizes the respective state agents identified on <u>Exhibit A</u> to receive service of process for Rocky Mountain Chocolate Factory, Inc. in the particular state.

I have received a Uniform Franchise Offering Circular dated June 16, 2003. This Offering Circular included the following Exhibits:

| | |
|---|---|
| A | List of State Agencies/Agents for Service of Process |
| B | Franchise Agreement |
| C | List of Franchisees |
| D | Franchisees Who Have Left the System |
| E | Financial Statements |
| F | Operations Manual Table of Contents |
| G | Sublease and Assignment Agreements |
| H | Addendum to Franchise Agreement – Satellite Stores |
| I | Addendum to Franchise Agreement – Temporary Stores |
| J | Addenda to Franchise Agreement – Renewal and Transfer |
| K | Closing Acknowledgment |
| L | Receipt of Offering Circular |

_____          _____
Date                               Prospective Franchisee

                                   _____
                                   Print Name

(CA 6/1/03)                        211

**RECEIPT**

(Return this copy to us)

THIS OFFERING CIRCULAR SUMMARIZES CERTAIN PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF ROCKY MOUNTAIN CHOCOLATE FACTORY, INC. OFFERS YOU A FRANCHISE, ROCKY MOUNTAIN CHOCOLATE FACTORY, INC. MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

A. THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR

B. TEN BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR

C. TEN BUSINESS DAYS BEFORE ANY PAYMENT TO ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE BUSINESS DAYS BEFORE YOU SIGN A FRANCHISE AGREEMENT.

IF ROCKY MOUNTAIN CHOCOLATE FACTORY, INC. DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON D.C. 20580 AND THE APPROPRIATE STATE AGENCY IDENTIFIED ON EXHIBIT A.

Rocky Mountain Chocolate Factory, Inc. authorizes the respective state agents identified on <u>Exhibit A</u> to receive service of process for Rocky Mountain Chocolate Factory, Inc. in the particular state.

I have received a Uniform Franchise Offering Circular dated June 16, 2003. This Offering Circular included the following Exhibits:

| | |
|---|---|
| A | List of State Agencies/Agents for Service of Process |
| B | Franchise Agreement |
| C | List of Franchisees |
| D | Franchisees Who Have Left the System |
| E | Financial Statements |
| F | Operations Manual Table of Contents |
| G | Sublease and Assignment Agreements |
| H | Addendum to Franchise Agreement – Satellite Stores |
| I | Addendum to Franchise Agreement – Temporary Stores |
| J | Addenda to Franchise Agreement – Renewal and Transfer |
| K | Closing Acknowledgment |
| L | Receipt of Offering Circular |

_____        _____
Date                                                                Prospective Franchisee

                                                                            _____
                                                                            Print Name

(CA 6/1/03)                                             212

## ADDENDUM TO ITEM 3 OF OFFERING CIRCULAR

NOTICE TO ALL PROSPECTIVE ROCKY MOUNTAIN CHOCOLATE FACTORY FRANCHISEES:

1. <u>Harbor Finance Partners v. Franklin Crail, et al.</u>, (No. 99CV3494, Denver Dist. Ct.) On May 26, 1999, one of RMCF's shareholders, individually and on behalf of all other RMCF shareholders similarly situated, filed a class action against RMCF and individual members of RMCF's board of directors, alleging breach of fiduciary duty when the board took certain defensive actions designed to discourage a hostile takeover attempt by Whitman's Candies, Inc. The complaint asked for compensatory damages, plus interest and costs, in an unspecified amount, and for injunctive relief to enjoin defendants from taking action that would have prevented the public stockholders from maximizing the value of their shares. The case was moved to the District Court for La Plata County, Colorado. On December 15, 1999, the court dismissed the case on the grounds that the plaintiffs failed to satisfy the requirements for bringing a derivative action, and the plaintiffs could not bring a direct action. The plaintiffs did not appeal the dismissal of the case.

