**ASSIGNEE:**

_____


By: _____
   Name:_____
   Title:_____


**LANDLORD:**

_____


By: _____
   Name:_____
   Title:_____

(6/1/03)

**EXHIBIT A**

**THE LEASE**

# EXHIBIT B

## SECURITY DEPOSITS

**EXHIBIT C**

**CONDITIONAL ASSIGNMENT OF LEASE**

## CONDITIONAL ASSIGNMENT OF LEASE

THIS CONDITIONAL ASSIGNMENT OF LEASE ("**Conditional Assignment**") is made as of this _____ day of _____, 20_____ by and between _____ _____, a _____ ("**Assignor**"), ROCKY MOUNTAIN CHOCOLATE FACTORY, INC., a Colorado corporation ("**Assignee**") and _____, a _____ ("**Landlord**").

WHEREAS, Assignor is a tenant ("Tenant") of certain property generally known as _____, located in the City of _____, State of _____ ("**Property**"), pursuant to a lease by and between Landlord and Assignor, dated _____, 20_____ (the "**Lease**");

WHEREAS, Assignor desires to operate a ROCKY MOUNTAIN CHOCOLATE FACTORY Store under a certain franchise agreement between Assignor and Assignee (the "**Franchise Agreement**"); and

WHEREAS, as a condition to the grant of rights under the Franchise Agreement to Assignor, Assignee requires that Assignor enter into this Conditional Assignment.

NOW, THEREFORE, for and in consideration of the sum of Five Dollars and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. Assignor hereby assigns all of its right, title and interest in and to the Lease and the ROCKY MOUNTAIN CHOCOLATE FACTORY Store to Assignee.

2. With the exception of Assignee's rights under paragraph 3 below and Assignor's and Landlord's respective obligations, representations and covenants under paragraphs 3, 4, 8, 9 and 10 below, the Conditional Assignment of Lease contemplated hereunder is expressly conditioned upon, and shall not be effective and Assignee shall have no right to pursue any remedy hereunder unless and until:

(a) Default by Assignor under the terms of the Lease, which default (i) is not cured by Assignor within the time limits provided therein or (ii) results in a demand for performance by Assignee as surety for or under any guaranty of the Lease; or

(b) Default by Assignor under the terms of the Franchise Agreement or under any document or instrument securing the Franchise Agreement, which default is not cured by Assignor within the time limits provided therein; or

(c) Voluntary institution of any insolvency or bankruptcy proceedings as a debtor or involuntary insolvency or bankruptcy proceedings brought against Assignor which are not dismissed within 60 days of the filing thereof; or

(d) Discontinuation by the Assignor of operation of a ROCKY MOUNTAIN CHOCOLATE FACTORY Store on the Property, whether voluntarily or involuntarily; or

(e) Nonrenewal by Assignor of the Franchise Agreement; or

(f) Nonrenewal by Assignor of the Lease.

328

3. During the term of the Lease, Landlord agrees to give Assignee written notice of all defaults of Assignor concurrently with the giving of such notice to Assignor. Landlord further agrees to give Assignee the period provided to Tenant under the Lease plus 10 days to cure all such defaults.

4. In the event Assignee expends sums to cure a default, Assignor shall promptly reimburse Assignee for the cost incurred by Assignee in connection with such performance, together with interest thereon at the rate of 1½% per month, or the highest rate allowed by law. Nothing herein shall obligate Assignee to cure any such default, unless Assignee elects to assume the Lease pursuant to paragraph 5 below.

5. The date upon which this Conditional Assignment shall be effective (the "Effective Date"), is the date upon which Landlord and Assignor receive written notice from Assignee that:

(a) Assignee will cure all prior defaults of Assignor in the Lease in which Landlord has given notice to Assignee pursuant to the provisions of paragraph 3 above, and that Assignee will assume the Lease; or

(b) The events described in either subparagraph 2(b), 2(c), 2(d) or 2(e) above have occurred and that Assignee will assume the Lease.

6. As of the Effective Date, Assignee will assume all rights, duties, responsibilities and obligations of Assignor arising on or after the Effective Date pursuant to the terms and provisions of the Lease.

