LYNN & FORTUNE, LLP
  Robert H. Lynn (SBN 054016)
  Rebecca J. Fortune (SBN 229921)
2171 India Street, Suite C
San Diego, California 92101
Phone: (619) 233 - 9464
Fax:    (619) 702 - 6911

Attorneys for Plaintiffs SDMS, INC.,
THOMAS P. ANDERSON and KEN PECUS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SDMS, INC.**, A CALIFORNIA CORPORATION,** THOMAS P. ANDERSON, and KEN PECUS,<br><br>          Plaintiffs,<br><br>     vs.<br><br>ROCKY MOUNTAIN CHOCOLATE FACTORY **INC., A COLORADO CORPORATION AND BRYAN J. MERRYMAN, AN INDIVIDUAL**,<br><br>          Defendant**S**.<br>_____ | Case No.: 08cv833 JM AJB<br><br>**SECOND** AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES:<br><br>1. Violations of Section 17000 of the California Business & Professions Code;<br>2. Violations of Section 17200 of the California Business & Professions Code. |

COMES NOW Plaintiffs, SDMS, INC., THOMAS P. ANDERSON and KEN PECUS, by and

through their counsel, and submits this **SECOND** Amended Complaint for damages against Defendants,

ROCKY MOUNTAIN CHOCOLATE FACTORY, INC., a Colorado corporation, **AND BRYAN J.**

**MERRYMAN**.

For the convenience of the Court and all parties, all previously amended language has be

converted into standard type font and all language amended herein will be included in **UPPER CASE,**

**BOLD TYPE FONT**.  All other allegations and exhibits contained within or referenced by Plaintiffs'

original and First Amended Complaint (Doc. No. 3) remain unchanged.  To the extent that the Exhibits

attached to Plaintiffs' original and/or First Amended Complaint have remained unchanged, they will not be attached to this Second Amended Complaint.

**PARTIES**

1.    Plaintiffs, SDMS, INC., a California sub-chapter "S" corporation ("SDMS"), THOMAS P. ANDERSON, an individual ("ANDERSON") and KEN PECUS, an individual ("PECUS") (hereinafter, unless specifically identified otherwise, Plaintiffs collectively referred to as "SDMS") are, and at all times herein mentioned were, residents of San Diego County, California and are the previous owners of a Rocky Mountain Chocolate Factory franchised retail location at 234 5th Avenue, Space B, San Diego, California 92101 ("the Gaslamp Franchise").

2.    Upon information and belief and thereon alleged, Defendant ROCKY MOUNTAIN CHOCOLATE FACTORY, INC. ("RMCF") is a Colorado corporation with a principal place of business located in Durango, Colorado.  As such and, upon information and belief, RMCF is a citizen of the State of Colorado. And, at all times mentioned herein, has been registered to do business in the State of California as a franchisor of retail chocolate store locations.

**3.    UPON INFORMATION AND BELIEF AND THEREON ALLEGED, DEFENDANT BRYAN J. MERRYMAN ("MERRYMAN") IS AN INDIVIDUAL RESIDING IN DURANGO, COLORADO.  AS SUCH AND, UPON INFORMATION AND BELIEF, MERRYMAN IS A CITIZEN OF THE STATE OF COLORADO.  AT ALL TIMES MENTIONED HEREIN, MERRYMAN HAS BEEN A MEMBER OF THE BOARD OF DIRECTORS AND HELD THE OFFICES OF CHIEF OPERATING OFFICER AND CHIEF FINANCIAL OFFICER WITHIN DEFENDANT, RMCF.**

**JURISDICTION AND VENUE**

4.    This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1), in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and, is between citizens of different States.

5.    Venue is proper in the Southern District of California because Defendant voluntarily registered to sell franchises within the State of California and did sell a minimum number of six (6)

franchises in the county of San Diego.  Further, plaintiffs' former Rocky Mountain Chocolate Factory franchise was located within the county of San Diego.

**JURY DEMAND**

6.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands the right to a trial by jury.

## CHOICE OF LAW

7.    UPON INFORMATION AND BELIEF AND THEREON ALLEGED, ALTHOUGH THE RMCF FRANCHISE AGREEMENT PROVIDES FOR THE APPLICATION OF COLORADO LAW IN ALL DISPUTES BETWEEN THE PARTIES THERETO, THE STATE OF COLORADO FOLLOWS THE RESTATEMENT (SECOND) OF CONFLICT OF LAWS FOR CONTRACTS, SECTION 187 IN DETERMINING THE ENFORCEABILITY OF CHOICE-OF-LAW PROVISIONS.  *BOONE V. MVM, INC.*, 2008 U.S. Dist. LEXIS 11572 (D. COLO., February 15, 2008).  SECTION 187 STATES, IN PERTINENT PART, "THE FORUM STATE SHOULD APPLY THE LAW CHOSEN BY THE PARTIES <u>UNLESS</u> … THE APPLICATION OF THE LAW CHOSEN WOULD BE CONTRARY TO A FUNDAMENTAL POLICY OF A STATE WHICH HAS A MATERIALLY GREATER INTEREST IN THE ISSUE."  RESTATEMENT 2D OF CONFLICT OF LAWS, § 187.

8.    CALIFORNIA CORPORATIONS CODE SECTION 31001 STATES, IN PERTINENT PART, "CALIFORNIA FRANCHISEES HAVE SUFFERED SUBSTANTIAL LOSSES WHERE THE FRANCHISOR OR HIS OR HER REPRESENTATIVE HAS NOT PROVIDED FULL AND COMPLETE INFORMATION REGARDING THE FRANCHISOR-FRANCHISEE RELATIONSHIP … IT IS THE INTENT OF THIS LAW TO PROHIBIT THE SALE OF FRANCHISES WHERE THE SALE WOULD LEAD TO FRAUD OR A LIKELIHOOD THAT THE FRANCHISOR'S PROMISES WOULD NOT BE FULFILLED …".

