LYNN & FORTUNE, LLP
  Rebecca J. Fortune (SBN 229921)
2171 India Street, Suite C
San Diego, California 92101
Phone: (619) 233 - 9464
Fax:    (619) 702 - 6911

Attorneys for Plaintiffs SDMS, INC.,
THOMAS P. ANDERSON, and KEN PECUS

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SDMS, INC., THOMAS P. ANDERSON, and KEN PECUS, | Case No.: 08cv833 JM AJB |
| Plaintiffs, | PLAINTIFFS' SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER OF AUGUST 27, 2008. |
| vs. | |
| ROCKY MOUNTAIN CHOCOLATE FACTORY INC., | |
| Defendant. | |

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

## I. STATEMENT OF RELEVANT FACTS

Pursuant to California Corporations Code sections 30000 et seq., a franchisor residing outside the State of California who wishes to sell franchises within the state must register and gain approval from the California Department of Corporations. To do so, the franchisor must submit an application to the Department of Corporations which includes, among other things, a Franchise Offering Circular. Cal. Corp. Code §31114. Under section 31114, the Offering Circular must comply with California Code of Regulations section 310.114.1 which requires the Offering Circular to contain the following language, "California Business and Professions Code Sections 20000 through 20043 through provide rights to the franchisee concerning termination or non-renewal of a franchise. If the franchise agreement contains a provision that is inconsistent with the law, the law will control." Cal. Code Reg. §310.114.1(c)(5)(A).

On or about February 23, 2003, RMCF submitted a "Post-Affective Amendment for Franchise Registration" which included a then-current copy of the RMCF Offering Circular. Contained within the Addendum to the RMCF Offering Circular for the State of California is the following language, "California Business and Professions Code Sections 20000 through 20043 through provide rights to the franchisee concerning termination or non-renewal of a franchise. If the franchise agreement contains a provision that is inconsistent with the law, the law will control."

In or about June 2003, Plaintiffs were provided with a copy of the RMCF Offering Circular. (FAC, Exhibit 1). The RMCF Offering Circular provided to Plaintiffs included the language with regards to provisions of the California Business and Professions Code as outlined above. In reliance on the statements and promises contained within the RMCF Offering Circular and, based upon the protections provided under the laws of the State of California, Plaintiffs executed the RMCF Franchise Agreement on August 23, 2003.

## II. CHOICE-OF-LAW AND FORUM-SELECTION CLAUSES

### A. Forum-Section Clause

As outlined above, to be approved to sell its franchises within the State of California, RMCF was required to include the following language within its Offering Circular, "California Business and Professions Code Sections 20000 through 20043 provide rights to the franchisee concerning termination or non-renewal of a franchise. If the franchise agreement contains a provision that is inconsistent with

the law, the law will control." In that regard, section 20040.4 of the California Business and Professions Code states, "A provision in a franchise agreement restricting venue to a forum outside this state <u>is void</u> with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state." [<u>emphasis added</u>.]

In claiming that venue is proper in the courts of Colorado, Defendants may rely upon paragraph 22.1 of the RMCF Franchise Agreement. However, such reliance would be flawed in that, by submitting their application for approval within the State of California, RMCF agreed to section 20040.4 of the California Business and Professions Code which makes void any provision restricting venue to a forum outside the State of California. As such, by the terms of RMCF's own agreements, venue is proper in the State of California.

**B.   Choice-of-Law**

"In determining the enforceability of … contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 2 Cal.4th 459, 464 (1992). Section 187 provides, in pertinent part, "The law of the state chosen by the parties to govern their contractual rights and duties will be applied … unless …application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties. Restatement (2d) of Conflicts of Laws §187(2) (1988). When evaluating a state's interest, Section 188 looks at the following factors: a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (2d) of Conflicts of Laws §188(2) (1988).

**1.   Application of Colorado Law would be Contrary to California's Public Policy.**

While Plaintiffs' have not alleged claims under California's Franchise Investment Law ("CFIL") in this action, provisions of the CFIL are instructive with regards to California's stated public policy in protecting franchisees within its borders. (Cal. Corp. Code §31000 <u>et seq</u>.) Specifically,

California Corporations Code Section 31001 states, in pertinent part, "California franchisees have suffered substantial losses where the franchisor or his or her representative has not provided full and complete information regarding the franchisor-franchisee relationship … it is the intent of this law to prohibit the sale of franchises where the sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled …" Further, "California certainly has an interest in protecting the thousands of citizens in the California subclass…from unconscionable contracts." *Douglas v. United States Disrict Court*, 495 F.3d 1062, 1067 (9th Cir. 2007).

