Steven C. Gonzalez, Bar No. 191756
sgonzalez@perkinscoie.com
PERKINS COIE LLP
1620 26th Street, Sixth Floor – South Tower
Santa Monica, CA  90404
PHONE: 310.788.9900
FAX: 310.788.3399

Leonard H. MacPhee, *Pro Hac Vice*
lmacphee@perkinscoie.com
PERKINS COIE LLP
1899 Wynkoop Street, Suite 700
Denver, CO 80202
PHONE: 303-291-2307
FAX: 303-201-2400

Attorneys for Defendant
ROCKY MOUNTAIN CHOCOLATE
FACTORY, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SDMS, INC., THOMAS P. ANDERSON, and KEN PECUS,<br><br>              Plaintiff,<br><br>     v.<br><br>ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.,<br><br>              Defendant. | Case No.: 08cv00833 JM (AJB)<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' BRIEF PURSUANT TO THE AUGUST 27, 2008 ORDER REQUESTING SUPPLEMENTAL BRIEFING** |

Pursuant to the Court's August 27, 2008 Order, Defendant Rocky Mountain Chocolate Factory, Inc. ("RMCF"), through undersigned counsel, hereby submits its response.

## I.    FORUM-SELECTION CLAUSE

The language of California's Franchise Relations Act ("FRA"), Cal. Bus. & Prof. Code § 20040.5, provides that forum selection clauses in franchise agreements requiring a forum other than California are void if the franchised business is operated in California. RMCF has not challenged venue for that reason. RMCF reserves the right to move to change venue under, inter alia, 28 U.S.C. § 1404, in that even without the forum selection clause, Colorado is an appropriate venue.

## II.    CHOICE OF LAW

The parties contractually agreed to apply Colorado law to their relationship: "… this Agreement shall be interpreted under the laws of the state of Colorado and any disputes between the parties shall be governed by and determined in accordance with the substantive laws of the state of Colorado, which laws shall prevail in the event of any conflict of law." (*See* Franchise Agreement at 31, § 22.1). In enacting the FRA and the Franchise Investment Law ("CFIL"), Cal. Corp. Code §§ 31000, et seq., the legislature could have provided that choice-of-law clauses calling for application of the law of a state other than California are void. However, it chose not to. Contrary to Plaintiffs' contentions, the contractual agreement to apply Colorado law to disputes arising out of the franchise relationship is enforceable, and Colorado law applies. Therefore, this choice-of-law operates to bar both of Plaintiffs' claims, as they are based exclusively on California law.

Federal courts sitting in diversity apply the forum state's choice-of-law rules to determine whether a choice-of-law clause is enforceable. *Estate of Darulis v. Garate*, 401 F.3d 1060, 1062 (9th Cir. 2005); *Brazil v. Dell Inc.*, No. C-07-01700, 2008 WL 2693629, at *2 (N.D.Cal. July 7, 2008) (applying California conflict of law rules and enforcing Texas choice-of-law provision to strike California statutory claims). Under California's choice-of-law rules, contractual choice-of-law clauses are generally valid and enforceable in most business contexts, including in franchise agreements. *See Knott v. McDonald's Corp.*, 147 F.3d 1065, 1067 (9th Cir. 1998) (applying

Illinois law to dispute between California franchisee and McDonalds based upon provision in franchise agreement); *Villager Franchise Sys., Inc. v. Dhami, Dhami & Virk*, No. CV-F-04-6393 REC SMS, 2006 WL 988628, at *1 (E.D. Cal. Apr. 13, 2006) (enforcing franchise agreement's choice-of-law provision and applying New Jersey law); *see also Ortho-Med, Inc. v. Micro-Aire Surgical Instruments, Inc.*, 1995 WL 293180, at *5 (C.D. Cal. 1995). Indeed, to determine the enforceability of a contractual choice-of-law provision, California courts apply the Restatement principles, which reflect a strong policy favoring enforcement. *Brazil*, 2008 WL 2693629, at * 2, citing *Nedlloyd Lines B.V. v. Superior Court of San Mateo*, 3 Cal. 4th 459, 465 (1992); Restatement 2nd of Conflicts of Law § 187(2).