2. <u>American Environmental Safety Institute v. Mars, Incorporated et al.</u> (No. BC 273433) On May 8, 2002, a California non-profit corporation filed a law suit against RMCF; Mars, Incorporated; Hershey Foods Corporation; Nestle USA, Inc.; Kraft Foods North America; and See's Candies, Inc. in Superior Court for the County of Los Angeles, California. The Complaint was later amended to add more defendants. The lawsuit claims that RMCF and the other defendants are aware that their chocolate products contain cadmium and lead in amounts exceeding the permissible levels under California Proposition 65 and that the defendants have failed to properly warn the public of the potentially hazardous effect of these minerals in chocolate. The complaint demands injunctive relief and money damages including fines exceeding $5,000,000 plus interest, attorney's fees and other legal costs. On September 28, 2001 the California Attorney General released a statement refusing to prosecute a similar action against chocolate manufacturers on behalf of the State of California and stating that such an action lacked merit. This action is currently in the discovery phase.

Clyde W. Engle, one of our directors, is or has been a party to each of the following litigation matters. We are describing each of these matters to the best of our ability, after due diligence and our own independent investigation to obtain this information. Due to Mr. Engle's inability or unwillingness to provide us with any additional information about his litigation matters, however, we cannot be certain that our descriptions are complete, accurate or that we have included each disclosable matter to which Mr. Engle is or has been a party.

3. <u>Shapo v. Engle, et al.</u> (No. 98 C 7909, N.D. Ill.) On February 23, 1999, the Director of Insurance of the state of Illinois, in his capacity as liquidator ("Liquidator") of Coronet Insurance Company, Crown Casualty Company and National Assurance Indemnity Company (the "Insurance Companies"), filed a Second Amended Complaint against 14 entities and 14 individuals (the "Defendants"), two of whom, Lee Mortenson and Clyde Engle, are directors of RMCF. Mr. Engle has served as president of the Insurance Companies since 1986, though Mr. Mortenson served as President of Coronet Insurance Company during the period 1994 to 1996. The Complaint alleges illegal transfers of more than $70 million out of the Insurance Companies between 1985 and 1996, to support personal and business interests of the Defendants, rendering the Insurance Companies unable to pay claims made by their policyholders and ultimately resulting in the liquidation of the Insurance Companies. The complaint alleges RICO claims and seeks treble damages. On November 10, 1999, the court denied Mr. Engle's motion to dismiss, but dismissed the Liquidator's claim for declaratory relief against Mr. Mortenson and the other Defendants, except Mr. Engle. On February 11, 2000, the court granted a motion to intervene filed by Springs-Illinois, Inc., a wholly-owned subsidiary of the Insurance Companies. The Court also allowed the Liquidator to amend his complaint to add allegations regarding transactions involving Springs-Illinois, Inc. On June 30, 2000, the Court denied the Liquidator's motion to amend its complaint to add a fraud claim against the Bank of Lincolnwood ("BOL"). Mr. Engle is the Chairman of BOL's

Board of Directors and the majority shareholder of BOL's parent company. On February 28, 2001, the judge granted the plaintiffs' motion to compel the defendants to disclose certain financial information and required Mr. Engle to produce documents relating to transactions entered into between him and certain companies. On May 24, 2001, a magistrate judge granted the Liquidator's follow-up motion to compel further discovery and ordered the defendants to pay the Liquidator's costs and attorneys' fees in bringing the motion. To the best of our knowledge, discovery is ongoing as of the date of this Offering Circular.

4.  Robert A. Lee, et al. v. Clyde Wm. Engle, et al. (C.A. No. 13323); and Richard N. Frank v. Clyde Wm. Engle, et al. (C.A. No. 13284). On December 8, 1993, the plaintiffs in the first action filed a complaint in the Court of Chancery of Delaware, New Castle, to initiate a shareholders' derivative suit and class action against Clyde Engle, in his capacity as the Chairman of the Board and Chief Executive Officer of Sunstates Corporation ("Sunstates"), naming the other directors and executive officers of Sunstates, and naming Sunstates as a nominal defendant (the "Frank Action"). The plaintiffs in the second action also filed a complaint in the Court of Chancery to initiate a shareholders' derivative suit against Mr. Engle and the other directors and executive officers of Sunstates on behalf of Sunstates (the "Lee Action"). The Frank Action alleges breaches of fiduciary duty, waste of corporate assets, failure to pay dividends on cumulative preferred stock, and a violation of the duty of disclosure with regard to a proxy statement. The Frank Action seeks injunctive, declaratory, and monetary relief. The Lee Action alleges waste and breach of fiduciary duty, requesting declaratory and monetary relief. The Frank Action and the Lee Action were consolidated into one action, C.A. No. 13323, and also consolidated with other actions involving Sunstates, into a single action for discovery purposes, known as In Re Sunstates Corporation Shareholder Litigation (C.A. No. 13284). On May 2, 2001, the court granted Sunstate's partial summary judgment motion dismissing plaintiff's claim that Sunstate, through its subsidiaries, improperly repurchased Sunstate's preferred and common stock. To the best of our knowledge, as of the date of this Offering Circular, this litigation is ongoing.