7. Landlord hereby consents to the terms and provisions of this Conditional Assignment, and to the assignment of the Lease to Assignee. Landlord agrees that after the Effective Date, Assignee may (i) enter into a sublease or assignment with any ROCKY MOUNTAIN CHOCOLATE FACTORY franchisee without Landlord's further consent, or (ii) further assign the Lease to a person, firm or corporation who shall agree to assume the tenant's obligations under the Lease and who is reasonably acceptable to Landlord. Landlord further agrees that upon the occurrence of any such assignment, Assignee shall have no further liability or obligation under the Lease as Assignee, tenant or otherwise, and that concurrent with such assignment, Landlord will enter into a replacement Conditional Assignment of Lease Agreement by and between Assignee and the new tenant.

8. Assignor agrees to indemnify and hold harmless Assignee from any loss, liability, cost or expense incurred or suffered by Assignee under this Conditional Assignment.

9. Assignor and Landlord agree not to allow any surrender, amendment, modification or termination of the Lease without the prior written consent of Assignee. Throughout the term of the Lease, Assignor agrees that it shall elect and exercise all options to extend the term of or renew the Lease not less than 30 days prior to the last day said option must be exercised, unless Assignee otherwise agrees in writing. Upon Assignee's failure otherwise to agree in writing, and upon the failure of Assignor to elect to extend or renew the Lease, Assignor hereby appoints Assignee as its true and lawful attorney-in-fact to exercise such extension or renewal option in the name, place and stead of Assignor for the sole purpose of effecting such extension or renewal.

10. Assignor represents and warrants to Assignee that it has the full power and authority to assign the Lease and its interests therein and that Assignor has not previously assigned, transferred or pledged, and is not otherwise obligated to assign, transfer or pledge, any of its interests in the Lease or the leasehold estate created thereby.

11. All notices or demands required hereunder shall be made in writing and shall be deemed to be fully given when deposited in the U.S. certified mail, postage prepaid, return receipt requested or when sent Federal Express or similar overnight courier to:

Assignee:

Rocky Mountain Chocolate Factory, Inc.
265 Turner Drive
Durango, Colorado 81303

Assignor:

_____
_____
_____
_____

Landlord:

_____
_____
_____
_____

12. Should any one or more of the provisions hereof be determined to be illegal or unenforceable, all other provisions hereof shall be given effect separately therefrom and shall not be affected thereby.

13. This Conditional Assignment may be executed in counterparts, all of which will have full force and effect as an original, including admission into evidence, and facsimile signatures shall constitute originals for all purposes.

**IN WITNESS WHEREOF**, the parties hereto have executed this Conditional Assignment on the day and year first above written.

ASSIGNOR:

_____

By:_____

Name:_____

Its:_____


ASSIGNEE:

ROCKY MOUNTAIN CHOCOLATE
FACTORY, INC.

By:_____

Name: _____

Its: _____


LANDLORD:

_____

By: _____

Name: _____

Its: _____

(6/1/03)

**EXHIBIT H**

**ADDENDUM TO FRANCHISE AGREEMENT – SATELLITE STORE**

# ADDENDUM TO
# FRANCHISE AGREEMENT --
# ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.
# SATELLITE STORE

THIS ADDENDUM ("**Addendum**") to the Franchise Agreement dated of even date herewith ("**Agreement**") is between Rocky Mountain Chocolate Factory, Inc. ("**Franchisor**") and the undersigned "**Franchisee**." The following amends and shall be incorporated into the Agreement. In the event of any conflict between the terms of the Agreement and the terms of this Addendum, the terms of this Addendum shall control. All capitalized terms not defined in this Addendum shall have the respective meanings set forth in the Agreement. The Franchisor and the Franchisee agree as follows:

1.   **Application of Satellite Store to Agreement**. All references in the Agreement to the "Stores," as defined in Section 1.1 of the Agreement, are deleted and the reference "Satellite Store" is inserted in place thereof. Notwithstanding anything contained in the preceding sentence to the contrary, all references in the Agreement to "Stores" under Section 20.2 of the Agreement shall not be replaced by the words "Satellite Store," but shall instead be supplemented by adding the words "or Satellite Stores" directly after the word "Store(s)." All references to "Stores" in the definition of "Competitive Business" in Section 20.1 of the Agreement shall remain unchanged as originally stated. Except as may be otherwise noted herein or in the Agreement, all applicable terms, conditions and requirements set forth in the Agreement applicable to the Stores shall apply to the Satellite Stores. The Franchisor's approval of the development and operation of a Satellite Store, as required pursuant to Section 3.2 of the Agreement, is hereby granted. The terms of the Agreement and of this Addendum apply only to the operation of and products offered and sold from or through the Satellite Store and not to any other non-competing businesses of the Franchisee, located in the Host Facility (defined below), if any, except as specifically set forth herein.