9.    BECAUSE ANDERSON, PECUS AND SDMS ARE CALIFORNIA RESIDENTS AND BECAUSE RMCF WAS REQUIRED TO REGISTER WITH THE CALIFORNIA DEPARTMENT OF CORPORATIONS PRIOR TO BEING AUTHORIZED TO SELL

1    **FRANCHISES IN THE STATE, THEREBY ACKNOWLEDGING THE APPLICATION OF**

2    **CERTAIN CALIFORNIA LAWS AND, BECAUSE PLAINTIFFS' CLAIMS ARE BROUGHT**

3    **UNDER CALIFORNIA, THE STATE OF CALIFORNIA CLEARLY HAS A MATERIALLY**

4    **GREATER INTEREST IN THE CLAIMS RAISED HEREIN AND CALIFORNIA LAW**

5    **SHOULD APPLY HERETO.**

6

7    <u>**GENERAL ALLEGATIONS**</u>

8    <u>**Case Background**</u>

9    **SDMS**

10    **10**.    At all times throughout ANDERSON's life, his family has been employed in the

11    chocolate/candy making and retail industry.  In this regard, both of ANDERSON's paternal

12    grandparents, his father, his mother and his aunt worked at the Schrafft Chocolate Factory in Boston,

13    Massachusetts.  Since 1974, ANDERSON's mother has been employed at "Russo's Fine Chocolates"

14    located in Saugus, Massachusetts.  Throughout his life, ANDERSON would visit is mother at Russo's

15    Fine Chocolates where she would teach him various candy and chocolate making techniques and

16    recipes.

17    **11**.    At all times relevant to the allegations alleged herein, PECUS has been employed as a

18    licensed California real estate sales person.  In or about 2005, PECUS became the co-owner of Ascent

19    Real Estate, Inc., a California corporation.

20    **12**.    In or about the spring of 2003, ANDERSON decided that he would like to enter the

21    chocolate/candy making and retail business for himself and he began researching the business

22    opportunities near his home in San Diego, California.

23    **13**.    Upon information and belief and thereon alleged, in or about June 2003, ANDERSON

24    contacted Counter-defendant, RMCF with regards to becoming a licensed Rocky Mountain Chocolate

25    Factory franchisee.

26    \\\

27    \\\

28    \\\

**RMCF – "Franchisor"**

14.     RMCF is the franchisor of a retail chocolate store concept that was founded and operated upon the premise that the franchisee could fund, own and operate a retail gourmet chocolate store selling chocolates and other premium confectionary products.  The emphasis required by, and advertised at the insistence of the franchisor, was based upon the sale of a gourmet and/or premium product, utilizing all natural ingredients.  The RMCF franchise is promoted as the "perfect family business," with the vast number of its franchises owned and operated by small businesses comprised almost entirely of immediate family members.

1**5**.     Upon information and belief and thereon alleged, at the time of filing this complaint, RMCF has sold in excess of **TWO** hundred (**2**00) franchise locations within the United States, **SIXTY-EIGHT** (**68**) within the State of California alone, to franchisees who paid a minimum initial franchise fee of $19,500.  Accordingly, RMCF has built a business system on more than $**3,90**0,000.00 in capital invested by individual franchise owners and not themselves.

1**6**.     Each RMCF franchisee signed a standardized form franchise agreement prepared by RMCF. As part of the standard "Franchise Agreement," executed by all RMCF franchisees, franchisees are required: (1) to pay to RMCF a royalty (averaging between 5-10%), based on the gross sales of the individual's franchised retail location and; (2) to purchase products directly from Defendant, RMCF to meet certain display and inventory requirements for their individual RMCF retail franchise location.  Upon information and belief and thereon alleged, in fiscal year 2007, RMCF franchisees paid in excess of $5,500,000 to RMCF in royalty fees and in excess of $15,000,000 **TOWARDS THE PURCHASE OF** products produced by RMCF at its wholly-owned Durango, Colorado manufacturing facility.

17.     Upon information and belief and thereon alleged, in addition to its franchising activities, RMCF engages in the sale of its products to customers outside its franchising system.  Such outside customers include **LOW COST, BULK RETAILER OUTLETS** such as Costco Wholesale Corporation, discount retail outlets such as Target, **DISCOUNT** internet-based retail outlets such as "Proflowers.com," "Amazon.com," "Shop.com," and catalog retailers such as "Wine Country Gift Baskets" (collectively, RMCF's "Direct Customers").

18.    **UPON INFORMATION AND BELIEF AND THEREON ALLEGED, RMCF SECRETLY SELLS RMCF BRAND CANDY TO ITS DIRECT CUSTOMERS AT PER UNIT COSTS LESS THAN IT SELLS THE SAME, OR SUBSTANTIALLY SIMILAR, PRODUCT TO ITS FRANCHISEES.**

19.    **UPON INFORMATION AND BELIEF AND THEREON ALLEGED, RMCF DOES NOT DISCLOSE, TO THE FRANCHISEE, BEFORE OR AFTER THEIR PURCHASE OF AN RMCF FRANCHICE, THAT IT SELLS RMCF BRAND CANDY TO DIRECT CUSTOMERS FOR A LESSER PER UNIT COST THAN SUCH PRODUCT IS SOLD WITHIN THE FRANCHISE SYSTEM.**