Finally, and with specific regard to the California Unfair Practices Act alleged in this action, when describing the purpose and scope of California Business and Processions Code Section 17200, Courts cite as an essential purpose, the prohibition on deception and fraud even by vehicles that appear technically lawful on their face, if their purpose and effect amount to a scheme to deceive or defraud. "Because B & P C § 17200, of the Unfair Competition Act is written in the disjunctive, it establishes three varieties of unfair competition, including acts or business practices that are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as unfair or deceptive even if not unlawful…" *Podolsky v. First Healthcare Corporation,* (1996) 50 Cal. App. 4th 632, 647 ("*Podolsky*").

The *Podolsky* Court went on to emphasize the statute's general nature, expansive scope, and a standard of review, placing wide discretion in the hands of the courts:

> The independent unfairness prong of the statute is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. The test of whether a business practice is unfair involves an examination of that practice's impact on its alleged victim balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim. An unfair business practice occurs when the practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Ibid.*

While the State of Colorado has law on its books entitled the "Unfair Practices Act" (C.R.S. §§ 6-2-101, et seq.), only a minute amount of case law exits to expound on the statutes and, the legislative intent itself is brief and somewhat half-heartedly vague: "The general assembly declares that the purpose of this article is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory practices by which fair and honest

1  competition is destroyed or prevented. This article shall be liberally construed so that its beneficial
2  purposes may be subserved." C.R.S. § 6-2-102.
3      What little case law exists actually limits Colorado's Unfair Practices Act to a handful of very
4  specific violations and almost all relate to the sale of gasoline, *e.g.,* "If a product must be sold at or
5  above cost, injury to competitors is averted and the purposes of § 6-2-105(1) are satisfied." *Mastercar,*
6  *Inc. v. Amoco Oil Co., 835 P.2d 534, 536 (Colo. Ct. App. 1992),* and "Colorado's Unfair Practices Act
7  does not cover discrimination between purchasers, but rather discrimination based upon and directed at
8  geographic differences, termed 'locality discrimination'". *Venta, Inc. v. Frontier Oil and Ref. Co., 827 F.*
9  *Supp. 1526 (D. Colo. 1993).*  In short, the primary purpose of Colorado's Unfair Practices Act is the
10  prevention of monopolies and predatory price wars, especially selling the specific item of gasoline under
11  one's own cost.
12      Therefore, unlike the provisions and application of the Colorado Revised Statutes, California has
13  a strong proactive policy to discourage and prevent precisely the kinds of schemes perpetrated RMCF
14  and alleged in Plaintiffs' First Amended Complaint. Colorado law does not.  As such, application of
15  Colorado's Unfair Practices Act (cited in less than twenty cases, state or federal) would be a violation of
16  California's strong public policy to protect its citizens when the California Unfair Practices Act (cited in
17  excess of 6,000 cases) is directly on point.
18      **2.    All Aspects of the Parties' Relationship Occurred in California**
19      As is required under Restatement (2nd) Section 187(2)(b), when deciding whether or not to apply
20  a contractual choice-of-law provision, Court's will also evaluate: (a) the place of contracting, (b) the
21  place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of
22  the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of
23  the parties. Restatement (2d) of Conflicts of Laws §188(2) (1988).
24      Here: (a)  RMCF voluntarily subjected itself to the laws of the State of California when it
25  submitted its application to do business to the California Department of Corporations; (b) RMCF
26  expressly acknowledged the application of the California Business and Professions Code within its
27  Uniform Offering Circular and related materials; (c) Of its total number of existing franchises located in
28  the United States and in two foreign countries, the State of California is home to over sixty (60)

Plaintiffs' Supplemental Brief    08cv00833
Re:  RMCF's Motion to Dismiss
Page 4 of 8

separate, and independently owned, RMCF locations; (d) RMCF's Franchise Sales Representative, Kraig Carlson, personally traveled to San Diego for the purposes of negotiating Plaintiffs' potential relationship as RMCF franchisees; (e) All documents evidencing Plaintiffs' business relationship with RMCF were executed in San Diego, California; and (f) Aside from attending a one-week training program in Durango, Colorado at the outset of their relationship, Plaintiffs' entire performance under their contracts with RMCF occurred in San Diego, California, e.g. their store was located in San Diego, RMCF delivered product to Plaintiffs' San Diego location, Plaintiffs' revenue was derived <u>only</u> from in-person sales conducted within San Diego, their royalty payments to RMCF were sent from San Diego and drawn on a San Diego County bank account, etc.