The law of the chosen state will be applied whenever (a) the chosen state has a substantial relationship to the parties or the transaction or there is a reasonable basis for the parties' choice of law; and (b) the chosen state's law would not be contrary to a fundamental policy of California. Even when the chosen law would be contrary to a fundamental policy of California, the Court should still apply the chosen state law unless California has a materially greater interest than the chosen state in the determination of the particular issue. *Brazil*, 2008 WL 2693629, at *2; *Nedlloy*d, 3 Cal.4th at 465.

Here, the first factor of the Restatement test is met because Colorado has a substantial relationship to the parties, as RMCF is incorporated in and has its principal place of business in Colorado. *See* First Amended Complaint ¶ 2[1]; *see Ford Motor Credit Co. v. Segal*, 97 Fed. Appx. 166, 168 (9th Cir. 2004) (applying California law) (enforcing choice-of-law clause providing for application of Michigan law, where Michigan had a substantial relationship with a contracting party because party's principal place of business was in Michigan); *Hughes Elecs. Corp. v. Citibank Del.*, 120 Cal. App. 4th 251, 258 (2004) (fact that Citibank's principal place of business was in New York alone was sufficient to establish a "substantial relationship" between

---

[1] Colorado has significant connections with this matter. For example, RMCF signed the contract in Colorado, trained Plaintiffs in Colorado, administered all aspects of the relationship from Colorado, and received all payments from Plaintiffs in Colorado.

New York and the parties as well as a "reasonable basis" for contractual provision requiring application of New York law).

The second factor is also met, as applying Colorado law would not be contrary to any fundamental public policy of the State of California.[2] As set forth below, both California statutory claims are sufficiently similar to statutes in Colorado such that applying Colorado law would not be contrary to a public policy of the State of California.

### A. The Choice-of-Law Clause Bars Plaintiffs' §17000 Claim.

Plaintiffs' discussion of the choice-of-law provision's enforceability fails to address whether California's Unfair Practice Act, Cal. Bus. & Prof. Code 17000 *et seq.*, codifies a fundamental public policy of California to which the application of Colorado law would be contrary. There is no indication that the Unfair Practice Act codifies a fundamental public policy of California. Further, even assuming that it did, applying Colorado law would not be contrary to such a policy. This is so because Colorado has a similar statute.

Colorado's Unfair Practices Act, C.R.S. §§ 6-2-101, et seq., affords Plaintiffs largely the same claims and the same remedies as does California's Unfair Practices Act. Indeed, the two states' Unfair Practices Acts are striking in their similarity. California's Unfair Practices Act prohibits only certain enumerated "practices which the legislature has determined constitute unfair trade practices." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 179 (1999). The actions prohibited under California Business and Professions Code section 17000, et seq., are set forth at sections 17040-17051 as "Offenses Against the Chapter" and comprise: selling articles below cost to the manufacturer, giving product away for free for the purpose of injuring competitors and destroying competition, granting some but not all purchasers purchasing on the same terms and conditions secret payments or allowances tending to destroy competition,

---

[2] Plaintiffs' discussion of certain provisions of the California Franchise Investment Law is irrelevant to this analysis, as Plaintiffs have not alleged any CFIL claims here. Rather, the public policies codified in the CFIL are germane to that statute and are not implicated in claims under Cal. Bus. & Prof. Code §§ 17000 or 17200. Further, Plaintiffs brought claims under the CFIL in the Colorado Action.

1   and creating locality discriminations in price with the intent to destroy competition.  *See* Cal. Bus
2   & Prof. Code §§ 17040, 17043-17045.

3      Similarly, Colorado's Unfair Practices Act also prohibits (among other things) selling
4   articles below cost for the purpose of injuring competitors and destroying competition, granting
5   some but not all purchasers secret rebates, payments, or allowances tending to destroy
6   competition, and creating locality discriminations in price with the intent to destroy competition.
7   *See* C.R.S. §§ 6-2-103, 6-2-105, 6-2-108.  Moreover, the Colorado legislature's declaration
8   regarding the purpose of Colorado's Unfair Practices Act is almost verbatim the same as the
9   California legislature's declaration regarding the purpose of the California Unfair Practices Act.
10  *See* C.R.S. § 6-2-102 ("The general assembly declares that the purpose of this chapter is to
11  safeguard the public against the creation or perpetuation of monopolies and to foster and
12  encourage competition by prohibiting unfair and discriminatory practices by which fair and
13  honest competition is destroyed or prevented.  This article shall be liberally construed so that its
14  beneficial purposes may be subserved.").  Further, like California's Act, the Colorado Unfair
15  Practices Act also makes any contract in violation of the provisions of the Act illegal.  *See* C.R.S.
16  § 6-2-109; Cal. Bus. & Prof. Code § 17051.  Finally, like California Business and Professions
17  Code section 17070, Colorado law offers individual plaintiffs both injunctive relief and damages
18  as remedies for violations of the Unfair Practices Act.  *See* C.R.S. § 6-2-111(1).