5.  Securities and Exchange Commission v. Clyde W. Engle (No. 93-CV-2077). On October 7, 1993, the Securities and Exchange Commission filed a complaint in the United States District Court for the District of Columbia against Clyde Engle, who is currently a director of RMCF. The complaint alleged violations of Section 16(a) of the Securities Exchange Act of 1934, Rules 16a-2 and 16a-3 and the requirements of Forms 3, 4 and 5 promulgated thereunder, and asked for payment of civil penalties of $75,000. On October 13, 1993, Mr. Engle entered into a consent judgment with the SEC, which was entered by the Court on October 13, 1993, in which he (1) neither admitted nor denied the allegations of the complaint; (2) consented to entry of the final judgment; (3) agreed to pay a civil penalty of $75,000; and (4) waived any right of appeal.

6.  Saks and Company d/b/a Saks Fifth Avenue v. Siobhan O'Meara and Clyde Engle. (No. 97 C 829, ND Ill., Feb. 11, 1998). On February 6, 1997, Saks and Company ("Saks") filed a complaint against Siobhan O'Meara and Clyde Engle, as husband and wife, for recovery of amounts due on a Saks Fifth Avenue charge account in the amount of $116,503 plus finance charges and court costs. Plaintiff alleged that Mr. Engle was liable on this account solely by operation of the Illinois Family Expense Act. Mr. Engle counterclaimed against Saks claiming some of the charges on the account were for business expenses and for libel, alleging that Saks submitted false information to one or more credit services. The court granted Saks' motion for summary judgment against Ms. O'Meara but denied Saks' motion for summary judgment against Mr. Engle. On February 25, 1998, the court dismissed the case with leave to reinstate on or before April 13, 1998 and stated that if the case was not reinstated by that date, the dismissal would be with prejudice. To the best of RMCF's knowledge, the case was not reinstated and the claims between Saks and Mr. Engle were most likely settled, however, there is no public record of the terms of any settlement agreement, so RMCF does not know whether or how much Mr. Engle may have paid to settle this case.

(6/1/03)

**EXHIBIT A**

**LIST OF STATE AGENCIES/AGENTS FOR SERVICE OF PROCESS**

# LIST OF STATE AGENCIES

**California**

Department of Corporations
320 West 4th Street, Suite 750
Los Angeles, CA 90013-2344
(213) 576-7505
(866) 275-2677

1515 K Street, Suite 200
Sacramento, CA 95814-4052
(916) 445-7205
(866) 275-2677

1350 Front Street
San Diego, CA 92101
(619) 525-4044
(866) 275-2677

1390 Market Street
San Francisco, CA 94102
(415) 557-3787
(866) 275-2677

**Florida**

Department of Agriculture and
 Consumer Services
Division of Consumer Services
227 N. Bronough Street
City Centre Building, 7th Floor
Tallahassee, FL 32301
(904) 922-2770

**Hawaii**

Department of Commerce and
 Consumer Affairs
1010 Richards Street
Honolulu, HI 96813
(808) 548-2021

**Illinois**

Office of Attorney General
Franchise Division
500 South Second Street
Springfield, IL 62706
(217) 782-4465

**Indiana**

Indiana Secretary of State
Securities Division
302 West Washington Street
Room E-111
Indianapolis, IN 46204
(317) 232-6681

**Maryland**

Office of Attorney General
Maryland Division of Securities
200 St. Paul Place
Baltimore, MD 21202-2020
(410) 576-6360

**Michigan**

Michigan Department of Attorney
 General
Consumer Protection Division
Antitrust and Franchise Unit
670 Law Building
Lansing, MI 48913
(517) 373-7117