2.   **Definition of Satellite Store**. The Franchisor and the Franchisee agree that the Franchisee's "Satellite Store" shall be defined as a ROCKY MOUNTAIN CHOCOLATE FACTORY Store which is open for business for a total of between 31 and 180 days in any calendar year and/or has a lease lasting more than one but fewer than 12 months and/or is located at, in or adjacent to a Host Facility, as defined in Section 4 below. If applicable, the Satellite Store will be open during the following months or for the following events each year: _____
_____.

3.   **Traditional Store**. All references in this Addendum to the Franchisee's "Traditional Store(s)" shall refer to the traditional Store(s) operated under duly executed and validly existing franchise agreement(s) dated _____, _____ and _____, _____ between the Franchisor and the Franchisee or, if the Franchisee is a partnership, corporation, limited liability company or any other entity, owned in part or in whole by those individuals or entities owning 50% or more of the ownership interests in the Franchisee entity ("**Affiliates**"), which agreements shall hereinafter be referred to as "**Traditional Agreement(s)**." The Franchisee acknowledges that the Franchisor only grants rights to develop and operate Satellite Stores to its franchisees or their Affiliates who own and operate a traditional ROCKY MOUNTAIN CHOCOLATE FACTORY Store under a valid and existing franchise agreement with the Franchisor. The Franchisees' or its Affiliates' Traditional Store(s) is/are located at ___
_____.

4.   **Franchised Location**. The Franchised Location for the Satellite Store shall be, which, if applicable, is located at, within or adjacent to the following facility (also referred to as the "**Host Facility**"): _____.

333

The Franchisee acknowledges and agrees that the Franchised Location for its Satellite Store shall not be located within any protected territories of other franchisees of the Franchisor.

5. **Approval of Franchised Location.** The Franchisor hereby approves the above-stated location as the Franchised Location. The Franchisee acknowledges and warrants that (1) the Franchisor's approval does not constitute a guarantee, recommendation or endorsement of the Franchised Location and that the success of the Satellite Store is dependent upon the Franchisee's abilities as an independent businessperson; and (2) the Franchisor has complied with its obligations under the Agreement to assist the Franchisee with respect to criteria for the Franchised Location and determination of fulfillment of the requisite criteria for the Franchised Location, such determination based on information provided by the Franchisee.

6. **Initial Franchise Fee.** Section 4.1 of the Agreement shall be deleted in its entirety and replaced with the following:

The parties acknowledge the receipt and sufficiency of adequate consideration for entering into this Agreement.

7. **Approval of Lease.** The following sentence shall be added to the end of Section 5.1 of the Agreement:

If the placement and operation of the Satellite Store in or in connection with the Host Facility requires the consent of the owner, franchisor or licensor of the Host Facility, the Franchisee hereby represents and warrants that such consent has been obtained in writing, and such representation is a condition precedent to the grant of the Franchisee's right to establish and operate the Satellite Store.

8. **Conversion and Design; Signs; Equipment.** Sections 5.2, 5.3 and 5.4 of the Agreement are amended by adding the following sentence to the end of each Section:

The Franchisee agrees to comply with any policies, procedures, standards and specifications contained in the Franchisor's Operations Manual pertaining to Satellite Stores.

9. **Relocation.** The following shall be added as a new Section 5.7 of the Agreement:

5.7 **Relocation.** Effective during the 90 day period beginning six months after the opening of the Satellite Store, the Franchisee shall have the option to relocate the Satellite Store to another site, subject to the Franchisor's approval of such site in accordance with the terms of this Agreement, if the Franchisee reasonably determines that the Satellite Store has not been profitable during the six month period after the opening of the Satellite Store and if the Franchisee provides 30 days advance written notice to the Franchisor of its determination of nonprofitability and intent to relocate, which notice shall include documentation supporting the Franchisee's determination of nonprofitability and a proposed site for relocation.