20.    Upon information and belief and thereon alleged, RMCF does not set a minimum sales price requirement with regards to its Direct Customers prior to their purchase of product from RMCF. As a result, RMCF's Direct Customers are free to set any sales price they so choose, even if it undercuts the franchisee by more than forty percent (40%). **UPON INFORMATION AND BELIEF AND THEREON ALLEGED, RMCF HAS ACTUAL KNOWLEDGE THAT ITS DIRECT CUSTOMERS SELL RMCF PRODUCT AT RETAIL SALES PRICES SIGNIFICANTLY LESS THAN THE SUGGESTED RETAIL SALES PRICE RMCF'S PROVIDES TO ITS FRANCHISEES.**

21.    Upon information and belief and thereon alleged, during **MERRYMAN'S** service on the RMCF Board of Directors and as RMCF's Chief Operating Officer, RMCF, **AT MERRYMAN'S SPECIFIC DIRECTION,** has been actively marketing its products outside the franchising system, realizing an increase in revenues from such sales in excess of fifty percent (50%) in each of the last three years.  During the same time frame, franchise sales have increased at the much more modest rate of approximately two percent (2%) per year with actual pounds of product purchased by the franchising system in negative numbers.  Further, upon information and belief and thereon alleged, RMCF sells certain products to its Direct Customers that are either not available **TO THE FRANCHISE SYSTEM**.

22.    Prior to the sale of each of its franchises within the State of California, RMCF issued pre-sale disclosures mandated by the Federal Trade Commission's ("FTC") Franchise Disclosure Rule, 16 C.F.R. Part 436 and applicable state law, including the California Franchise Investment Law ("CFIL"),

Cal. Corp. Code § 31000, et seq. RMCF's pre-sale disclosures were reduced to writing and are embodied in a "Uniform Offering Circular" ("UFOC") presented to each franchisee prior to their purchase of an RMCF franchise. RMCF did not disclose to any of its franchisees, prior to their investment in the franchise, that it intended to make a concerted effort to expand its sale of products to Direct Customers and that such sales were growing at a rate in significant excess of that of its franchising sales revenue. A true and correct copy of the RMCF June 2003 UFOC is attached hereto as Exhibit "1" and is incorporated by reference herein.

**23**. RMCF reports that one of its principal competitive strengths is in its knowledge and experience in applying criteria for selection of new retail store locations. RMCF admits that careful selection of a site is critical to the success of a Rocky Mountain Chocolate Factory store. Final site selection occurs only after RMCF's senior management has approved the site. Further, RMCF admits that a franchised location's economic viability depends, in part, upon obtaining a suitable location "at reasonable occupancy costs".

**24**. Upon information and belief and thereon alleged, if a franchisee is opening a new RMCF retail location, it is solely responsible for all costs involved in the build-out of their store location. RMCF's June 2003 UFOC discloses the estimated cost of build-out to be $302,500 for a full-sized RMCF retail store.

**25. THE RMCF UFOC AND FRANCHISE AGREEMENT CONTAINS THE FOLLOWING RESERVATION OF RIGHTS:**

> **THE FRANCHISEE ACKNOWLEDGES THAT THE FRANCHISE GRANTED HEREUNDER IS NON-EXCLUSIVE AND THAT THE FRANCHISOR RETAINS THE RIGHTS, AMONG OTHER: ... (2) TO USE THE MARKS AND LICENSED METHODS TO IDENTIFY SERVICES AND PRODUCTS, PROMOTIONAL AND MARKETING EFFORTS OR RELATED ITEMS, AND TO IDENTIFY PRODUCTS AND SERVICES SIMILAR TO THOSE WHICH THE FRANCHISEE WILL SELL, BUT MADE AVAILABLE THROUGH ALTERNATIVE CHANNELS OF DISTRIBUTION OTHER THAN THROUGH TRADITIONAL ROCKY MOUNTAIN CHOCOLATE FACTORY STORES, AT ANY LOCATION OTHER THAN AT THE FRANCHISED LOCATION, INCLUDING BUT NOT LIMITED TO, THROUGH SATELLITE STORES, TEMPORARY STORES, KIOSK STORES, BY WAY OF MAIL ORDER, (INCLUDING ELECTRONIC MAIL ORDER), THE INTERNET, CATALOG, TELEVISION,**

**RETAIL STORE DISPLAY OR THROUGH THE WHOLESALE OF ITS PRODUCTS TO UNRELATED RETAIL OUTLETS OR TO CANDY DISTRIBUTORS OR OUTLETS LOCATED IN STADIUMS, ARENAS, AIRPORTS, TURNPIKE REST STOPS OR SUPERMARKETS …**

26. In addition to those provisions cited above, RMCF's standard Franchise Agreement contains the following terms:

a. Paragraph 2.2 – " … The Franchisee is required to devote a minimum of fifty percent (50%) of all retail display space to ROCKY MOUNTAIN CHOCOLATE FACTORY brand assorted bulk chocolates and boxed and packaged candies.  The franchisee's [RMCF] Store must feature [RMCF] brand candy manufactured by the Franchisor …"

b. Paragraph 5.1 – "The Franchisee shall obtain the Franchisor's prior written approval before executing any lease or purchase agreement for the Franchise Location.

c. Paragraph 10.1(e) – "The Franchisee shall offer only authorized products and services …"

d. Paragraph 11.1 – "The Franchisee agrees to pay to the Franchisor a monthly royalty ("Royalty") equal to 5% of its Gross Retail Sales generated from or through its [RMCF] Store … The Franchisee also agrees to pay a quarterly Royalty based on Adjusted Gross Retail Sales during each calendar quarter … the Franchisee shall owe the Franchisor a quarterly Royalty equal to 10% of its Adjusted Gross Retail Sales…"

e. Paragraph 12.3 – "The Franchisee shall pay to the Franchisor, in addition to Royalties, a fee of 1% of the total amount of the Franchisee's Gross Retail Sales ("Marketing and Promotion Fee") …"

f. Paragraph 13.4 – "The Franchises shall be required to purchase all of its Factory Candy for its RMCF Store from the Franchisor or its designee."