The only relationship between the facts alleged in Plaintiffs' First Amended Complaint and the State of Colorado is that Colorado is RMCF's primary place of business. Every other aspect of the parties' relationship is conducted within the State of California. Additionally, RMCF receives a substantial benefit from the State of California in that six (6) out of twenty (20) of its top grossing franchise locations (more than any other state in the top twenty) are located in California, including the number one RMCF location in each of the last five years.

For all those reasons set forth above, the State of California clearly has a materially greater interest in the claims raised in Plaintiffs' First Amended Complaint and California law should be applied.

### III.    ABSTENTION

**A.    Relevant Facts.**

First, to properly apply the law of abstention to the instant dispute, it is imperative that the Court understand what issues were brought and, what issues remain, before the Colorado District Court. In their final amended form and, prior to the Court's Order on Summary Judgment, RMCF's affirmative claims included: (1) Lanham Act – Trademark Infringement alleging wrongful use of RMCF's trademarks by Plaintiffs; (2) Lanham Act – Unfair Competition alleging Plaintiffs' sale of RMCF product and use of its recipes without consent; (3) Breach of Contract alleging the sale of unauthorized products and failure to pay royalties; (4) Violation of Colorado Trade Secret Law alleging the wrongful

use of RMCF's trade secrets; and (5) Declaratory Judgment seeking to enforce the post-termination provisions within the RMCF Franchise Agreement.

After amended, and prior to any decision on summary judgment, Anderson's, Pecus' and SDMS, Inc.'s affirmative claims included:  (1) Material Misrepresentation in Registration Application - California Corporations Code §§ 31300 and 31200  (First and Second Counter-claims, one for rescission and one for damages) alleging: (a) the "claimed earnings" of other RMCF franchises included within RMCF's Offering Circular did not represent RMCF's knowledge with regards to the *actual* financial performance of such franchises; (b)  Where RMCF was required to disclose the number of all franchises terminated by RMCF within a specified time frame, by their willful practice and procedure, RMCF, instead, disguised terminations as "transfers"; and (c)  Where RMCF was required to disclose all known market competition, RMCF failed to disclose itself as a significant competitor to the RMCF franchisee through its substantial sales to many third-party retailers. (Colorado First Amended Counterclaims[1], ¶¶25-33); (2) Improper Termination of Franchise - California Business and Professions Code §20035 alleging termination without good cause.  (CFAC, ¶¶34-37); (3) Fraud in the Inducement alleging the exact same facts as stated in sub-paragraph 1. above.  (CFAC, ¶¶38-43); (4) Unconscionable Contract alleging that strict application of the RMCF Franchise Agreement leaves the franchisee with no remedy and no way out of the contract in the event poor performance results in an inability to meet certain contractual requirements. (CFAC ¶¶44-46); (5) Fraud alleging the exact same facts as stated in sub-paragraph 1. above.  (CFAC ¶¶47-53); (6) Breach of Contract alleging RMCF's failure to meet certain on-going support requirements.  (CFAC ¶¶54-57); and (7) Breach of Duty of Good Faith and Fair Dealing alleging bad faith on the part of RMCF related to all facts listed above.