19     Even to the extent that Colorado's statute differs in some ways from California Business
20  and Professions Code section 17000, et seq., applying Colorado law would not be contrary to a
21  fundamental public policy of California law.  Indeed, minor differences between the two statutes
22  are irrelevant to this analysis, as Colorado law need not offer Plaintiffs precisely the same claims
23  and the same remedies for the Court to find that no conflict of law exists and that the choice-of-
24  law clause is enforceable.  *See, e.g., Brazil*, 2008 WL 2693629, at *3, *6 (noting that a difference
25  between states' laws does not by itself present a conflict sufficient to disregard a choice-of-law
26  clause, even if the chosen state's law provides less protection to a plaintiff, and finding that
27  choice-of-law clause preempted California statutory claim where redress under similar statute was
28  available under Texas law); *Cardonet, Inc. v. IBM Corp.*, 2007 WL 518909, at * 5 (N.D. Cal.

2007) (the fact that designated state's law differs from California law does not mean that applying the chosen state's law would contravene fundamental California public policy); *Medimatch Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) ("the mere fact that the chosen law provides greater or lesser protection than California law, or that in a particular application the chosen law would not provide protection while California law would, are not reasons for applying California law"). Rather, the standard is whether the chosen law is so offensive to California public policy as to be "prejudicial to recognized standards of morality and to the general interest of the citizens." *Wong v. Tenneco*, 39 Cal.3d 126, 135-36 (1985). Plaintiffs cannot show that that standard has been met here, as Colorado law offers them largely the same cause of action available to them under California law.

Accordingly, requiring Plaintiffs to bring their unfair business practices claim under Colorado law would not conflict with a fundamental public policy of California. *See Brazil*, 2008 WL 2693629, at *6. The parties' choice-of-law clause thus preempts the section 17000 claim, and the claim should be dismissed.

**B.     The Choice-of-Law Clause Bars Plaintiffs' § 17200 Claim.**

Courts have frequently dismissed claims under California Business and Professions Code section 17200 in the franchise context when a choice-of-law clause provided for the application of a different state's law, so long as the chosen state's law also had unfair practices or consumer protection laws. *See, e.g., Brazil*, 2008 WL 2693629, at *3; *Medimatch Inc.*, 120 F. Supp. 2d at 862 (dismissing UCL claim with prejudice where New Jersey law also provided consumer protection claim); *Cardonet, Inc.*, 2007 WL 518909, at *5 (upholding choice-of-law provision on all of Plaintiffs' claims, including § 17200 claim, because New York law had an unfair business practices statute); *Nibeel v. McDonald's Corp.*, 1998 WL 547286, at *11 (N.D. Ill. 1998) (denying claim under § 17200 where franchise agreement specified application of Illinois law and the policies underlying the § 17200 claim were essentially the same as those underlying tort claim in the same action); *Bedran v. Am. Express Travel Related Servs. Co.*, 2007 WL 756364, at *2 (Cal. Ct. App. 2007) (noting, without further detail, that trial court granted summary judgment on the ground that choice-of-law provision requiring the application of New York law precluded any

claim for violation of California's Business and Professions Code); *Villager Franchise Sys., Inc.*, No. CV-F-04-6393 REC SMS, 2006 WL 988628, at *1 (enforcing franchise agreement's choice-of-law provision and applying New Jersey law).