**Minnesota**

Minnesota Department of Commerce
Registration and Licensing
 Division
85 7th Place East, Suite 500
St. Paul, MN 55101
(612) 296-6328

**Nebraska**

Department of Banking and Finance
1200 N Street, Suite 311
P.O. Box 95006
Lincoln, NE 68509
(402) 471-3445

**New York**

New York State Department of Law
Bureau of Investor Protection and
 Securities
120 Broadway, 23rd Floor
New York, NY 10271
(212) 416-8211

**North Dakota**

Office of Securities Commissioner
600 East Boulevard, 5th Floor
Bismarck, ND 58505
(701) 328-2910

**Oregon**

Department of Insurance and Finance
Corporate Securities Section
Labor and Industries Building
Salem, OR 97310
(503) 378-4387

**Rhode Island**

Department of Business Regulation
Division of Securities
233 Richmond Street, Suite 232
Providence, RI 02903
(401) 222-3048

**South Dakota**

South Dakota Department of
 Commerce
 and Consumer Regulation
Division of Securities
c/o 118 West Capitol
Pierre, SD 57501
(605) 773-4013

**Texas**

Secretary of State
Statutory Document Section
P.O. Box 13563
Austin, TX 78711
(512) 475-1769

**Virginia**

State Corporation Commission
Division of Securities and
 Retail Franchising
1300 E. Main Street, 1st Floor
Richmond, VA 23219
(804) 371-9672

**Washington**

Securities Administrator
Department of Financial Institutions
Securities Division
P.O. Box 9033
Olympia, WA 98507-9033
(360) 902-8760

**Wisconsin**

Department of Financial Institutions
Division of Securities
345 W. Washington Avenue, 4th Floor
Madison, WI 53703
(608) 261-9555

# LIST OF AGENTS FOR SERVICE OF PROCESS

**California**

California Commissioner of
 Corporations
California Dept. of Corporations
320 West 4th Street, Suite 750
Los Angeles, California 90013-2344
(213) 576-7505
(866) 275-2677

**Hawaii**

Director of Commerce and
 Consumer Affairs
1010 Richards Street
P.O. Box 40
Honolulu, Hawaii 96810
(808) 586-2744

**Illinois**

Illinois Attorney General
500 South Second Street
Springfield, Illinois 62706
(217) 782-1090

**Indiana**

Indiana Secretary of State
201 State House
200 West Washington Street
Indianapolis, Indiana 46204
(317) 232-6531

**Maryland**

Maryland Securities Commissioner
200 St. Paul Place
Baltimore, Maryland 21202-2020
(410) 576-6360

**Michigan**

Michigan Department of
 Commerce,
Corporations and Securities Bureau
6546 Mercantile Way
Lansing, Michigan 48910
(517) 334-6212

**Minnesota**

Minnesota Commissioner of
 Commerce
Department of Commerce
85 7th Place East, Suite 500
St. Paul, Minnesota 55101
(612) 296-4026

**New York**

Secretary of State of the State of
 New York
41 State Street
Albany, New York 12231
(518) 473-2492

**North Dakota**

North Dakota Securities
 Commissioner
State Capitol
Bismarck, North Dakota 58505
(701) 328-2910

**Oregon**

Director of Oregon Department of
 Insurance and Finance
700 Summer Street, N.E.
Suite 120
Salem, Oregon 97310
(503) 378-4387

**Rhode Island**

Director of Rhode Island
 Department of Business Regulation
233 Richmond Street, Suite 232
Providence, Rhode Island 02903-4232
(401) 222-3048

**South Dakota**

Director of South Dakota Division of
 Securities
118 West Capitol Avenue
Pierre, South Dakota 57501
(605) 773-4823

**Virginia**

Clerk of the State Corporation
 Commission
1300 East Main Street, 1st Floor
Richmond, Virginia 23219
(804) 371-9672

**Washington**

Securities Administrator
Washington State Department of
 Financial Institutions
P.O. Box 9033
Olympia, Washington 98507-9033
(360) 902-8760

**Wisconsin**

Wisconsin Commissioner of
 Securities
345 W. Washington Ave., 4th Floor
Box 1768
Madison, Wisconsin 53703
(608) 261-9555

**EXHIBIT B**

# FRANCHISE AGREEMENT

**EXHIBIT B**