**10.   Initial Training Program**. Sections 6.1 and 6.2 of the Agreement shall be deleted and replaced with the following:

At all times, the Satellite Store shall be managed by a person who has successfully completed the Franchisor's initial training program. The Franchisor shall waive the requirement that the Franchisee or its employees successfully complete the initial training program, provided that the Franchisee agrees to designate a person or persons to assume primary responsibility for the management of the ROCKY MOUNTAIN CHOCOLATE FACTORY Satellite Store ("**General Manager**") who shall have already successfully completed the Franchisor's initial training program. If the Franchisee wishes to appoint a General Manager for the ROCKY MOUNTAIN CHOCOLATE FACTORY Satellite Store who has not already successfully completed the Franchisor's initial training program, the Franchisee may pay the then current published fee for such training program and the Franchisee shall be responsible for all travel and living expenses incurred by its personnel during the training program. The Franchisee acknowledges that the availability of the training program shall be subject to space considerations and prior commitments to new ROCKY MOUNTAIN CHOCOLATE FACTORY franchisees.

**11.   Franchisor's Development Assistance**. Subsections 7.1.a, .b and .f of the Agreement shall be deleted in their entirety.

**12.   Satellite Store Operations**. The second sentence of Section 10.1.d of the Agreement shall be deleted and replaced with the following sentence:

The Franchisee shall offer all types of products and services as from time to time may be prescribed by the Franchisor for Satellite Stores and shall refrain from offering any other types of products or services, or operating or engaging in any other type of business or profession, from or through the ROCKY MOUNTAIN CHOCOLATE FACTORY Satellite Store, including, without limitation, filling "Wholesale Orders," defined below, selling Factory Candy, Store Candy, Items or other authorized products through the internet, catering or other off-premises sales, without the prior written consent of the Franchisor.

and, the following shall be added to the end of Section 10.1.d of the Agreement:

The Franchisor and the Franchisee acknowledge and agree that the products and services offered for sale from or through the Satellite Store, and the standards and specifications of the Franchisor related thereto, may differ from that of a traditional ROCKY MOUNTAIN CHOCOLATE FACTORY Store and may be subject to alternative standards and specifications as may be developed and made available by the Franchisor from time to time.

and, Section 10.1.f of the Agreement shall be deleted and replaced with the following:

The Franchisor recommends that the Franchisee subscribe for and maintain three separate telephone numbers for its ROCKY MOUNTAIN CHOCOLATE FACTORY Satellite Store at the Franchised Location, two of which, the telephone and facsimile machine numbers, shall be listed and identified exclusively with the Satellite Store and shall be separate and distinct from all other telephone numbers subscribed for by the Franchisee. If applicable, one number shall be used exclusively for voice communication, the second

shall be used exclusively for a facsimile machine and the third shall be used exclusively for the modem that is included in the System.

13. **Monthly Royalty**. The following shall be added at the end of Section 11.1 of the Agreement:

Further, the Franchisee agrees to report all Gross Retail Sales, defined in Section 11.2 below, generated from or through its Satellite Store separate and apart from reports of its Gross Retail Sales generated from or through its Traditional Store(s).

14. **Local Advertising; Marketing and Promotion Fee**. Section 12.2 of the Agreement shall be deleted in its entirety. The following will be added at the end of Section 12.3 of the Agreement:

Notwithstanding the references in this Section 12.3 to local advertising expenditures, the Franchisee will not be required to spend any amounts on local advertising of its Satellite Store.

15. **Regional Advertising Programs**. Section 12.4 of the Agreement shall be revised as follows:

Notwithstanding the provisions of this Section 12.4, the Franchisee's Satellite Store will not be required to participate in either a regional advertising program or a regional advertising cooperative established by the Franchisor from time to time.

16. **Marks**. The following shall be added to the end of the second sentence of Section 14.1 of the Agreement:

and, if applicable, except for the right to use such Marks in the operation of Traditional Stores pursuant to duly executed and validly existing Traditional Agreements with the Franchisor.

17. **Franchisee Reports**. The following sentence shall be added to the end of Section 15.1 of the Agreement:

The Franchisee agrees to keep the bookkeeping and accounting records for the Satellite Store separate from the bookkeeping and accounting records of all Traditional Store(s) owned by the Franchisee or its Affiliate(s). The Franchisee further agrees to keep separate bookkeeping and accounting records to differentiate all sales and operations of the Satellite Store from all sales and operations of the Host Facility, if any.