g.    Paragraph 18.1(a) – "Termination by Franchisor – Ten Days Notice. <u>Abandonment</u>.  If the Franchisee ceases to operate the [RMCF] Store or otherwise abandons the [RMCF] Store for a period of five consecutive days …"

h.    Paragraph 18.2(e) – "Termination by Franchisor – Thirty Days Notice.  <u>Breach of Related Agreement</u>.  The Franchisee defaults under any term of the lease …"

i.    Paragraph 18.3(a) – "Failure to Pay. … Additionally, the event this Agreement is terminated by the Franchisor prior to its expiration … the Franchisee acknowledges and agrees that in addition to all other available remedies, the Franchisor shall have the right to recover lost future Royalties during any period in which the Franchisee fails to pay through and including the remainder of the then-current term of this Agreement."

j.    Paragraph 18.4 – "Right to Purchase.  Upon termination, the Franchisor shall have the option to purchase …. at fair market value …"

k.    Paragraph 20.2 – Post-Termination Covenant Not to Compete.  Upon termination of Franchise Agreement for any reason, Franchisee agrees not to compete within a ten-mile radius of their existing Franchise Location or within a ten-mile radius of any other RMCF franchise location.

l.    Paragraph 22.1 – "Governing law/consent to venue and jurisdiction. … the exclusive venue for disputes between them shall be in the state courts in La Plata County, Colorado and in the federal courts located in Colorado …"

A true and correct copy of the RMCF standard Franchise Agreement, as it is attached to the June 2003 RMCF UFOC, is attached **TO PLAINTIFFS' ORIGINAL COMPLAINT** as Exhibit "2" and is incorporated by reference herein.

27.    Upon information and belief and thereon alleged, not only does RMCF require that all franchisees purchase products from RMCF, it also requires that such products be delivered to the franchisee by RMCF at an additional freight charge above and beyond the cost of the product to the franchisee.  Upon information and belief and thereon alleged, under certain circumstances and with regards to certain products, the RMCF franchisee can purchase, repackage and **RE-**sell RMCF products at a lesser total per-unit cost if such items are initially purchased, by the franchisee, from one of

1  RMCF's Direct Customers, such as Costco, **AS OPPOSED TO** purchasing **DIRECTLY** from RMCF

2  **AS IS REQUIRED BY THE FRANCHISE AGREEMENT**.

3      2**8**.    Upon information and belief and thereon alleged, RMCF's standard Franchise Agreement

4  does not permit the franchisee to terminate the RMCF Franchise Agreement under any circumstances.

5  **The Gaslamp Franchise**

6      **29**.    Upon information and belief and thereon alleged, in or about September 2003, a RMCF's

7  Franchise Sales Representative, Kraig Carlson, personally visited 234 5th Avenue, Space B, San Diego,

8  California 92101 ("the Gaslamp Franchise"), the location proposed by Plaintiffs for their Rocky

9  Mountain Chocolate Factory franchise location.  The proposed Gaslamp location included a total lease

10  space of 1,983 square feet.  Mr. Carlson, on behalf of RMCF, not only physically inspected the Gaslamp

11  Franchise, he also reviewed the proposed lease agreement.  Upon RMCF's approval of both the location

12  and lease agreement, Plaintiffs executed a lease agreement ("Lease Agreement") with S.D. Bridgeworks,

13  LLC on October 9, 2003.  A true and correct copy of the Lease Agreement is attached as Exhibit "3"

14  hereto and is incorporated by reference herein.  Under terms of the Lease Agreement, Plaintiffs'

15  monthly lease payment was $4,957.50 for the months 1 through 12; $6,444.75 for months 13 through

16  24; $7,932.00  for months 25 through 36 and; $8,427.75 for months 37 through 40.  The lease agreement

17  also included a requirement for Plaintiffs to pay to the landlord: (a) a sum equal to six percent (6%) of

18  their monthly Gross Retail Sales and, (b) 8.55% of monthly operating expenses.

19      **30**.     Upon information and belief and thereon alleged, Counter-claimants spent in excess of

20  $300,000.00 for costs and expenses required to open the Gaslamp Franchise.

21      **31**.    Upon information and belief and thereon alleged, Counter-claimants opened the Gaslamp

22  Franchise for business in February 2004.

23      **33**.     Upon information and belief and thereon alleged, since first opening the Gaslamp

24  Franchise in February 2004, Plaintiffs were required to contributed approximately $100,000.00 of

25  personal financing to meet the store's financial obligations.

26      **34**.    In or about May 2006, due the Gaslamp Franchise's poor performance, SDMS began

27  looking for ways to increase their revenue.  In this regard, Plaintiffs requested RMCF's approval to sell

28  additional items in their store (individual chocolate pieces commonly referred to as "ganasch" developed

1  and hand-made by ANDERSON) to help generate enough revenue to meet their monthly financial

2  obligations.  After initially providing positive feedback, RMCF refused to give its approval and

3  demanded that SDMS immediately dispose of any product then existing in the Gaslamp Franchise.

4      **35**.    Upon RMCF's refusal ANDERSON wrote RMCF a letter expressing SDMS' desire to

5  disassociate from RMCF and continue operating a business in their current location under a different

6  name.

7      **36**.    Between February 2004 and November 2006, SDMS suffered a total operating loss in the

8  approximate amount of $234,168.00 relating to their Gaslamp RMCF franchise location.

9      **37**.    Between February 2004 and November 2006, SDMS paid approximately $51,000.00 in

10  royalty and marketing fees to RMCF relating to their Gaslamp RMCF franchise location.