Therefore, prior to any hearing on summary judgment, Plaintiffs' Colorado Counterclaims were limited to allegations of fraud at the time of contract, a failure of RMCF to provide proper on-going support related to the Plaintiffs' day-to-day franchise operations and the improper termination of the franchise agreement in October 2006.  Nothing in Plaintiffs' Colorado Counterclaims allege unfair competition or deceptive business practices as are raised in Plaintiffs' current First Amended Complaint

---

[1] Future references to Plaintiffs' "First Amended Counterclaims" brought in the District Court of Colorado will be listed as "CFAC" with paragraph (¶) numbers where appropriate.

pending before this Court. Rather, unlike the Colorado Counterclaims that involved only facts occurring just prior to the parties' contractual relationship and those occurring at the very end of such relationship (making no mention of RMCF's business practices during the course of the parties' relationship), Plaintiffs' current claims involve solely <u>RMCF's</u> general business practices, irrelevant to its specific relationship with Anderson, Pecus and/or SDMS, Inc. Additionally, the remedies sought under Plaintiffs' current claims seek injunctive protection and restitution for every one of RMCF's sixty-eight (68) California franchisees, not just Anderson, Pecus and SDMS, Inc.

Lastly, as the Colorado Action is currently framed, the Colorado District Court will be hearing evidence on only two issues: (1) RMCF's sole remaining claim for breach of contract related to Plaintiffs' alleged sale of unauthorized products and failure to pay royalties from May 2006-December 2006 and, (2) Anderson's, Pecus' and SDMS' counterclaim for fraud alleging that a particular statement[2] contained within the RMCF Uniform Offering Circular was false at the time it was made. Therefore, with the exception of the fact that the parties' knowledge of one another and business relationship originates with their mutual execution of the RMCF franchise agreement, nothing about Plaintiffs' current claims or the remedies sought have any connection to the Colorado Action.

### B. The Abstention Doctrine Does Not Apply

"The Supreme Court has identified a number of circumstances in which the federal courts should abstain from adjudicating a controversy, even though the case satisfies all jurisdictional requirements and presents a justiciable controversy. The abstention doctrines basically operate to yield proper federal court jurisdiction to a state tribunal, on the theory that the state tribunal is the more appropriate forum to hear and decide the suit." 17A-122 Moore's Federal Practice, §122.01[3] (Mathew Bender 3rd Ed.) 1997, updated 2008.

"The Supreme Court has articulated three possible abstention doctrines for federal litigation involving issues of unclear state law" including: (1) The *Pullman* doctrine, (2) *Thibodaux* abstention, and (3) *Buford* abstention. *Ibid*.

---

[2] "We do not have access to nor knowledge of the expenses or costs incurred by each of the 169 franchised Stores." RMCF UFOC, Item 19.

1  The *Pullman* doctrine relates to a federal court's abstention if a "state court determination of an unsettled state law question would avoid resolution of a federal constitutional issue." *Railroad Commission of Texas v. Pullman Company, Inc.*, 312 U.S. 496 (1941). *Thibodaux* abstention requires the federal court to yield jurisdiction in diversity cases involving certain kinds of important issues of unclear state law. *Louisiana Power & Light Co. v. City Of Thibodaux*, 360 U.S. 25 (1959). And, *Burford* abstention requires a federal court to defer to state tribunals when litigation involves a complex and comprehensive state administrative statutory scheme. *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Lastly, the abstention doctrine outlined in *Younger v. Harris* is limited to the prohibition of a federal court's act of enjoining a state criminal proceeding without a showing of "extraordinary circumstances" to warrant federal intervention. *Younger v. Harris*, 401 U.S. 37 (1971).

First, because abstention is designed to refer a case back to state court, if any action is required at all, it does not apply to the current circumstances as the Colorado Action is in federal court, not state court. Additionally, the current action falls entirely outside of each doctrine identified by the United States Supreme Court, e.g. Plaintiffs' claims do not raise an issue of "unsettled state law" (*Pullman*), nor do they involve "unclear state law" (*Thibodaux*), "complex and comprehensive state administrative statutory schemes" (*Burford*) or a criminal proceeding. (*Younger*). Therefore, the facts and circumstances giving rise to this action are clearly outside the parameters of abstention, whichever doctrine is applied.

## IV. CONCLUSION

For the reasons outlined above and for all those addressed in Plaintiffs' Opposition, Thomas P. Anderson, Ken Pecus and SDMS, Inc. respectfully request that this Court deny RMCF's Motion to Dismiss and enter an order requiring Defendant to file an answer at the earliest date the Court deems reasonable.

Dated this 31st day of September, 2008.                LYNN & FORTUNE, LLP


    s/*Rebecca J. Fortune*            .
Rebecca J. Fortune
Attorney for Plaintiffs,
Tom Anderson, Ken Pecus
and SDMS, Inc.