Here, applying Colorado law would not contravene California's fundamental public policy, as Colorado's Consumer Protection Act (the "CCPA") and Unfair Practices Act offer Plaintiffs redress under similar causes of action. *See* C.R.S. § 6-1-101, et seq.; C.R.S. § 6-2-101, et seq. As explained above, the Unfair Practices Act offers damages and injunctive relief for various kinds of unfair and discriminatory practices tending to destroy competition. Like California Business and Professions Code section 17200, the Act's scope is broad, as evidenced by the Colorado Legislature's declaration that it is to be liberally construed. *See* C.R.S. § 6-2-102. Further, the CCPA, which Plaintiffs fail to mention in their brief, offers claims for a wide range of business practices, as it prohibits 45 different categories of deceptive trade practices. *See* C.R.S. § 6-1-105. The CCPA, too, is a broad statute of general application and has "strong and sweeping remedial purposes." *See Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 53 (Colo. 2001). Moreover, the CCPA is actually more favorable to plaintiffs than California Business and Professions Code section 17200, et seq., in that the CCPA permits individual plaintiffs to pursue actions for damages.

Plaintiffs' protestations that Colorado law and California law differ in some respects, and that there is too little case law interpreting the relevant Colorado Acts, are unavailing. As noted above, the fact that a designated state's law may differ from California law, even if the agreed to state's law offers lesser protection, is insufficient to invalidate a choice-of-law provision. *See Brazil*, 2008 WL 2693629, at *3. Moreover, Plaintiff has not shown and could not show that the alleged differences between Colorado and California law involve fundamental public policies of the State of California. The causes of action available under the CCPA and the Unfair Practices Act do not deviate so much from those under California law that applying Colorado law would offend California public policy to such degree as to be "prejudicial to recognized standards of morality and to the general interest of the citizens." *See Wong*, 39 Cal. 3d at 135-36.

As applying Colorado would not violate any fundamental public policy of California, the choice-of-law analysis need not reach the question of whether California has a materially greater interest than Colorado in the determination of the claims in this action. Consequently, the choice-of-law clause is enforceable under California's choice-of-law rules and provides another basis for dismissing Plaintiffs' section 17200 claim.

## III.   ABSTENTION

While the abstention doctrine under *Younger v. Harris* may not quite be on point with this case, under the principle of federal comity, a district court, in the interest of judicial economy, has discretion to transfer, stay, or dismiss an action which is duplicative of an action pending in another federal court. *See O'Neill v. U.S.*, 50 F.3d 677, 688 (9th Cir. 1995) (noting the general principle of avoiding duplicative litigation and addressing propriety of a federal district court declining to decide an issue which will be decided in a parallel federal district court proceeding), citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). District courts have great latitude and discretion in determining when an action is duplicative and whether the action should be stayed or dismissed. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952) ("[A]n ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.").

In general, a suit is duplicative of another "if the claims, parties, and available relief do not significantly differ between the two actions." *Barapind v. Reno*, 72 F. Supp. 2d 1132, 1145 (E.D. Cal. 1999). Here, as set forth in RMCF's Motion to Dismiss, the parties to this action and to the Colorado action are the same, the dispute and claims arose out of the same contract – a franchise agreement – and the same relationship. Although brought under different legal labels, the claims arise from the same set of factual underpinnings. Further, the relief Plaintiffs seek is largely the same in both actions.

Plaintiffs' claim that the two suits differ in that RMCF's relationship with Plaintiffs is irrelevant to the instant action is meritless. First, a substantial portion of the First Amended Complaint consists of allegations relating to RMCF's business dealings with Plaintiffs. Further, Plaintiffs may only pursue claims for relief on others' behalf if they meet the standing

requirements of section 17204, which require that they have "suffered injury in fact and [] lost money or property" as a result of the alleged unfair competition.  *See* Cal. Bus. & Prof. Code §§ 17023, 17204.  As a result, Plaintiffs could only bring claims on behalf of others if they had themselves suffered damages as a result of their business relationship with RMCF.  Plaintiffs' relationship with RMCF, thus, is central to the claims in this action.  It is this same relationship that is central to the Colorado Action.

Because the parties, available relief, and facts giving rise to Plaintiffs' claims in this action and the Colorado action are largely the same, this action is duplicative of the Colorado action.  As explained in RMCF's Motion to Dismiss, many of the claims in this action are precluded in that they were decided by a final judgment in the Colorado action or waived because they constituted compulsory counterclaims.  For the same reasons, this Court should exercise its discretion to dismiss this case or otherwise abstain.

DATED:  September 12, 2008  **PERKINS COIE LLP**

By: *s/Steven C. Gonzalez*
    Steven C. Gonzalez,
    Leonard H. MacPhee, Pro Hac Vice

Attorneys for Defendant
ROCKY MOUNTAIN CHOCOLATE FACTORY, INC.