18. **Transfer by Franchisee**. Section 16.2.b. of the Agreement shall be deleted and replaced by the following:

The proposed transferee agrees to operate the Satellite Store as a ROCKY MOUNTAIN CHOCOLATE FACTORY Satellite Store and agrees to satisfactorily complete the initial training program described in the then current form of franchise agreement, which training must be completed by the transferee prior to the effectiveness of the transfer;

and the following shall be added as a new Section 16.2.i:

  i. One or more of the Franchisee's Traditional Agreements for the Franchisee's or its Affiliates' Traditional Store(s) is or are being transferred to the same proposed transferee of the Satellite Store simultaneously with and as part of the same transaction as the transfer of the Satellite Store.

 **19.** **Term**. Section 17.1 of the Agreement shall be deleted and replaced with the following:

  The initial term of this Agreement shall expire on the same date the Traditional Agreement governing the Franchisee's or its Affiliates' Traditional Store expires. If the Franchisee together with its Affiliates, operates more than one Traditional Store, then this Agreement shall expire on the first expiration date to occur taking into account the expiration dates of all of the applicable Traditional Agreements.

 **20.** **Rights Upon Expiration**. The following shall be added to the Agreement as new Sections 17.2.f and 17.2.g, respectively:

  f. Has complied with all provisions of the Franchisee's or its Affiliates' Traditional Agreement(s) for the Franchisee's or its Affiliates' Traditional Store(s) during the current term of this Agreement, including the payment on a timely basis of all Royalties and other fees due under the Traditional Agreement(s); and

  g. All amounts due and owing pursuant to this Agreement and pursuant to all Traditional Agreement(s) by the Franchisee to the Franchisor or its affiliates or to third parties whose debts or obligations the Franchisor has guaranteed on behalf of the Franchisee, if any, are paid in full.

 **21.** **Termination by Franchisor - Effective Upon Notice**. The following shall be added to the Agreement as new Sections 18.1.j, 18.1.k and 18.1.l, respectively:

  j. **Termination of Traditional Agreement**. If any of the Traditional Agreement(s) between the Franchisor and the Franchisee or its Affiliates for any of the Traditional Store(s) expires without being renewed or is terminated for any reason.

  k. **Loss of Right to Operate at Host Facility**. If the Satellite Store is operated at a Host Facility, if the Franchisee loses the right for whatever reason to operate the Satellite Store at the Host Facility.

  l. **Transfer of Franchisee's Traditional Store Without Transfer of Satellite Store**. If any of the Franchisee's or its Affiliates' Traditional Store(s) or Traditional Agreement(s), is/are transferred in any manner pursuant to a transaction where the Satellite Store licensed under this Agreement is not transferred in full simultaneously therewith to the identical transferee, without the Franchisor's prior written consent.

 **22.** **Termination by Franchisor - Thirty Days Notice**. The following shall be added to the end of the first sentence in Section 18.2.e of the Agreement:

  , except for the breach and termination of any of the Traditional Agreement(s) for Traditional Store(s) owned by the Franchisee or its Affiliates, to which Section 18.1.j of this Agreement shall apply.

23. **Non-Competition During Term**. The following phrase shall be added to the end of Section 20.1 of the Agreement:

, and further provided that the term "**Competitive Business**" shall not include any Traditional Stores operated by the Franchisee or its Affiliates pursuant to duly executed and validly existing Franchise Agreements with the Franchisor.

24. **Notice**. The business address for any notices mailed pursuant to Section 22.12 of the Agreement shall be as follows: _____
_____.

25. **Franchisee Representation**. The person(s) or entity(ies) executing this Addendum as the Franchisee is (are) identical to or are Affiliates of the person(s) or entity(ies) who executed the Agreement.

26. **Ratification**. Except as modified in this Addendum, all terms, conditions and obligations set forth in the Agreement are hereby ratified and confirmed by this Addendum.

**IN WITNESS WHEREOF**, the parties have executed this Addendum effective as of the _____ day of _____, 20____.

**FRANCHISOR:**

ROCKY MOUNTAIN CHOCOLATE
FACTORY, INC.

By:_____
Title:_____

**FRANCHISEE:**

_____

_____
Individually

AND:

(if a corporation or partnership)

_____
Company Name

By:_____
Title:_____

(6/1/03)