11      **38**.    Between February 2004 and November 2006, SDMS purchased approximately

12  $246,450.00 worth of product from RMCF for their Gaslamp RMCF franchise location.

13      **39**.    Between February 2004 and November 2006, SDMS paid approximately $166,000.00 in

14  commercial lease payments to S.D. Bridgeworks.

15  **RMCF's Termination of the Gaslamp Franchise**

16      **40**.    Without further communication with Plaintiffs, RMCF filed an action against SDMS,

17  INC., THOMAS P. ANDERSON and KENNETH PECUS in the state court of Colorado seeking only

18  injunctive and declaratory relief.  The action was later removed to the United States District Court for

19  the District of Colorado based upon diversity of citizenship.  However, the case was held in abeyance

20  while the parties attempted to resolve their dispute without the need for litigation.  During the course of

21  litigation, Plaintiffs were led to believe there would be an opportunity for settlement that would allow

22  them continued possession and control of their Gaslamp location if certain adjustments were made with

23  regards to the type of items offered for sale.   From Plaintiffs' perspective, at no time did these

24  adjustments involve exclusion of chocolates or other confectionary items from the products to be sold.

25  After a substantial amount of settlement discussions through the months of June 2006 – September

26  2006, it became clear that RMCF would not agree to any settlement that allowed SDMS' continued

27  possession and control in addition to a continued ability to sell chocolates and other confectionary items.

28

1    For these reasons, settlement discussions were terminated and, on October 20, 2006, RMCF filed an

2    Amended Complaint alleging the following causes of action against SDMS, ANDERSON and PECUS:

3    (1) Trademark Infringement under the United States' Lanham Act based upon SDMS' alleged use of the

4    RMCF marks without consent from October 10, 2006 through the time of filing on October 20, 2006;

5    (2) Unfair Competition under the United States' Lanham Act based upon SDMS' alleged use of RMCF

6    marks without consent and continued sale of unauthorized products; (3) Breach of Contract (common

7    law) based upon Plaintiffs alleged: (a) sale of unauthorized product beginning in or about August 2006,

8    (b) failure to pay royalties beginning in or about May 2006, (c) failure to abide by RMCF's post-

9    termination provisions including, but not limited to selling all assets associated with the Gaslamp

10    Franchise to RMCF at the offered price of $60,000; (4) Violation of Colorado Trade Secrets Act based

11    upon SDMS' alleged use of RMCF trade secret material without consent from October 10, 2006 through

12    October 20, 2006; and (5) Declaratory Judgment seeking enforcement of Plaintiffs' Franchise

13    Agreement, including the post-termination provisions including, but not limited to, the forced sale of

14    assets and enforcement of the 2-year, 10-mile covenant not to compete. ("Colorado Complaint" - USDC

15    Case No. 06cv01212, hereinafter referred to as the "Colorado Action").

16        **41**.    On November 7, 2006, in response to RMCF's Colorado Complaint, Plaintiffs filed an

17    Answer and the following Counter-Claims for damages in the Colorado District Court: (1) Rescission –

18    Material Misrepresentation in Registration Application based upon RMCF's alleged misstatement of

19    material fact with regards to three specific issues contained within its Uniform Offering Circular

20    (attached hereto as Exhibit "1"); (2) Damages - Material Misrepresentation in Registration Application

21    based upon RMCF's alleged misstatement of material fact with regards to three specific issues contained

22    within its Uniform Offering Circular; (3) Damages – Improper Termination of Franchise based upon

23    RMCF's alleged retaliatory termination of Plaintiffs' Franchise Agreement in or  about October 2006;

24    (4) Rescission – Fraud in the Inducement based upon RMCF's alleged misstatement of material fact

25    with regards to three specific issues contained within its Uniform Offering Circular; (5) Rescission –

26    Unconscionable Contract under Colorado Revised Statutes section 4-2-302 based upon the

27    unconscionable construction and application of the Rocky Mountain Chocolate Factory Franchise

28    Agreement; (6) Damages – Fraud based upon RMCF's alleged misstatement of material fact with

1  regards to three specific issues contained within its Uniform Offering Circular; (7) Damages – Breach of

2  Contract based upon RMCF's alleged failure to provide operational assistance as required by the

3  Franchise Agreement; and (8) Breach of Covenant of Good Faith and Fair Dealing. (Hereinafter

4  "Colorado Counter-Claims").

5      42.     Also filed by Plaintiffs on November 7, 2006 was a motion to transfer venue from the

6  District of Colorado to the Southern District of California based upon: (a) Plaintiffs' residence in San

7  Diego County, (b) RMCF's registration as a California franchisor, (c) RMCF's sale of franchises in San

8  Diego County, (d) SDMS' operations in San Diego County, and (e) California Business and Professions

9  Code section 20040.4 which states, "A provision in a franchise agreement restricting venue to a forum

10  outside this state is void with respect to any claim arising under or relating to a franchise agreement

11  involving a franchise business operating within this state."

12      43.     On November 17 and, continuing on November 29, oral argument was held with regards

13  to Plaintiffs' motion to transfer venue wherein the presiding District Court Judge, the Honorable Wiley

14  Y. Daniel, failed to apply the aforementioned California law and venue was maintained in the District of

15  Colorado.

16      44.     Upon information and belief and thereon alleged, had Plaintiffs' been permitted to

17  transfer venue to the Southern District of California, they would have been permitted to allege counter-

18  claims available only under California law.  However, because venue was maintained in the District of

19  Colorado, Colorado substantive law applied and Plaintiffs were prohibited from bringing their intended

20  California claims.  Because the State of Colorado does not possess any laws comparable to the

21  California Franchise Investment Law, Plaintiffs were able to maintain their two causes of action for

22  misrepresentation brought thereunder.

23      45.     On or about August 24, 2007, RMCF filed a Motion for Summary Judgment in the

24  Colorado Action seeking summary judgment with regards to each of Plaintiffs' seven Colorado Counter-

25  Claims.  After oral argument conducted on November 15, 2007 and, via Order issued on November 30,

26  2007, summary judgment was granted in RMCF's favor with regards to: (a) one of the three allegations

27  of fraud (one allegation was voluntarily withdrawn by Plaintiffs and one remains), (b) Plaintiffs' Third

28  Colorado Counter-Claim for Improper Termination based upon a finding that SDMS' failed to make

royalty payments and sold unauthorized products, each prohibited by the Franchise Agreement, (c) Plaintiffs' Fifth Colorado Counter-Claim for Unconscionable Contract based upon the Court's finding that Colorado Revised Statute section 4-2-302 did not apply to franchise agreements, therefore, the Court never reached a decision based upon the merits of Plaintiffs' claim thereunder, and (d) Plaintiff's Eighth Colorado Counter-Claim for Breach of Covenant of Good Faith and Fair Dealing based upon the Court's finding that RMCF's differential treatment of SDMS did not violate in individual term of the Franchise Agreement. (Plaintiffs' voluntarily withdrew its seventh Colorado Counter-Claim for Breach of Contract).

46.    Upon information and belief and thereon alleged, as of the date of this complaint, discovery has been completed and the Colorado Action is prepared for trial, currently scheduled for November 3, 2008.  The only remaining issues and/or claims to be tried are: (a) RMCF's claim for Breach of Contract based upon SDMS' sale of unauthorized products and failure to pay royalties (RMCF voluntarily withdrew its intellectual property and declaratory relief claims) and (b) SDMS' allegation of fraud with regards to misrepresentations contained within RMCF's UFOC related to RMCF's knowledge of its franchisees' "actual financial performance".

47.    Upon information and belief and thereon alleged, this Complaint is properly filed in the Southern District of California and Rule 13(a) of the Federal Rules of Civil Procedure relating to compulsory counter-claims does not apply as the allegations maintained herein do not relate to the same transaction or occurrence as did RMCF Colorado Complaint in that the Colorado Action was specifically limited to SDMS' alleged breach of the Franchise Agreement and unauthorized use of the RMCF marks in or about the summer and fall of 2006.  As such, the law and facts required to prove the claims maintained hereunder were not applicable nor relevant to, nor properly discoverable, in the Colorado Action.

## FIRST CAUSE OF ACTION

### Violation of Cal. Bus. & Prof. Code §17000, et seq.

### [AS AGAINST RMCF AND MERRYMAN]

48.    Plaintiffs refer to, and incorporate by reference herein, each and every allegation contained in all proceeding and subsequent paragraphs as if fully set forth herein.

49.    Plaintiffs and defendant were engaged in the sale of articles or products including services as defined under California Business & Professions Code Sections 17023 and 17024, **17030 AND 17045**.

50.    RMCF committed unfair, deceptive or illegal acts or practices as defined under California Business & Professions Code Section 1700**0**, et seq. and which are actionable under California Business & Professions Code Section 17070.

51.    The unfair, deceptive or illegal acts or practices committed by RMCF were a series of acts and violations that, in addition to being separately actionable, are part of an actionable pattern or violations and misconduct which included, but were not limited to: **SECRETLY O**ffering **RMCF** products for sale to its Direct Customers, **SITUATED AS RETAILERS AT THE TIME OF SALE,** at a lesser cost per unit than is offered to its franchise system.

52.    **UPON INFORMATION AND BELIEF AND THEREON ALLEGED, WHEN RMCF'S DIRECT CUSTOMERS PURCHASED RMCF FACTORY CANDY FROM RMCF, THEY WERE ALL SITUATED AS RETAILERS AND NOT WHOLESALERS.  UPON INFORMATION AND BELIEF AND THEREON ALLEGED, WHEN THE DIRECT CUSTOMERS SOLD RMCF FACTORY CANDY TO THE PUBLIC, SALES TAX WAS CHARGED.  AS SUCH, RMCF'S DIRCT CUSTOMERS HOLD THE SAME FUNCTIONAL CLASSIFICATION AS DO ITS FRANCHISEES.**

53.    In addition, **UPON INFORMATION AND BELIEF AND THEREON ALLEGED,** defendant **MERRYMAN IS THE CHIEF OPERATING OFFICER OF RMCF AND IS PRIMARILY RESPONSIBLE FOR ENCOURAGING THE SALE OF RMCF PRODUCT OUTSIDE THE FRANCHISE SYSTEM AT LESSER PER UNIT COSTS THEREBY DESTROYING THE FRANCHISEES' ABILITY TO COMPETE IN THE MARKET PLACE. AS SUCH, SPECIFICALLY PARTICIPATING IN AND/OR DIRECTING THE UNFAIR PRACTICES AS LISTED HEREIN, MERRYMAN MATERIALLY AIDED IN THE ABOVE VIOLATIONS OF THE §17000 AND, PURSUANT TO CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17095, IS PERSONALLY LIABLE FOR THE VIOLATIONS OF THE CORPORATE DEFENDANT.**

54.     The misconduct of the defendants should be preliminarily and permanently enjoined and all Uniform Offering Circulars submitted by RMCF to the California Department of Corporations and thereon distributed to each of its existing franchisees as well as all RMCF standard franchise agreements executed by each of the **68**+ California franchisees should be declared null and void pursuant to California Business & Professions Code Section 17051.

**SECOND CAUSE OF ACTION**

**Violation of Cal. Bus. & Prof. Code §17200, <u>et</u> <u>seq</u>.**

**[AS AGAINST RMCF]**

55.     Plaintiffs refer to, and incorporate by reference herein, each and every allegation contained in all proceeding and subsequent paragraphs as if fully set forth herein.

56.     Plaintiffs and defendant are "persons" as defined under California Business & Professions Code Section 17201. RMCF committed unlawful, unfair or fraudulent business acts or practices as defined under California Business & Professions Code Sections 17200, 17203 and other applicable statutory provisions of the California Business & Professions Code.

57.     **PLAINTIFFS, AS WELL AS ALL OTHER EXISTING RMCF FRANCHISEES ARE AND WERE, AT THE TIME THEY WERE MERELY PROSPECTIVE RMCF FRANCHISEES, MEMBERS OF THE PUBLIC AS IDENTIFIED BY CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17500.**

58.     RMCF owed SDMS a duty to not engage in illegal, fraudulent or unfair trade practices prohibited under Section 17200, <u>et</u> <u>seq</u>. of the California Business & Professions Code.

59.     The above actions of RMCF constituted illegal trade practices in violation of Section 17200 of the California Business & Professions Code including but not limited to violations of the CFIL, the FTC Act, 15 United State Code Section 45, and the FTC Disclosure Rule, Title 16 Code Federal Regulations Part 436.  Said violations include oral and written misrepresentations as set forth in the preceding paragraphs.

60.     The above actions of RMCF also constituted fraudulent trade practices in violations of Sections 17200 and 17500 of the California Business & Professions Code.  RMCF had the capacity to deceive Plaintiffs and **MEMBERS OF THE GENERAL PUBLIC** because RMCF had superior and

1    exclusive knowledge of their business and SDMS and members of the general public had no method of

2    learning the falsity of those misrepresentations as outlined in preceding paragraphs.

3          **61.**    The unfair, deceptive or illegal acts or practices committed by RMCF were a series of

4    acts and violations that, in addition to being separately actionable, are part of an actionable pattern or

5    violations and misconduct which included, but were not limited to:

6                    a.    Unfairly cannibalizing its franchise system by:

7                              i.    Offering its product for sale to discount retailers such as Costco, Target and

8                                    "Shop.com" (as defined more particularly at paragraph **17** above), thereby

9                                    **DESTROYING** the value of its trade name **AS A GOURMET AND/OR**

10                                   **PREMIUM PRODUCT**;

11                             ii.    **SECRETLY** Offering its products for sale to its Direct Customers at a lesser

12                                    cost per unit than is offered to its franchise system **UNDER LIKE TERMS**

13                                    **AND CONDITIONS**;

14                            iii.    Offering products for sale to its Direct Customers that are unavailable to the

15                                    franchise system;

16                   b.    Failing to disclose any of the actions contained at sub-sections C. i. – iii. herein to

17                          Plaintiff in advance of their execution of the franchise agreement;

18                   c.    Using the method of unfairly cannibalizing its franchise system in a long term

19                          scheme, conspiracy, plan and/or pattern of misconduct to cause a forfeiture or breach

20                          of the franchise agreement thereby driving down the value of the individual RMCF

21                          franchisees' "goodwill" and "going concern" value of their business;

22                   d.    "Gouging" the RMCF franchisees on the costs and freight of products purchase

23                          directly from RMCF **AS EVIDENCED BY THE FRANCHISEES ABILITY TO**

24                          **PURCHASE RMCF PRODUCT FROM RMCF'S DIRECT CUSTOMERS AT**

25                          **A LESSER PER UNIT COST THAN IF THE SAME PRODUCT WAS**

26                          **PURCHASE FROM RMCF AS REQUIRED BY THE FRANCHISE**

27                          **AGREEMNT**;

28

e.  Interfering, disparaging, defaming and otherwise trying to prevent the communication and organization of RMCF franchisees **BY DENYING THEM ACCESS TO PUBLIC FORUMS AND/OR THREATENING RETRIBUTION IF ANY CRITICISMS ARE LEVIED AGAINST RMCF AND ITS REPRESENTATIVES RELATED TO RMCF'S UNFAIR BUSINESS PRACTICES**;

f.  Utilizing artful drafting of franchise contracts of adhesion to carry out and/or facilitate the long term scheme, conspiracy and pattern of activity or misconduct described herein **LEAVING THE FRANCHISEE WITH NO WAY OUT (NO TERMINATION RIGHTS) REGARDLESS OF THEIR FINANCIAL DISTRESS**;

g.  Unfairly attempting to utilize the law of the State of Colorado in the RMCF standard Franchise Agreement and the post-term non-competition covenants unenforceable under California Business & Professions Code Sections 16600 and 20040.5.

h.  Upon information and belief and thereon alleged, unfairly using independently owned and operated RMCF franchisees to diminish RMCF's expenses for its employees and manufacturing practices **BY UTILIZING MARKETING FEES ALLEGEDLY COLLECTED FOR THE BENEFIT OF THE FRANCHISE SYSTEM AND INSTEAD APPLYING SUCH FEES TOWARDS THE COSTS OF MARKETING, MANUFACTURING AND PACKAGING ITS PRODUCT FOR SALE TO DIRECT CUSTOMERS TO THE DETRIMENT OF RMCF FRANCHISEES**;

i.  Upon information and belief and thereon alleged, conspiring with its Direct Customers to sell products **TO THE PUBLIC AT LARGE AT A RETAIL PRICE** less than **THE SAME PRODUCT'S** <u>cost</u> to the RMCF franchisee;

j.  Misrepresenting and deliberately withholding of information and financial data about the profitability of RMCF franchised retail stores;

k.  Using in-terrorem tactics, threats, intimidation and other deceitful and unfair practices to force franchisees to remain in financial destructive relationships including, but not limited to, threatening franchisees with a lawsuit seeking a forced sale of their franchised location and/or lost future royalties for the remaining term of their franchise agreement **AND FORCING FRANCHISEES TO FORGO LEGITIMATE CLAIMS FOR DAMAGES IN EXCHANGE FOR TRANSFER APPROVAL**;

l.  Undermining the RMCF business model in which each RMCF franchisee had made a firm specific investment by selling products to discount retailers;

m.  Charging and collecting royalty payments from the RMCF franchisees while actively working to cannibalize the franchise system by developing a market place of Direct Customers, destroying and/or drastically reducing the RMCF franchisees' "good will" and the "going concern value" of their independently owned franchised business;

**n.**  Charging and collecting "marketing fees" over a period of more than four years and unfairly utilizing those funds for advertising RMCF's own, factory brand products sold to Direct Customers and not to the franchise system.

**62.**  As a result of the above-referenced misconduct, RMCF was unjustly enriched not just by the unfair collection of royalties and marketing fees totaling more than $19,000,000.00 during the pendency of the scheme, conspiracy and pattern of conduct, but by the increase in their own revenues in an amount of up to and possibly exceeding $3,500,000.00 for calendar year 2007 alone, all of which defendants should be ordered to disgorge.

**63.**  In addition, penalties should be assessed against RMCF for each violation as committed multiple times against each of the **68**+ RMCF franchisees within the State of California under California Business and Professions Code Section 17206.

**64.**  Plaintiff is entitled to declaratory and injunctive relief declaring the franchise agreements with RMCF to be null and void as a result of the alleged misconduct of RMCF and ordering that Plaintiff be entitled to operate a business as a chocolate and/or candy store without any further payments of royalties or marketing fees and without any interference with their business operations by RMCF.

65.    Plaintiff seeks declaratory and injunctive relief declaring that all of the RMCF standard Franchise Agreements executed by RMCF franchisees are null and void under California law including but not limited to California Business & Professions Code Sections 17051 and 17046-17048 and as unconscionable contracts of adhesion and preliminarily and permanently enjoining RMCF from issuing replacement documents for those unlawful agreements.

66.    The illegal, fraudulent and unfair business practices of RMCF presents a continuing threat to Plaintiffs and to members of the public in that RMCF persist in these practices and will do so unless and until a permanent injunction is issued by this Court. Such permanent injunctive relief should also include ancillary equitable relief of rescission of contract, restitution, and ancillary damages to Plaintiffs.

67.    As a direct result of the above illegal, fraudulent and unfair business practices, RMCF has been unjustly enriched and has otherwise received revenues from Plaintiffs and others as a result of their violations of section 17200 of the California Business & Professions Code which should be held in trust and disgorged, including the monies and other items paid by Plaintiffs including franchising fees, royalties, and inventories, which monies should be returned to Plaintiffs and others similarly situated by restitution, disgorgement or other equitable remedies.

69.    Plaintiffs are entitled to attorneys fees due to the common fund doctrine and under the private attorney general doctrine including under Section 1021.5 of the California Code of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter Judgment against the defendant and order:

a.    For an award of general and special monetary damages against RMCF in an amount equal to Plaintiffs' direct, indirect and consequential damages;

b.    For preliminary and permanent injunction enjoining defendant RMCF from illegal, fraudulent and unfair trade practices and related equitable;

c.    For defendant RMCF to make restitution to Plaintiffs of all royalties, marketing fees, and its profit on the shipment and sale of product to Plaintiff obtained during the period of time in which RMCF was engaged in its violation of California Business and Professions Code Section 17200 et seq. **CAL. BUS. & PROF. CODE §17203;** *Fletcher v. Security Pacific National Bank,* **1979) 23 Cal. 3d 442, 449;** *Bank of the W. V. Superior Court,* **(1992) 2 Cal. 4th 1254, at 1267;**

**d.**    For the disgorgement by RMCF of its revenues obtained by and through its violations of California Business and Professions Code Section 17200 et seq.; **CAL. BUS. & PROF. CODE §17203;** *Fletcher v. Security Pacific National Bank*, **1979) 23 Cal. 3d 442, 449;** *Bank of the W. V. Superior Court*, **(1992) 2 Cal. 4th 1254, at 1267;**

e.    For the imposition of penalties for each and every violation of the  California Business and Professions Code Section 17200 and 17500, et seq.;

f.    For an award to Plaintiff of reasonable attorneys' fees;

g.    For an award of pre-judgment interest;

h.    For cost of suit; and

i.    For such other and further relief as may be fair and just.


Dated this 7th day of August, 2008.


LYNN & FORTUNE, LLP


  s\ *Rebecca J. Fortune*
Rebecca J. Fortune
Attorney for Plaintiffs, SDMS, Inc.,
Thomas P. Anderson and Ken Pecus.

**DECLARATION OF SERVICE**

*SDMS, Inc et a. v. Rocky Mountain Chocolate Factory, Inc.*
United States District Court for the Southern District of California
Civil Action No. 08-cv-00833 JM (AJB)

     I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action; my business address is 2171 India Street, Suite C, San Diego, California 92101.

     I hereby certify that on August 7, 2008, I electronically filed the foregoing:

1.     **SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES**

with the Clerk of the Court using the **CM/ECF** system.  I also e-mailed a copy of the First Amended Complaint to the following email addresses:


Leonard H. MacPhee            *Attorney for Defendants,*

lmacphee@perkinscoie.com      Rocky Mountain Chocolate Factory, Inc. and

                                  Bryan J. Merryman


Executed August 7, 2008 at San Diego, California.


                             s/ *Rebecca J. Fortune*

                             Rebecca J. Fortune